## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ADVANCED OPTICS ELECTRONICS, INC., and
BIOMODA, INC.

      Plaintiffs,

vs.                           No. CIV-_____

LESLIE S. ROBINS, ALVIN D. ROBINS,
and JOHN W. KEARNS,

      Defendants.


## COMPLAINT FOR COMMON LAW FRAUD, VIOLATION
## OF FEDERAL AND NEW MEXICO SECURITIES LAWS,
## CONVERSION, BREACH OF FIDUCIARY DUTY, AND RACKETEERING

Plaintiffs Advanced Optics Electronics, Inc., Biomoda, Inc., and John J. Cousins ("Plaintiffs"), by and through their attorneys of record, Phil Krehbiel, Esq. and Kelcher & McLeod, P.A., state the following as their Complaint.

1.      The Court has subject matter jurisdiction over the claims in this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2.      Plaintiff Advanced Optics Electronics, Inc. ("ADOT") is a Nevada corporation doing business in New Mexico, with its principal place of business in Albuquerque, New Mexico.

3.      Plaintiff Biomoda, Inc. ("Biomoda") is a New Mexico corporation doing business in New Mexico, with its principal place of business in Albuquerque, New Mexico.

4.      Defendant Leslie S. Robins is a resident of Albuquerque, New Mexico. He is a former officer and director of Biomoda, and an officer and director of ADOT.

5.     Defendant Alvin D. Robins is a resident of La Porte, Texas and brother to Defendant Leslie S. Robins. He conducts business in New Mexico.

6.     John W. Kearns is an attorney practicing in Coral Gables, Florida, where, upon information and belief, he resides.

7.     Defendants have each transacted business and committed tortious acts within New Mexico, such that this Court has personal jurisdiction over each of them, pursuant to NMSA 1978, § 38-1-16.

8.     Biomoda was incorporated in New Mexico on January 3, 1990 by Ari Ma'ayan and others, for the purpose of acquiring a license to certain medical technology patented by the Los Alamos National Laboratory. Biomoda did acquire such licenses. Mr. Ma'ayan and the initial investors worked to develop and prove up that technology, and raise the money for this effort via the sale of stock and by other means. By 1998, however, Biomoda was in need of an infusion of additional capital. In that year, approximately twenty-five percent of the outstanding stock of Biomoda was sold to ADOT for this purpose, in exchange for approximately $470,000.00. ADOT also loaned funds to Biomoda and acquired a security interest in Biomoda's assets.

9.     ADOT was incorporated on or about May 22, 1996. In November 1996, ADOT acquired all of the assets of PLZ-Tech, Inc., an entity created, upon information and belief, by Leslie S. Robins. ADOT itself began publicly trading in 1998. Having gone public, it was necessary for ADOT to begin filing periodic reports with the Securities and Exchange Commission ("SEC") pursuant to the Securities and Exchange Act of 1934, as amended (the "Exchange Act").

10.    When ADOT purchased twenty-five percent of Biomoda, Leslie S. Robins became a director of Biomoda. However, Ari Ma'ayan continued to serve as president.

2

11.     Prior to April, 2002, however, Mr. Ma'ayan concluded that he could go no further with Biomoda and indicated that it might be necessary to discontinue its operations. Recognizing the value of its technology, however, ADOT personnel agreed to undertake the operations of Biomoda.  Mr. Ma'ayan resigned from Biomoda on April 10, 2002.  Following Mr. Ma'ayan's resignation, Mr. Cousins also became a Biomoda director, and both Leslie S. Robins and Mr. Cousins became Biomoda officers (vice president and president, respectively).

12.     As of December 31, 2006, ADOT owned approximately 29.54% of Biomoda's outstanding common stock.  Beginning with ADOT's 2005 annual report on Form 10-KSB, ADOT has consolidated its financial statements with Biomoda in accordance with Financial Accounting Standards Board Interpretation Number 46.

13.     As part of the effort to raise funds for Biomoda, in 2003, its management offered stock to the public pursuant to a registration statement on Form SB-2 for the offering of 5,000,000 shares to the public at $6.00 per share, which the SEC declared effective on July 11, 2003.  No shares were sold under this offering.  Subsequently, Biomoda management filed a post-effective amendment to the SB-2 registration statement on February 4, 2005 to include updated audited financial statement information through the period ended December 31, 2003 for the offering of 5,000,000 shares at $3.00 per share and also filed a new related SB-2 registration statement to register an additional 1,000,000 shares.  On February 11, 2005, the SEC declared effective the combined total SB-2 offering of 6,000,000 shares at $3.00 per share.  No sales of stock took place pursuant to these registered offerings.  Biomoda continues to file periodic reports with the SEC pursuant to the Exchange Act.

14.     Thereafter, Biomoda's management sought to make a market for Biomoda stock by initiating quotations of its common stock on the OTC Bulletin Board.  To do so, Biomoda was first required to represent to the regulating agency, NASD, and in fact accomplish, the

3

termination of its SB-2 offering. The closing of the offering occurred on or about July 19, 2006 as fully disclosed to NASD and the public in the following Exchange Act reports filed with the SEC: Biomoda's quarterly report on Form 10-QSB for the quarter ended November 30, 2006, its annual report on Form 10-KSB for the year ended December 31, 2006 and its 2007 quarterly reports on Form 10-QSB. Furthermore, the closing of Biomoda's SB-2 offering was also reported in ADOT's 2006 Form 10-KSB and Form 10-QSB filings that were signed and certified by Leslie S. Robins. In addition, the SB-2 registration was, in any event, "stale" after November 2006 in accordance with SEC rules because it only contained audited financial information for 2003. Consequently, the 2005 SB-2 registration could no longer be used to issue any Biomoda shares. Thus, Biomoda management would have to file a new SB-2 registration statement with updated financial information that would require prior SEC review and approval before being able to issue and sell pursuant to an effective SB-2 registered offering. In the absence of an effective registration statement, Biomoda could only sell shares pursuant to an applicable exemption from the Securities Act of 1933, as amended (the "Securities Act") and the shares would require a restrictive legend disclosing that they were unregistered shares subject to trading and resale restrictions.

15.    Biomoda common stock began trading on or about November 21, 2006 on the OTC Bulletin Board under the symbol "BMOD" and closed the year at $2.70 per share. The stock price fell sharply in January 2007, and again plummeted in the period from May through July, with significant volumes, relatively speaking, being traded in both periods. Mr. Cousins initiated an investigation of the price collapse and that investigation continues.

16.    To date, the investigation reveals that Leslie S. Robins flooded the market with Biomoda stock commencing in January 2007, putting at least 3,610,000 shares of facially unrestricted stock in circulation, by various means.

4

17.     One such method involved Leslie S. Robins' sole and unauthorized action in retaining Defendant John W. Kearns. Notwithstanding the fact that Leslie S. Robins was fully aware that the 2005 SB-2 offering for registered unrestricted stock was closed, and that Biomoda had not consented and could not consent to the issuance of new shares prior to having a new SEC approved SB-2 registration statement or having a specifically Board-approved unregistered transaction made only in compliance with an applicable exemption from the registration requirements of the Securities Act with applicable restrictive legends on any such unregistered stock certificates, Leslie S. Robins had Mr. Kearns write letters expressing the legal opinion that the 2005 SB-2 offering was still open and directing the issuance of Biomoda shares without restrictions, despite publicly available records to the contrary. Mr. Kearns wrote at least five such letters to Biomoda's transfer agent, OTR Transfer & Registry Agency. Based upon these letters, Leslie S. Robins caused the transfer agent to issue approximately 1.768 million shares, which Mr. Robins caused to be sold or otherwise distributed. Mr. Robins certainly knew the representations in Mr. Kearn's letters were false, and Mr. Kearns either knew, as well, or through the exercise of ordinary care, should have known.

18.     The second method identified to date which Leslie S. Robins used to improperly flood the market with Biomoda shares was the sale or transfer of approximately 1.844 million shares of Biomoda stock held by ADOT, at the direction of Leslie S. Robins without authority.

19.     Biomoda shares held by ADOT were "control shares," subject to Rule 144 of the Securities and Exchange Commission, because of ADOT's affiliate relationship to Biomoda. As such, Biomoda shares distributed or sold by ADOT were restricted. Further, Rule 144 limited ADOT to selling no more than 1% of the outstanding shares of Biomoda in any three month period, and then only after filing notice with the SEC.

20.     The transfer by ADOT of approximately 1.844 million facially unrestricted shares, at the sole and unauthorized direction of Mr. Robins, violated the law with respect to the transfer of control shares.

21.     Upon information and belief, ADOT and Biomoda received some funds allegedly generated by the unauthorized and improper sale of Biomoda shares by Leslie S. Robins. If those receipts represent all the proceeds of the sale, each such sale was made at prices well below current market value. However, the vast majority of the stock was apparently transferred for "services" which ADOT and Biomoda did not receive, or from which they did not benefit.

22.     Upon information and belief, ADOT's sale of Biomoda's shares was brokered, at least in part, by an entity identified as Beaver Information Technology, Ltd. ("Beaver"), before being sold on the market. Beaver is alleged by Alvin D. Robins and Leslie S. Robins to be a Philippine corporation. The last known address for Beaver, however, is Alvin's home. Further, Leslie S. Robins has signed documents on behalf of Beaver, purportedly as vice president and secretary. Other transfers were made to Standard Asset Management, a Robins front, to John W. Kearns, and to Robins' family members and cronies.

23.     The effect of improperly distributing millions of shares of facially unrestricted Biomoda stock for no money, or at prices well below market, to persons or groups which simply resold the stock, was to drive down the price of Biomoda's stock, and to impair Biomoda's capacity to raise funds.

24.     When Leslie S. Robins became aware that Mr. Cousins had discovered Mr. Robins' fraudulent activity, one of Mr. Robins' first actions was to empty Biomoda and ADOT bank accounts. He has acknowledged taking all the cash available to Biomoda, which he represents as $35,000. It is also believed that he had previously used his position with Biomoda

6

and ADOT to co-mingle Biomoda funds with ADOT funds, in ADOT accounts. It is believed that Leslie S. Robins improperly withdrew all funds from those co-mingled accounts.

25.    Other improprieties have come to light. Leslie S. Robins, who had check writing authority for both Biomoda and ADOT, failed to employ funds of those entities to keep them current on their obligations. For example, Mr. Robins failed to pay payroll taxes for either company, leaving ADOT exposed to a liability of at least $155,000.00, and Biomoda exposed to liability of at least $35,000.00. While Mr. Cousins had some information about a potential tax liability prior to July, 2007, he was assured by Leslie S. Robins that it was a minor issue, with limited exposure, to be quickly resolved. Not until he began his investigation, did Mr. Cousins learn the detail and extent of the problem. Further, Mr. Cousins learned that Leslie S. Robins had ceased paying rent, patent, trademark and license fees, and other vendors and office expenses.

26.    A number of other matters are still under investigation, but it appears that Leslie S. Robins also created a false account payable to his son, Oliver Robins, or an entity controlled by his son, on the books of ADOT, and diverted approximately $88,000.00 in ADOT assets, plus stock, to his son. As noted above, Leslie S. Robins also appears to have transferred large volumes of ADOT shares to other family members, without consideration to ADOT or Biomoda.

27.    Also, after Leslie S. Robins learned that his improprieties were under investigation, he contacted persons and entities who were prepared to pay funds to Biomoda or ADOT, or otherwise engage in business with them, in an effort to divert funds to himself. Upon information and belief, Leslie S. Robins also wrongfully diverted a tax refund payment of approximately $66,000 which ADOT is entitled to receive. He also attempted to divert funds from Biomoda's sale of unregistered, restricted stock in Europe.

7

28.     In the course of this activity, and as part of an effort to disrupt the legitimate activities of ADOT and Biomoda, Leslie S. Robins and Alvin D. Robins defamed Biomoda and ADOT officers, directors and employees.

29.     Leslie S. Robins wrongfully prevented Mr. Cousins and other ADOT and Biomoda personnel from having access to the books, records, and files of the companies by changing, or causing to be changed, the keypad entry code and locks at the shared offices of ADOT and Biomoda.   Leslie S. Robins wrongfully appropriated the business records of Biomoda. An investigation of whether such records were altered or destroyed, in contravention of a court order, is underway.

30.     Leslie S. Robins, purporting to act on behalf of ADOT, has initiated and maintained unwarranted, unauthorized litigation against Biomoda (likely funded with money he took from Biomoda and ADOT accounts) in an effort to prevent Biomoda from removing Leslie S. Robins from the board of directors of Biomoda and to foreclose on a debt due to ADOT allegedly in the amount of $2.3 million.   Despite explicit disavowals of the unauthorized litigation communicated to Leslie S. Robins and his attorneys by Michael Pete, president of ADOT, Mr. Leslie and his attorneys persisted in pursuing the claims and publicizing them, in an effort to harm Biomoda, and with total disregard for the damaging impact of such conduct on ADOT.

31.     Leslie S. Robins and Alvin D. Robins have publicized false and unauthorized claims against Biomoda to investors, prospective investors, and others with important relations to Biomoda, for the purpose of damaging Biomoda's business and reputation, and with total disregard for the damaging impact of such conduct on ADOT.

32.     Biomoda believes that Leslie S. Robins' conduct is egregious to the point of criminal liability.   The purpose of the conduct described above is to ruin Biomoda, to the

extreme detriment of all those who invested time and money in the medical technology licensed by Biomoda, which even now undergoes successful clinical testing.  Letters published by Mr. Kearns on July 24, 2007 and by Mr. Robins on August 14, 2007, explicitly set forth this goal. Mr. Kearns, now nominally acting on behalf of ADOT, purports to foreclose upon the debt due to ADOT from Biomoda (then represented to be $1.3 million), with the expectation this will result in the liquidation of Biomoda.  In turn, Mr. Robins states in his letters addressed to Biomoda investors, that his conduct is intended to trigger a default upon Biomoda's obligations, permitting him, in the guise of ADOT, to seize Biomoda assets, to spin those off into a new corporation, from which he can again sell stock (and, likely, repeat his pattern of fraudulent stock sales).  The clear intent of Leslie S. Robins' letter is to discourage further investment in Biomoda, in an effort to engineer Biomoda's default.

33.    The Court should enter a temporary restraining order, a preliminary injunction and a permanent injunction precluding Leslie S. Robins or any person acting in concert with him, most particularly his brother Alvin D. Robins, from representing himself as a spokesperson, officer, director of Biomoda, and requiring him to cease and desist any role in the affairs of Biomoda.  The Court should also freeze any and all bank and securities accounts to which Leslie S. Robins and Alvin D. Robins has access, while the extent of the looting by Leslie S. Robins and Alvin D. Robins is identified and corrected.

34.    In most, if not all, of the foregoing conduct, Leslie S. Robins has been aided and abetted by Alvin D. Robins.  The two have conspired against the interests of ADOT and Biomoda, in breach of fiduciary, common law, and legal duties.

## COUNT I
## COMMON LAW FRAUD

35.     Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as though fully set forth herein.

36.     Leslie S. Robins, by and through his attorney, John W. Kearns, made false statements and representations about the issuance of unrestricted Biomoda Inc. stock, and the legality of the its sale.

37.     At the time Leslie S. Robins made these false statements, he was aware of their falsity, or acted with reckless disregard for their truth or falsity.

38.     Leslie S. Robins made these statements with the intent that Biomoda's transfer agent and potential purchasers would rely upon them, causing the transfer agent to issue unrestricted, unauthorized stock.

39.     Biomoda's transfer agent and stock purchasers did rely on these statements and Biomoda stock was improperly issued and sold, with limited proceeds to Biomoda, but with severe damage to Biomoda's market value and fundraising potential, while exposing it to potential shareholder claims.

40.     Biomoda is entitled to recover damages from Leslie S. Robins and John W. Kearns in an amount to be proven at trial.

41.     The acts of Leslie S. Robins and John W. Kearns alleged herein were intentional, willful, wanton, malicious, and/or undertaken with utter disregard for the rights of Plaintiffs, thereby entitling them to an additional award of punitive damages.

## COUNT II
## VIOLATION OF FEDERAL AND NEW MEXICO SECURITIES LAWS

42.     Biomoda incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

10

43.     Leslie S. Robins, directly and by and through John W. Kearns, and via his effective control of Biomoda shares held by ADOT, made untrue statements of material facts and/or failed to state necessary material facts to investors in connection with an offer to sell securities in Biomoda.

44.     Upon information and belief, Leslie S. Robins also engaged in a course of business that operated as a fraud.

45.     The issuance and sale of Biomoda stock caused by Leslie S. Robins and John W. Kearns violated the Securities Act and the Exchange Act.

46.     The issuance and sale of Biomoda stock caused by Leslie S. Robins and John W. Kearns also violated the New Mexico Securities Act of 1986.

47.     The misconduct of Leslie S. Robins and John W. Kearns renders them liable for all damages and remedies provided for under the Securities Act, the Exchange Act, and the New Mexico Securities Act of 1986, including interest and attorney's fees.

## COUNT III – CONVERSION

48.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

49.     Leslie S. Robins unlawfully exercised dominion and control over funds and securities belonging to Biomoda and ADOT, and did so in defiance of their rights in that property.

50.     In the alternative, Leslie S. Robins engaged in acts constituting an unauthorized and injurious use of property belonging to Biomoda and ADOT.

51.     Biomoda and ADOT have suffered damages as a result of Leslie S. Robins' conduct, and are entitled to recover these damages in an amount to be proven at trial.

11

52.     The acts of Leslie S. Robins alleged herein were intentional, willful, wanton, malicious, and/or undertaken with utter disregard for the rights of Biomoda and ADOT, thereby entitling them to an additional award of punitive damages.

## COUNT IV – CIVIL CONSPIRACY

53.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

54.     Leslie S. Robins, John W. Kearns, and Alvin D. Robins conspired to commit the wrongful acts against Plaintiffs described in this Complaint, and carried out these wrongful acts pursuant to the conspiracy.

55.     Plaintiffs have suffered damages as a result of the conduct of Leslie S. Robins, Alvin D. Robins, and John W. Kearns, and are entitled to recover damages in an amount to be proven at trial.

56.     The acts of Leslie S. Robins, John W. Kearns, and Alvin D. Robins alleged herein were intentional, willful, wanton, malicious, and/or undertaken with utter disregard for the rights of Plaintiffs, thereby entitling Plaintiffs to an additional award of punitive damages.

## COUNT V – BREACH OF FIDUCIARY DUTY

57.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

58.     Leslie S. Robins, as a member of Biomoda's board of directors, and its vice president, owed Biomoda and its shareholders fiduciary duties in his capacity as a board member and as an officer of the company.

59.     Leslie S. Robins breached these fiduciary duties by:

A.      the unauthorized looting of Biomoda bank accounts;

B.    failing to properly and promptly pay payroll taxes for both Biomoda and ADOT, and diverting ADOT's tax refund;

C.    unlawfully causing Biomoda stock to be issued and sold, and exposing it to potential liability for same;

D.    failure to pay employees for work done and severance pay; and

E.    failure to pay Biomoda patent fees, trademark fees, license fees, rent and other vendors and office expenses.

60.    Leslie S. Robins, as a member of ADOT's board of directors, and its vice president, owed ADOT and its shareholders fiduciary duties in his capacity as a board member and as an officer of the company.

61.    Leslie S. Robins has breached his fiduciary duties to ADOT by:

A.    holding himself out variously as Chairman, Chief Executive Officer, and/or Chief Operating Officer of the company, when in fact he is not;

B.    exercising and attempting to exercise executive power for which he has no authority;

C.    instituting unauthorized litigation;

D.    hiring lawyers purportedly for the company, but in reality for himself and in furtherance of his own unlawful schemes, all the while using company funds for which he had no authorization;

E.    issuing false or misleading press releases and other public statements purportedly in the name of the company, but with no authority to do so;

F.    locking other corporate officers out of the company's offices;

G.    hiding or converting the corporation's funds and other assets;

13

H.    embarking upon a scheme to transfer or give away the company's assets without authorization, and without the best interests of the company in mind, while exposing ADOT to risk for his securities law violations;

I.    improperly scheduling or attempting to schedule board meetings in contravention of the company's by-laws;

J.    wrongfully intimidating and attempting to intimidate other board members; and

K.    failing to properly and promptly pay payroll taxes.

62.    In purporting to render legal opinions on behalf of Biomoda, communicated to Biomoda's transfer agent, John W. Kearns assumed both professional and fiduciary duties to Biomoda, which he breached in falsely representing that the SB-2 remained in effect.

63.    Plaintiffs Biomoda and ADOT have been damaged by the breaches of fiduciary duty committed by Leslie S. Robins and John W. Kearns and are entitled to recover damages from Leslie S. Robins and John W. Kearns in an amount to be proven at trial.

64.    Furthermore, Alvin D. Robins aided and abetted Leslie S. Robins in breaching his fiduciary duties, such that Alvin D. Robins is also liable for such breaches.

65.    Biomoda and ADOT are also entitled to awards of punitive damages against Leslie S. Robins, John W. Kearns and Alvin D. Robins.

## COUNT VI - NEGLIGENCE

66.    Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

67.    Leslie S. Robins, John W. Kearns, and Alvin D. Robins, with respect to their conduct previously alleged, were at least negligent, and have thus breached duties owed to Plaintiffs.

14

68.     As the direct and proximate result of such negligence Plaintiffs have been damaged in amounts to be proven at trial.

## COUNT VII – PROFESSIONAL MALPRACTICE (AGAINST JOHN W. KEARNS)

69.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as through fully set forth herein.

70.     The conduct of John W. Kearns breached his duties as an attorney for both Biomoda and ADOT.

71.     ADOT and Biomoda have suffered damages resulting from the misconduct of John W. Kearns, in an amount to be proven at trial.

## COUNT VIII - DEFAMATION OF CORPORATE PLAINTIFFS

72.     Defendants Leslie S. Robins and Alvin D. Robins have published defamatory statements regarding corporate Plaintiffs Biomoda and ADOT, assailing their financial or business methods, or accusing them of fraud or mismanagement.

73.     As the direct and proximate result of such wrongful conduct, Plaintiffs Biomoda and ADOT have been damaged in amounts to be proven at trial.

74.     Further, the publication of such defamatory statements was intentional, willful, wanton, malicious, and/or undertaken with utter disregard for the rights of the corporate Plaintiffs, thereby entitling them to an additional award of punitive damages against Leslie S. Robins and Alvin D. Robins.

## COUNT IX – VIOLATION OF FEDERAL AND NEW MEXICO RACKETEERING ACTS

75.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

15

76.     Leslie S. Robins, Alvin D. Robins, and John W. Kearns have conducted, and have conspired to conduct, an enterprise, which affects interstate commerce, through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(a) through (d), inclusive, and have thereby injured the business and property of Biomoda and ADOT.

77.     Leslie S. Robins, Alvin D. Robins, and John W. Kearns have engaged in related unlawful acts, including securities and mail fraud, sometimes purporting to act on behalf of Biomoda and/or ADOT, and/or Beaver, such that their conduct constitutes an open-ended course of criminal conduct which threatens continued danger to the Plaintiffs in the future, and which has consisted of a series of multiple, unlawful acts occurring over a substantial, but closed, period of time.

78.     Leslie S. Robins, Alvin D. Robins, and John W. Kearns have employed the positions held by Leslie S. Robins in ADOT, Biomoda, and Beaver to engage in a pattern of racketeering.

79.     Leslie S. Robins, Alvin D. Robins and John W. Kearns have engaged in a pattern of racketeering activity, as defined in NMSA 1978, § 30-42-3(D).

80.     Plaintiffs have been injured in their business and property by the pattern of racketeering activity engaged in by Leslie S. Robins, Alvin D. Robins, and John W. Kearns and therefore seek all relief available to it pursuant to 18 U.S.C. § 1964 and NMSA 1978, § 30-42-6(A), including treble damages, costs, and reasonable attorney fees.

## COUNT X
## APPLICATION FOR TEMPORARY RESTRAINING ORDER

81.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

82.     The risk of harm to Plaintiffs should Leslie S. Robins and any of his agents, employees, and representatives continue to represent that they act for them is immediate and extreme since such representations could result in further theft, misdealing, and deceit aimed at harming them.

83.     The risk of harm to Plaintiffs should Leslie S. Robins and any of his agents, employees, and representatives be allowed access to their records, accounts, files, proprietary information, etc. is immediate and extreme.

84.     The potential harm to Plaintiffs if Leslie S. Robins and any of his agents, employees, and representatives are permitted continued access to these records and accounts is severe since such access could allow the further depletion of their operating funds, and/or the loss of valuable records. This harm, absent injunctive relief, is truly irreparable.

85.     There is a substantial likelihood that Plaintiffs will ultimately prevail on the merits of their claims for injunctive relief, because, among other things, Leslie S. Robins has engaged in illegal transactions to defraud the companies.

86.     This application for a temporary restraining order seeks to:

A.     prevent Leslie S. Robins and any of his agents, employees, and representatives from accessing or further utilizing Plaintiffs' business assets to harm and/or steal from Plaintiffs;

B.     require Leslie S. Robins and any of his agents, employees, and representatives to stop representing that they have authority to act on behalf of Plaintiffs;

C.     cease all contact, connection, and association with Plaintiffs' business, including but not limited to, Plaintiffs' daily operations, transactions, and dealings;

17

D.      require Leslie S. Robins to allow Mr. Cousins and the proper agents, employees and officers of Plaintiffs access to Plaintiffs' offices, to deliver any books, records, files, and other property of any sort, which Leslie S. Robins or his agents have appropriated and failed to return, to identify all records, files, or other property of Biomoda or ADOT he has destroyed, altered, or taken; and

E.      prevent Leslie S. Robins from conducting activities which are contrary to law.

87.     Because this application for a temporary restraining order seeks only to prevent Leslie S. Robins and any of his agents, employees, and representatives from conducting activities that harm Biomoda and which are contrary to law, no bond should be required to secure the granting of a temporary restraining order in this case.

## COUNT XI
## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

88.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

89.     Plaintiffs are entitled to a preliminary and permanent injunction which extends the terms of the temporary restraining order. Preventing Leslie S. Robins from accessing accounts and records associated with Plaintiffs is necessary to ensure the continued operational viability of Plaintiffs and prevent further theft and deceitful dealings.

WHEREFORE, the Plaintiffs request that the Court enter judgment in its favor and against all Defendants, jointly and severally and that the Court grant it the following relief:

A.      compensatory damages to be proven at trial;

B.      punitive damages;

18

KELEHER & McLEOD, P.A.


By_*Electronically filed /s/*_____
W. Spencer Reid
Thomas C. Bird
Attorneys for Plaintiffs Biomoda, Inc.
P.O. Box AA
Albuquerque, NM 87103
Telephone: (505) 346-4646
Telefax:  (505) 346-1370


24274 ~ 10945-001

C.    the costs and attorney's fees the Plaintiffs incur in this matter;

D.    prejudgment and post judgment interest;

E.    a temporary restraining order freezing the bank and securities accounts of Leslie
      S. Robins or any person acting in concert with him, most particularly his brother
      Alvin D. Robins, that may have co-mingled funds associated with Biomoda and
      ADOT so as to prevent further detriment to either company, requiring (i) that
      Leslie S. Robins return all records and assets related to Biomoda and/or ADOT,
      (ii) that Leslie S. Robins restore access to ADOT's and Biomoda's office, records
      and files to Mr. Cousins and Biomoda's other proper agents and employees, (iii)
      that Leslie S. Robins return all funds withdrawn from Biomoda's and ADOT's
      securities and bank accounts, and that Leslie S. Robins or any person acting in
      concert with him cease and desist any further actions detrimental to either
      company;

F.    after notice and a hearing, a permanent injunction;

G.    Waiver of the furnishing of security; and

H.    Any additional relief that this Court deems just and proper.

                            Respectfully submitted,


                            By_____
                            Phil Krehbiel
                            Attorney for Plaintiff Advanced Optics Electronics,
                                Inc.
                            5901 Tierra Viva Pl NW
                            Albuquerque, NM  87107
                            (505) 401-3860; (505) 345-2245 fax
                            philkrehbiel@msn.com


                                    19

## VERIFICATION

STATE OF NEW MEXICO    )
                       )   ss.
COUNTY OF BERNALILLO   )

John J. Cousins, having been first duly sworn upon oath, states that he

has read the foregoing Complaint and that the statements therein are true and accurate

to the best of his knowledge and belief.

John J. Cousins
Individually, and as
President of Biomoda, Inc., and as
Vice President of Advanced Optics
Electronics, Inc.

SUBSCRIBED, AND SWORN TO before me this **28** day of August 2007, by

John J. Cousins.

Notary Public

My Commission expires:

24274-10945-001

⚖JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Biomoda, Inc.
Advanced Optics Electronics, Inc.

## DEFENDANTS

Leslie S. Robins
Alvin D. Robins, John W. Kearns

**(b)** County of Residence of First Listed Plaintiff   Bernalillo, NM
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Bernalillo, NM
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Phil Krehbiel, 5901 Tierra Viva Pl. NW, Albuq., NM 87107
W. Spencer Reid, P.O. Box AA, Albuq., NM 87103

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
    Plaintiff

☒ 3  Federal Question
    (U.S. Government Not a Party)

☐ 2  U.S. Government
    Defendant

☐ 4  Diversity
    (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                           and One Box for Defendant)

|                              | PTF | DEF |                                                       | PTF | DEF |
|------------------------------|-----|-----|-------------------------------------------------------|-----|-----|
| Citizen of This State        | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State     | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                              | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

Appeal to District
Judge from
Magistrate
Judgment

☒ 1  Original
    Proceeding

☐ 2  Removed from
    State Court

☐ 3  Remanded from
    Appellate Court

☐ 4  Reinstated or
    Reopened

☐ 5  Transferred from
    another district
    (specify)

☐ 6  Multidistrict
    Litigation

☐ 7  Appeal to District
    Judge from
    Magistrate
    Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. §1964

Brief description of cause:
Violation of federal RICO and Securities Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   *Aug. 29, 2007*

SIGNATURE OF ATTORNEY OF RECORD   *J C B d*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____