## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

ADVANCED OPTICS ELECTRONICS, INC., and
BIOMODA, INC.

       Plaintiffs,

vs.                                                    No. CIV-07-0855 JB-DJS

LESLIE S. ROBINS, ALVIN D. ROBINS,
and JOHN W. KEARNS,

       Defendants.

### FIRST AMENDED COMPLAINT
### FOR COMMON LAW FRAUD, VIOLATION
### OF FEDERAL AND NEW MEXICO SECURITIES LAWS,
### <u>CONVERSION, BREACH OF FIDUCIARY DUTY, AND RACKETEERING</u>

Plaintiffs Advanced Optics Electronics, Inc., and Biomoda, Inc. ("Plaintiffs"), by and through their attorneys of record, Phil Krehbiel, Esq. and Keleher & McLeod, P.A., state the following as their First Amended Complaint:

1.      The Court has subject matter jurisdiction over the claims in this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2.      Plaintiff Advanced Optics Electronics, Inc. ("ADOT") is a Nevada corporation doing business in New Mexico, with its principal place of business in Albuquerque, New Mexico.

3.      Plaintiff Biomoda, Inc. ("Biomoda") is a New Mexico corporation doing business in New Mexico, with its principal place of business in Albuquerque, New Mexico.

4.      Defendant Leslie Robins is a resident of Albuquerque, New Mexico.  He is a former officer and director of Biomoda, and an officer and director of ADOT.

5.      Defendant Alvin Robins is a resident of La Porte, Texas and brother to Defendant Leslie S. Robins.  He conducts business in New Mexico.  As of the date of this First Amended Complaint, Alvin Robins has failed to file a responsive pleading to the original complaint in this matter and is therefore in default.  The Plaintiffs are therefore entitled to a determination that he is liable by default for the conduct alleged in the original complaint.

6.      John Kearns is an attorney practicing in Coral Gables, Florida, where, upon information and belief, he resides. As of the date of this First Amended Complaint, John Kearns has failed to file a responsive pleading to the original complaint in this matter and is therefore in default.  The Plaintiffs are therefore entitled to a determination that he is liable by default for the conduct alleged in the original complaint.

7.      Defendants have each transacted business and committed tortious acts within New Mexico, such that this Court has personal jurisdiction over each of them, pursuant to NMSA 1978, § 38-1-16.   Pursuant to the Court's Memorandum Opinion and Order entered on September 29, 2008, the Plaintiffs hereby amend their original complaint to delete any claims made by ADOT against Leslie Robins, pending authorization by ADOT's Board of Directors to assert such claims.  Upon receiving such authorization, ADOT will request leave to amend its complaint to reassert claims against Leslie Robins, assuming such leave is required.   ADOT expressly reserves the right to assert such claims.  Further, Biomoda hereby amends its original complaint, pursuant to the September 29, 2008 Memorandum Opinion and Order, to set out additional predicate acts of rackeetering activity by Leslie Robins and others acting in concert with him, such that Biomoda's claims against the Defendants, and ADOT's  claims against Alvin

2

Robins and John Kearns, include claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

8.      Biomoda was incorporated in New Mexico on January 3, 1990 by Ari Ma'ayan and others, for the purpose of acquiring a license to certain medical technology patented by the Los Alamos National Laboratory.  Biomoda did acquire such licenses.  Mr. Ma'ayan and the initial investors worked to develop and prove up that technology, and raise the money for this effort via the sale of stock and by other means.  By 1998, however, Biomoda was in need of an infusion of additional capital.  In that year, approximately twenty-five percent of the outstanding stock of Biomoda was sold to ADOT for this purpose, in exchange for approximately $470,000.00.  Over time, ADOT acquired additional shares of Biomoda stock, ostensibly in connection with purported loans from ADOT to Biomoda.

9.      ADOT was incorporated on or about May 22, 1996.  In November 1996, ADOT acquired all of the assets of PLZ-Tech, Inc., an entity created, upon information and belief, by Leslie Robins.  ADOT itself began publicly trading in 1998.  Having gone public, it was necessary for ADOT to begin filing periodic reports with the Securities and Exchange Commission ("SEC") pursuant to the Securities and Exchange Act of 1934, as amended (the "Exchange Act").

10.      When ADOT purchased twenty-five percent of Biomoda, Leslie Robins became a director of Biomoda.  However, Ari Ma'ayan continued to serve as president.

11.      Prior to April, 2002, however, Mr. Ma'ayan concluded that he could go no further with Biomoda and indicated that it might be necessary to discontinue its operations. Recognizing the value of its technology, however, ADOT personnel agreed to undertake the operations of Biomoda.  Mr. Ma'ayan resigned from Biomoda on April 10, 2002.  Following

Mr. Ma'ayan's resignation, Mr. Cousins also became a Biomoda director and its president, and Leslie Robins became Biomoda's vice president.

12.     As of December 31, 2006, ADOT held approximately 29.54% of Biomoda's outstanding common stock.  Beginning with ADOT's 2005 annual report on Form 10-KSB, ADOT consolidated its financial statements with Biomoda in accordance with Financial Accounting Standards Board Interpretation Number 46.

13.     As part of the effort to raise funds for Biomoda, in 2003, its management sought to sell 5,000,000 shares of stock to the public at $6.00 per share, pursuant to a registration statement which the SEC declared effective on July 11, 2003.  No shares were sold under this offering.  Subsequently, Biomoda management filed a post-effective amendment to the SB-2 registration statement on February 4, 2005 to include updated audited financial statement information through the period ended December 31, 2003.  Pursuant to this amendment, Biomoda offered 5,000,000 shares to the public at $3.00 per share.  It also filed a new related SB-2 registration statement to register an additional 1,000,000 shares to the offer.  On February 11, 2005, the SEC declared effective the combined total SB-2 offering of 6,000,000 shares at $3.00 per share.  No sales of stock took place pursuant to these registered offerings.  Biomoda continues to file periodic reports with the SEC pursuant to the Exchange Act.

14.     Thereafter, Biomoda's management sought to make a market for Biomoda stock by initiating quotations of its common stock on the OTC Bulletin Board.  To do so, Biomoda was first required to represent to the regulating agency, NASD, and in fact accomplish, the termination of its SB-2 offering.  The closing of the offering occurred on or about July 19, 2006 as fully disclosed to NASD and the public in the following Exchange Act reports filed with the SEC: Biomoda's quarterly report on Form 10-QSB for the quarter ended September 30, 2006, its

annual report on Form 10-KSB for the year ended December 31, 2006, and its 2007 quarterly reports on Form 10-QSB.  Furthermore, the closing of Biomoda's SB-2 offering was also reported in ADOT's 2006 Form 10-KSB and Form 10-QSB filings that were signed and certified by Leslie S. Robins.  In addition, the SB-2 registration was, in any event, "stale" after November 2006 in accordance with SEC rules because it only contained audited financial information for 2003.  Consequently, the 2005 SB-2 registration could no longer be used to issue any Biomoda shares.  Thereafter, Biomoda management would have to file a new SB-2 registration statement with updated financial information that would require prior SEC review and approval before being able to issue and sell pursuant to an effective SB-2 registered offering.  In the absence of an effective registration statement, Biomoda could only sell shares pursuant to an applicable exemption from the Securities Act of 1933, as amended (the "Securities Act") and shares so sold required a restrictive legend disclosing that they were unregistered shares subject to trading and resale restrictions.

15.     Biomoda common stock began trading on or about November 21, 2006 on the OTC Bulletin Board under the symbol "BMOD" and closed the year at $2.70 per share.  The stock price fell sharply in January 2007, and again plummeted in the period from May through July, with significant volumes, relatively speaking, being traded in both periods.  Mr. Cousins initiated an investigation of the price collapse and that investigation continues.

16.     To date, the investigation reveals that Leslie Robins flooded the market with Biomoda stock in the period from January 2007 through July 2007, putting at least 3,610,000 shares of facially unrestricted stock in circulation, by various means.

17.     One such method involved Leslie Robins' sole and unauthorized action in retaining John Kearns.  Notwithstanding the fact that Leslie Robins was fully aware that the 2005

SB-2 offering for registered unrestricted stock was closed, and that Biomoda had not consented and could not consent to the issuance of new shares prior to having a new SEC approved SB-2 registration statement or having a specifically Board-approved unregistered transaction made only in compliance with an applicable exemption from the registration requirements of the Securities Act with applicable restrictive legends on any such unregistered stock certificates, Leslie Robins had Mr. Kearns write letters expressing the legal opinion that the 2005 SB-2 offering was still open and directing the issuance of Biomoda shares without restrictions, despite publicly available records to the contrary.  Mr. Kearns wrote at least five such letters to Biomoda's transfer agent, OTR Transfer & Registry Agency in June and July of 2007.  Based upon these letters, Leslie Robins caused the transfer agent to issue approximately 1.768 million shares, which Mr. Robins caused to be sold or otherwise distributed.  Mr. Robins knew the representations in Mr. Kearns' letters were false, and Mr. Kearns either knew, as well, or through the exercise of ordinary care, should have known.

18.     The second method identified to date which Leslie Robins used to improperly flood the market with Biomoda shares was the sale or transfer of approximately 1.844 million shares of Biomoda stock held by ADOT, at the direction of Leslie Robins, without authority.

19.     Biomoda shares held by ADOT were "control shares," subject to Rule 144 of the Securities and Exchange Commission, because of ADOT's affiliate relationship to Biomoda.  As such, Biomoda shares distributed or sold by ADOT were restricted.  Further, Rule 144 limited ADOT to selling no more than 1% of the outstanding shares of Biomoda in any three month period, and then only after filing notice with the SEC.

20.     The transfer by ADOT of approximately 1.844 million facially unrestricted shares, at the unauthorized direction of Leslie Robins, violated the law with respect to the transfer of control shares.

21.     Upon information and belief, ADOT and Biomoda received some funds allegedly generated by the unauthorized and improper sale of Biomoda shares by Leslie Robins.  If those receipts represent all the proceeds of the sale, each such sale was made at prices well below current market value.  However, the vast majority of the stock was apparently transferred for "services" which ADOT and Biomoda did not receive, or from which Biomoda did not benefit.

22.     Upon information and belief, ADOT's sale of Biomoda's shares was brokered, at least in part, by an entity identified as Beaver Information Technology, Ltd. ("Beaver"), before being sold on the market.  Beaver is alleged by Alvin Robins and Leslie Robins to be a Philippine corporation.  The last known address for Beaver, however, is Alvin's home.  Further, Leslie Robins has signed documents on behalf of Beaver, purportedly as vice president and secretary.  Other transfers were made to Standard Asset Management, a Robins front, to John Kearns, and to Robins' family members and cronies.

23.     The effect of improperly distributing millions of shares of facially unrestricted Biomoda stock for no money, or at prices well below market, to persons or groups which simply resold the stock, was to drive down the price of Biomoda's stock, and to impair Biomoda's capacity to raise funds.

24.     When Leslie Robins became aware that Mr. Cousins had discovered Mr. Robins' fraudulent activity, one of Mr. Robins' first actions was to empty Biomoda and ADOT bank accounts.  He has acknowledged taking all the cash available to Biomoda, which he represents was $35,000.  It is also believed that he had previously used his position with Biomoda and

7

ADOT to co-mingle Biomoda funds with ADOT funds, in ADOT accounts.  It is believed that Leslie Robins improperly withdrew all funds from those co-mingled accounts.  Other improprieties have come to light.  Leslie Robins, who had check writing authority for both Biomoda and ADOT, failed to employ funds of those entities to keep them current on their obligations.  For example, Mr. Robins failed to pay payroll taxes for either company, leaving ADOT exposed to a liability of at least $155,000.00, and Biomoda exposed to liability of at least $35,000.00.  While Mr. Cousins had some information about a potential tax liability prior to July, 2007, he was assured by Leslie Robins that it was a minor issue, with limited exposure, to be quickly resolved.  Mr. Cousins did not learn the details and extent of the problem until he began his investigation.  Further, Mr. Cousins learned that Leslie Robins had ceased paying rent, patent, trademark and license fees, and other vendors and office expenses.

25.     A number of other matters are still under investigation, but it appears that Leslie Robins also created a false account payable to his son, Oliver Robins, or an entity controlled by his son, on the books of ADOT, and diverted approximately $88,000.00 in ADOT assets, plus stock, to his son.  Leslie Robins appears to have transferred large volumes of ADOT shares to family members, under the names of business organizations operated or controlled by the Robins family member or associate, without consideration to ADOT or Biomoda.  Leslie Robins thus provided large volumes of ADOT and Biomoda shares to persons, including his son, Oliver Robins, purportedly as compensation for services performed for ADOT or Biomoda, when in fact no such services were provided.  In providing shares of ADOT or Biomoda in exchange for sham services, Leslie Robins did not obtain the approval or authorization of the Biomoda or ADOT boards.

26. Also, after Leslie Robins learned that his improprieties were under investigation, he contacted persons and entities who were prepared to pay funds to Biomoda or ADOT, or otherwise engage in business with them, in an effort to divert funds to himself. Upon information and belief, Leslie Robins also wrongfully diverted a tax refund payment of approximately $66,000 which ADOT is entitled to receive. He also attempted to divert funds from Biomoda's sale of unregistered, restricted stock in Europe.

27. In the course of this activity, and as part of an effort to disrupt the legitimate activities of ADOT and Biomoda, Leslie Robins and Alvin Robins defamed Biomoda and ADOT officers, directors and employees.

28. Leslie Robins wrongfully prevented Mr. Cousins and other ADOT and Biomoda personnel from having access to the books, records, and files of the companies by changing, or causing to be changed, the keypad entry code and locks at the shared offices of ADOT and Biomoda. Leslie Robins wrongfully appropriated the business records of Biomoda. An investigation of whether such records were altered or destroyed, in contravention of a court order, is underway.

29. Leslie Robins, purporting to act on behalf of ADOT, has initiated and maintained unwarranted, unauthorized litigation against Biomoda (likely funded with money he took from Biomoda and ADOT accounts) in an effort to prevent Biomoda from removing Leslie S. Robins from the board of directors of Biomoda and to foreclose on an alleged debt due to ADOT, allegedly in an amount exceeding $2,000,000.

30. Leslie Robins and Alvin Robins have publicized false and unauthorized claims against Biomoda to investors, prospective investors, and others with important relations to

Biomoda, for the purpose of damaging Biomoda's business and reputation, and with total disregard for the damaging impact of such conduct on ADOT.

31.    Biomoda believes that Leslie Robins' conduct is egregious to the point of criminal liability.    The purpose of the conduct described above is to ruin Biomoda, to the extreme detriment of all those who invested time and money in the medical technology licensed by Biomoda, which even now undergoes successful clinical testing.    Letters published by Mr. Kearns on July 24, 2007 and by Leslie Robins on August 14, 2007, explicitly set forth this goal. Mr. Kearns, nominally acting on behalf of ADOT, purported in his July 24, 2007 letter to foreclose upon the debt allegedly due to ADOT from Biomoda (then represented to be $1.3 million), with the expectation that doing so will result in the liquidation of Biomoda.    In turn, Leslie Robins stated in his letters addressed to Biomoda investors that his conduct is intended to trigger a default upon Biomoda's obligations, permitting him, in the guise of ADOT, to seize Biomoda assets, to spin those off into a new corporation, from which he can again sell stock (and, likely, repeat his pattern of fraudulent stock sales).    The clear intent of Leslie Robins' letter is to discourage further investment in Biomoda, in an effort to engineer Biomoda's default.

32.    The debt allegedly owed to ADOT, and the litigation initiated by Leslie Robins to enforce it, are a sham.    Leslie Robins directed the filing of the collection suit, nominally on behalf of ADOT, allegedly in an effort by ADOT to foreclose upon a promissory note and a related security agreement.    Leslie Robins claims ADOT is owed the amount of either approximately $2.19 million or $2.95 million (two different numbers are found in the Complaint).    The promissory note purports to be a line of credit note with a limit of $3 million, secured by essentially all of the assets of Biomoda.

33.     In recent months, Biomoda employees have recovered a substantial volume of ADOT and Biomoda documents taken by Leslie Robins, and returned pursuant to pending Court proceedings or abandoned by him.   Examination of these records in conjunction with other records and information available to Biomoda indicates that the claim that Leslie Robins asserts on behalf of ADOT is false.   In fact, little or no funds were ever advanced by ADOT to or for Biomoda pursuant to the subject note.

34.     Further, to secure the unfulfilled promise to loan Biomoda up to $3 million, Biomoda transferred to ADOT 1,176,471 shares of unrestricted Biomoda stock on October 23, 2006.  At the time of the transfer, the value of the stock was at least $3 per share for a total value in excess of $3.5 million.  By November 30, 2006, that value rose to approximately $4 per share with a total value of more than $4.7 million.  However, in May, June and July, 2007, Leslie Robins caused a substantial portion of that stock to be sold or transferred for little or no consideration.

35.     Over 600,000 of the subject shares were transferred by Leslie Robins to Hope Capital for approximately $110,000 in May and June 2007, effectively at approximately $0.18 per share.  Hope Capital immediately sold all of this stock.  In May and July, 2007, Mr. Robins transferred another 125,000 share to Gary Reid for no consideration at all.  Mr. Reid immediately sold all of these shares.

36.     Leslie Robins also induced Biomoda to transfer an additional 500,000 shares of unrestricted Biomoda stock on April 4, 2007, nominally to pay down the non-existent loan. Given the flood of Biomoda stock Mr. Robins already unleashed upon the market, the market price on the date of the transfer was $0.85 per share, for a then present value of $425,000.  Upon

information and belief, Mr. Robins was unable to liquidate this stock before elements of his misconduct were discovered, and his transfers of Biomoda stock suspended.

37.     Leslie Robins' transfer of Biomoda stock held by ADOT, to third parties, effectively flooded the market with Biomoda shares at substantially discounted prices, driving the Biomoda stock price to levels as low as a nickel.  Upon information and belief, this was an effort to defraud Biomoda and its investors, to enrich Leslie Robins and his cohorts in a short selling scheme, and part of a plan to cause the collapse of Biomoda, all to Leslie Robins' benefit.

38.     Mr. Kearns also participated in the unauthorized efforts to foreclose on Biomoda's sham debt to ADOT.  During the same summer in which Mr. Kearns wrote and sent the five letters as counsel for Biomoda misrepresenting the status of the SB-2 registration, he wrote three other letters related to Biomoda's alleged debt to ADOT, including a letter demanding payment of $1.3 million.  The first of these letters, dated July 19, 2007, went to Dr. Herbert Whitaker, a Biomoda director.

39.     Mr. Kearns' letter of July 19, 2007 stated that he represented "a class of shareholders and creditors which have formed a committee to safeguard assets of Biomoda, Inc. which secure [ADOT's] $1,300,000 loan to Biomoda."  It stated that the loan was in default, instructed Dr. Whitaker to "cease and desist" activities that could impair ADOT's secured position, stated that Mr. Kearns is "combining our efforts with the law offices of Elvin Kanter" (an Albuquerque attorney), and threatened litigation in Florida.

40.     A second letter from Mr. Kearns, sent by e-mail, dated July 20, 2007, and addressed to Ms. Maria Zannes, Esq., contained statements similar to those in the July 19, 2007 letter to Dr. Whitaker.  The letter also stated that:

> As you must know, ADOT is the only creditor of Biomoda and holds a perfected UCC assignment of all of Biomoda's assets, including all funds, present and future, until Biomoda's debt due to ADOT, is satisfied in full.  Nevertheless, ADOT is willing to work with Biomoda, Inc. to obtain an arrangement under which ADOT will approve Biomoda disbursements for the proper utilization and application of funds received from the New Mexico Department of Veterans Services, or from any other services.

41.     Mr. Kearns wrote a third letter, dated July 24, 2007, to John Cousins, Maria Zannes, and Dr. Whitaker. The letter stated that "[w]e have been retained by Advanced Optics Electronics to obtain payment of Biomoda, Inc.'s Secured Multiple Advance Promissory Note balance of $1,300,000 to enforce UCC documents filed with the New Mexico Secretary of State."  The next paragraph of the letter stated as follows:

> ADOT realizes that the foreclosure of this note and the intended seizures will result in liquidation of Biomoda, Inc., a prospect not particularly welcomed by ADOT and its shareholders nor by Biomoda, Inc. and its shareholders.  In view of this, we suggest a mediation conference in lieu of the director's meeting called by Mr. Cousins for Thursday, July 26, 2007.

43.     Sometime in the middle of September, 2007, Leslie Robins contacted one of his business associates by telephone.  In this conversation, Mr. Robins said that he was "fed up" with John Cousins and asked the business associate if he knew of someone who could "take care of John."  The associate understood this question to mean that Mr. Robins wanted to know if the associate knew of someone who could be hired to harm or kill John Cousins.  In other conversations with this associate, occurring in the summer and fall of 2007, Leslie Robins advised that he knew of impending sales of large volumes of Biomoda stock and suggested that the associate sell his shares of Biomoda stock immediately to avoid losses resulting from a decline in the share price.  On November 9, 2007, Leslie Robins called the associate to say that "something bad is going to happen" and that the associate should liquidate all of his Biomoda

shares immediately.  Leslie Robins used interstate wire communications in his discussions with this associate.

44.      In June, 2007, Leslie Robins entered into a Corporate Consulting Agreement with Seacoast Advisors, Inc. ("Seacoast"), a California-based investor relations firm.  Leslie Robins entered into the agreement without the knowledge or approval of any other officer, director, or employee of Biomoda.  Under the agreement with Seacoast, Leslie Robins agreed to compensate Seacoast through payment of $35,000 and the issuance of 75,000 restricted shares of Biomoda stock.  Leslie Robins provided Seacoast with 100,000 restricted shares of Biomoda stock, but never requested or obtained the authorization of Biomoda's board of directors for the issuance of the 100,000 shares of Biomoda stock he provided to Seacoast.  Leslie Robins' association with Seacoast resulted from a recommendation made to him by Joseph V. Pignatiello.  In the course of arranging the unauthorized agreement with Seacoast, providing Seacoast with a certificate for 100,000 shares of Biomoda's stock, and discussing Seacoast with Mr. Pignatiello, Leslie Robins used interstate mails and wire communication.

45.      On September 12, 2007, John Cousins and Verrity Gershin, another Biomoda representative, encountered Leslie Robins at the offices of Biomoda and ADOT.  Mr. Cousins and Ms. Gershin went to the offices in an effort to recover the records and property of Biomoda and ADOT.  They had gained entry to the locked building with the permission of the landlord and after notifying the police.  On that day, Leslie Robins and Mr. Ronnie Cabrarra, an ADOT employee who had been helping Leslie Robins, were also present at the Biomoda/ADOT offices. Mr. Cabrarra told Mr. Cousins and Ms. Gershin that they should not be "f...king with an old man," that "what goes around, comes around," that "payback can be a bitch," and that they should "watch our backs," especially since we "have family."  Mr. Cousins reported these threats

to the police.  Mr. Cousins and Ms. Gershin understood Mr. Cabrarra's statements to have been threats of physical harm to themselves and their family members, intended to retaliate for, or to discourage the participation of Mr. Cousins and Ms. Gershin as witnesses or parties in ongoing and future legal proceedings related to Leslie's Robins' unlawful conduct.

46.     Leslie Robins has misappropriated funds belonging to ADOT and Biomoda. Upon discovering that Leslie Robins was involved in the unauthorized issuance and sale of Biomoda's shares, Mr. Cousin's asked Biomoda's banker, Lynn Nethery of New Mexico Bank and Trust, about freezing Biomoda's bank account.   In the course of discussions with Mr. Nethery about Biomoda's account, Mr. Cousins learned that, on July 21, 2007, $35,000 from Biomoda's account had been transferred to ADOT's account; that a $35,000 cashier's check had been drawn on the ADOT account; that Leslie Robins had deposited the cashier's check in the account at Wells Fargo Bank of an entity called PLZ Tech (a forerunner of ADOT); and that, as a result of a $7,000 deficiency in PLZ Tech's account, funds wired by Leslie Robins to various recipients, and $22,000 in cash taken by Leslie Robins, the $35,000 was completely depleted. Leslie Robins removed $35,000 from Biomoda's account without the permission or authorization of Biomoda.

47.     In addition to the $35,000 he misappropriated from Biomoda, Leslie Robins misappropriated a $66,000 High Wage Job tax credit payment sent to ADOT by the New Mexico Department of Taxation and Revenue.   On August 7, 2007, Mr. Cousins contacted Kimberly Lowe and Claudette Montoya at the Department to ask about delivery of the check to him or to Michael Pete, ADOT's president.  Mr. Cousins learned that Leslie Robins had contacted them already and insisted that the check be sent to his P.O. Box, and that the check had already been

sent to him.   ADOT's business records do not reflect a deposit in ADOT's accounts of the $66,000 payment, or use of those funds for legitimate ADOT business.

48.     Alvin Robins has posted false and damaging attacks on Biomoda and its management on an internet "bulletin board" called "Raging Bull."  He has made these postings under the nickname of Arbit9 (**A**lvin **R**obins **B**eaver **I**nformation **T**echnology).   Arbit9's postings became hostile and defamatory at about the time the misconduct of Leslie Robins came to light.  The postings attacked the business integrity of Biomoda and its officers and directors, particularly John Cousins.   A posting dated 19 Aug. 2007 stated that: "… Cousins is selling Biomoda shares in Germany at a 64% discount and then moved the $ to a secret bank acct that only Cousins signs on!  WOW."; "… Cousins has a criminal conflict of interest since he and exec vp of Biomoda Whitaker are now only officers and directors of Biomoda."; … "Cousins beat up an old man, 82 year old Dr. Goodman to force him to resign so Cousins and his buddy Whitaker could keep ADOT & Robins out of Biomoda …" "… Now the FOX (Cousins) IS GUARDING THE HENHOUSE $3,000,000 that Biomoda owes ADOT!"  Other Arbit9 postings confirm the scheme to strip away Biomoda's assets by the unlawful foreclosure on Biomoda's sham debt to ADOT.   A posting dated 18 Sept. 2007 stated: "BMOD won't have anything left when ADOT gets all of BMOD's equipment & <u>patents</u> in pending foreclosure case … what can they do without all the patents and equipment?" A posting dated 27 Sept. 2007 stated: "[the foreclosure suit] is alive & well to foreclose against Biomoda and for ADOT to take back all of Biomoda's <u>assets</u>.  Then ADOT can spin off 90% of a NEW Biomoda to ADOT's shareholders and Robins can keep finding research $ for the NEW Biomoda…."  A posting dated 19 Sept. 2007 stated: "ADOT is pressing the foreclosure so ADOT will get all of BMOD patents and assets and I bet, spin off a new company…." A posting dated 19 Sept. 2007 stated: "if ADOT

can seize all of BMOD assets, the patents and the equip, then it can spin off a new clean co with all the BMOD goodies and distribute them to all ADOT shareholders…." A posting dated 5 Nov. 2007 stated: "ADOT will likely spin off BMOD assets into a new Bio Co and give it to ADOT shareholders…." In making these postings, Alvin Robins used interstate wire communications.

49.    Alvin Robins has also exerted significant influence over the business of ADOT and Biomoda through the position of his brother, co-defendant, and co-conspirator Leslie Robins. When the Board of Directors of Biomoda met in Albuquerque on July 26, 2007, to vote on removing Leslie Robins from the Board, Alvin Robins attended the meeting, and refused to leave when asked to do so by Mr. Cousins.  When the Board discussed the grounds for removing Leslie Robins, and questioned Leslie Robins about his conduct, Alvin Robins disrupted the meeting repeatedly.  Questions arose about Standard Asset Management's involvement in the unauthorized issuance and sale of Biomoda shares, and the issuance of 90,000 shares of Biomoda to Standard Asset Management.  Leslie Robins did not speak, but Alvin Robins identified himself as "the advisor" to Standard Asset Management.  He reminded Mr. Cousins of the "extraordinarily favorable deal" Mr. Cousins and Alvin Robins struck through Standard Assets Management with Los Alamos National Laboratory in August, 2006.  Alvin Robins also said that Standard Asset Management had provided "extraordinary services for [ADOT]" in negotiating settlements.  Also, Mr. Cousins questioned Leslie Robins and Alvin Robins about dealings with Beaver Information Technologies.  Alvin Robins eventually answered that "Beaver Technologies has provided extraordinary funding for the company…."  When pressed about whether Beaver Information Technologies had the same address as Alvin Robins, Alvin Robins refused to answer.

50.     Also, when Lewis White, an owner of more than 1 million Biomoda shares, contacted Leslie Robins in June 2007 to ask about the precipitous drop in the price of Biomoda shares, Alvin Robins called Lewis White numerous times to report on his (Alvin's) research into the problem and his (Alvin's) thought that "it may be naked shorting…."  In an e-mail message recounting his dealings with Alvin and Leslie Robins, Lewis White said that he had found that Leslie Robins illegally manipulated the transfer agent to issue to Leslie Robins and his accomplices over a million shares of Biomoda shares, which Leslie Robins dumped into the market, with the result being the share price crashed to 6 cents per share.

51.     Alvin Robins also took on the role of settlement facilitator after Leslie Robins was removed from the Biomoda Board on August 7, 2007.  Alvin Robins is plainly acting to prevent further exposure of the unlawful scheme undertaken by Leslie Robins, John Kearns, and himself.

52.     In most, if not all, of the foregoing conduct, Leslie S. Robins has been aided and abetted by Alvin Robins.  The two have conspired against the interests of ADOT and Biomoda, in breach of fiduciary, common law, and legal duties.

## COUNT I
## COMMON LAW FRAUD

53.     Biomoda hereby incorporate the allegations of the foregoing paragraphs as though fully set forth herein.

54.     Leslie Robins, by and through his attorney, John Kearns, made false statements and representations about the issuance of unrestricted Biomoda Inc. stock, and the legality of its sale in a series of letters sent to Biomoda's transfer agent from John Kearns in June and July, 2007.  These letters falsely stated that Biomoda's SB-2 filing remained effective, even though

Leslie Robins and John Kearns knew that this representation was false. Leslie Robins and John Kearns made these misrepresentations for the purpose of deceiving Biomoda's transfer agent and potential purchasers of Biomoda's stock.

55.     At the time Leslie Robins made these false statements, he was aware of their falsity, or acted with reckless disregard for their truth or falsity.

56.     Leslie Robins made these statements with the intent that Biomoda's transfer agent and potential purchasers would rely upon them, causing the transfer agent to issue unrestricted, unauthorized stock.

57.     Biomoda's transfer agent and stock purchasers did rely on these statements and Biomoda stock was improperly issued and sold, with limited proceeds to Biomoda, but with severe damage to Biomoda's market value and fundraising potential, while exposing it to potential shareholder claims.

58.     Leslie Robins, Alvin Robins, and John Kearns also made false statements to representatives of Biomoda, representatives of ADOT, and to the public, and otherwise deliberately acted to induce in them the false belief that Biomoda was indebted to ADOT.  In fact, ADOT had never provided funds in the amount claimed to Biomoda under a loan or line of credit arrangement.  Representatives of Biomoda and representatives of ADOT reasonably relied to their detriment upon these representations, made for the purpose of furthering the scheme to strip Biomoda of its assets, using the pretext of foreclosing on a sham loan, secured by Biomoda's valuable property. These misrepresentations include, without limitation, correspondence sent at the direction of Leslie Robins to representatives of Biomoda and ADOT by John Kearns, threatening foreclosure on the sham debt, the "Raging Bull" postings made by Alvin Robins under the name "Arbit9," and the conduct of Leslie Robins in perpetuating the

false impression that an actual loan existed, and that ADOT was lawfully foreclosing upon it. The deceitful conduct of Leslie Robins, John Kearns, and Alvin Robins damaged Biomoda.

59.     Biomoda is entitled to recover damages from Leslie Robins, Alvin Robins, and John Kearns in an amount to be proven at trial.

60.     The acts of Leslie Robins, Alvin Robins, and John Kearns alleged herein were intentional, willful, wanton, malicious, and/or undertaken with utter disregard for the rights of Biomoda, thereby entitling it to an additional award of punitive damages.

**COUNT II**
**VIOLATION OF FEDERAL AND NEW MEXICO SECURITIES LAWS**

61.     Biomoda incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

62.     Leslie Robins, directly and by and through John Kearns, and via his effective control of Biomoda shares held by ADOT, made untrue statements of material facts and/or failed to state necessary material facts to investors in connection with an offer to sell securities in Biomoda.

63.     Upon information and belief, Leslie Robins also engaged in a course of business that operated as a fraud.

64.     The issuance and sale of Biomoda stock caused by Leslie Robins and John Kearns violated the Securities Act and the Exchange Act.

65.     The issuance and sale of Biomoda stock caused by Leslie Robins and John Kearns also violated the New Mexico Securities Act of 1986.

66.     The misconduct of Leslie Robins and John Kearns renders them liable to Biomoda for all damages and remedies provided for under the Securities Act, the Exchange Act, and the New Mexico Securities Act of 1986, including interest and attorney's fees.

### COUNT III – CONVERSION

67.     Biomoda incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

68.     Leslie Robins unlawfully exercised dominion and control over funds and securities belonging to Biomoda and did so in defiance of its rights in that property.

69.     In the alternative, Leslie Robins engaged in acts constituting an unauthorized and injurious use of property belonging to Biomoda.

70.     Biomoda has suffered damages as a result of Leslie Robins' conduct, and is entitled to recover these damages in an amount to be proven at trial.

71.     The acts of Leslie Robins alleged herein were intentional, willful, wanton, malicious, and/or undertaken with utter disregard for the rights of Biomoda thereby entitling it to an additional award of punitive damages.

### COUNT IV – CIVIL CONSPIRACY

72.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

73.     Leslie Robins, John Kearns, and Alvin Robins conspired to commit the wrongful acts against Biomoda and ADOT described in this Complaint, and carried out these wrongful acts pursuant to the conspiracy. The participation of John Kearns and Alvin Robins in the conspiracy resulted in harm to Biomoda and ADOT. Biomoda has suffered damages as a result of the conduct of Leslie Robins, Alvin Robins, and John Kearns. ADOT has suffered damages

as a result of the conduct of Alvin Robins and John Kearns.  The plaintiffs are entitled to recover damages against the Defendants in an amount to be proven at trial.

74.     The acts of Leslie Robins, John Kearns, and Alvin Robins alleged herein were intentional, willful, wanton, malicious, and/or undertaken with utter disregard for the rights of Plaintiffs, thereby entitling Plaintiffs to an additional award of punitive damages.

## COUNT V – BREACH OF FIDUCIARY DUTY

75.     Biomoda incorporates by reference the allegations of the foregoing paragraphs as though fully set forth herein.

76.     Leslie Robins, as a member of Biomoda's board of directors, and its vice president, owed Biomoda and its shareholders fiduciary duties in his capacity as a board member and as an officer of the company.

77.     Leslie Robins breached these fiduciary duties by:

A.     the unauthorized looting of Biomoda bank accounts;

B.     failing to properly and promptly pay payroll taxes for Biomoda;

C.     unlawfully causing Biomoda stock to be issued and sold, and exposing it to potential liability for same;

D.     devising and executing a scheme to enforce a sham debt for the purpose of unlawfully stripping away the assets of Biomoda;

E.     failure to pay employees for work done and severance pay;

F.     surreptitiously providing shares of Biomoda stock for "services" which were never performed or which had no value to Biomoda, without the authorization of the Biomoda Board of Directors; and

G.     failure to pay Biomoda patent fees, trademark fees, license fees, rent and other vendors and office expenses.

78.     In purporting to render legal opinions on behalf of Biomoda, communicated to Biomoda's transfer agent, John Kearns assumed both professional and fiduciary duties to Biomoda, which he breached in falsely representing that the SB-2 remained in effect.

79.     Biomoda has been damaged by the breaches of fiduciary duty committed by Leslie Robins and John Kearns and is entitled to recover damages from Leslie Robins and John Kearns in an amount to be proven at trial.

80.     Furthermore, Alvin Robins aided and abetted Leslie Robins in breaching his fiduciary duties, such that Alvin Robins is also liable for such breaches.

81.     Biomoda is also entitled to awards of punitive damages against Leslie Robins, John Kearns, and Alvin Robins.

## COUNT VI – NEGLIGENCE

82.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

83.     Leslie Robins, John Kearns, and Alvin Robins, with respect to their conduct previously alleged, were at least negligent, and have breached duties owed to Biomoda.  John Kearns and Alvin Robins, with respect to their conduct previously alleged, were at least negligent, and breached duties owed to ADOT.

84.     As the direct and proximate result of such negligence Plaintiffs have been damaged in amounts to be proven at trial.

## COUNT VII
## PROFESSIONAL MALPRACTICE (AGAINST JOHN W. KEARNS)

85.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as through fully set forth herein.

86.     The conduct of John Kearns breached his duties as an attorney for both Biomoda and ADOT.

87.     ADOT and Biomoda have suffered damages resulting from the misconduct of John Kearns, in an amount to be proven at trial.

## COUNT VIII - DEFAMATION OF CORPORATE PLAINTIFFS

88.     Defendants Leslie Robins and Alvin Robins have published defamatory statements regarding Biomoda, assailing its financial or business methods, or accusing it of fraud or mismanagement.

89.     As the direct and proximate result of such wrongful conduct, Biomoda has been damaged in amounts to be proven at trial.

90.     Further, the publication of such defamatory statements was intentional, willful, wanton, malicious, and/or undertaken with utter disregard for the rights of Biomoda, thereby entitling it to an additional award of punitive damages against Leslie Robins and Alvin Robins.

## COUNT IX – VIOLATION OF FEDERAL AND
## NEW MEXICO RACKETEERING ACTS

91.     Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

92.     Leslie Robins, Alvin Robins, and John Kearns have conducted and have conspired to conduct through a pattern of racketeering activity an enterprise which affects interstate commerce, in violation of 18 U.S.C. § 1962(a) through (d), inclusive, and have thereby

injured the business and property of Biomoda.  Leslie Robins, Alvin Robins, and John Kearns have engaged in related unlawful acts, including securities and mail fraud, sometimes purporting to act on behalf of Biomoda and/or ADOT, and/or Beaver, such that their conduct constitutes an open-ended course of criminal conduct which threatens continued danger to  Biomoda in the future, and which has consisted of a series of multiple, unlawful acts occurring over a substantial, but closed, period of time.  The Defendants have engaged in the following acts of "racketeering activity," as defined in 18 U.S.C. § 1961(1), such that their conduct constitutes a "pattern of racketeering activity" under 18 U.S.C. § 1961(5):

A.     extortion, as defined in 18 U.S.C. § 1961(1)(A) and NMSA 1978, § 30-16-9(A), punishable as a third degree felony with a three year term of imprisonment under NMSA 1978, § 31-18-15(9);

B.     mail fraud, indictable under 18 U.S.C. § 1341;

C.     wire fraud, indictable under 18 U.S.C. § 1343;

D.     tampering with a witness, indictable under 18 U.S.C. § 1512(a)(2) and (k);

E.     retaliating against a witness, indictable under 18 U.S.C. § 1513(b) and (f);

F.     use of interstate facilities or communication with intent that a murder be committed in violation of the laws of a state or the United States, as consideration for a promise to pay, indictable under 18 U.S.C. § 1958; and

G.     transportation of stolen securities, indictable under 18 U.S.C. § 2314.

93.     All of the acts of racketeering activity committed by the Defendants occurred after the effective date of RICO and within ten years of each other.  The Defendants' acts of racketeering activity are related and pose a threat of continuing activity.  The pattern of

racketeering engaged in by the Defendants exists independently from conduct which is actionable as securities fraud.

94.     Leslie Robins, Alvin Robins, and John Kearns have employed the positions held by Leslie Robins in ADOT, Biomoda, and Beaver to engage in a pattern of racketeering.

95.     Leslie Robins, Alvin Robins and John Kearns  have also engaged in a pattern of racketeering activity, as defined in NMSA 1978, § 30-42-3(D).  They have engaged in multiple incidents of racketeering, all occurring after 1980 (the effective date of the New Mexico Racketeering Act) and all within five years of each other, as follows:

> A.     larceny, as provided in NMSA 1978, § 30-16-1;
>
> B.     fraud, as provided in NMSA 1978, § 30-16-6;
>
> C.     embezzlement, as provided in NMSA 1978, § 30-16-8;
>
> D.     extortion, as provided in NMSA 1978, § 30-16-9;
>
> E.     fraudulent securities practices, as provided in the New Mexico Securities Act of 1986; and
>
> F.     violation of the provisions of Section 4 of the New Mexico Money Laundering Act.

96.     Biomoda has been injured in its business and property by the pattern of racketeering activity engaged in by Leslie Robins, Alvin Robins, and John Kearns and therefore seeks all relief available to it pursuant to 18 U.S.C. § 1964 and NMSA 1978, § 30-42-6(A), including treble damages, costs, and reasonable attorney fees.  ADOT has been injured in its business and property by the pattern of racketeering activity engaged in by Alvin Robins, and John Kearns and therefore seeks from Alvin Robins and John Kearns all relief available to it

pursuant to 18 U.S.C. § 1964 and NMSA 1978, § 30-42-6(A), including treble damages, costs, and reasonable attorney fees.

WHEREFORE, the Plaintiffs pray that the Court award damages, treble damages, punitive damages, attorney's fees, costs, and all such other relief as the facts and the law may warrant.

Respectfully submitted,


By  */s/ Phil Krehbiel*
Phil Krehbiel
Attorney for Plaintiff Advanced Optics
   Electronics, Inc.
5901 Tierra Viva Pl NW
Albuquerque, NM  87107
(505) 401-3860; (505) 345-2245 fax
philkrehbiel@msn.com


KELEHER & McLEOD, P.A.


By  *Electronically filed /s/ Thomas C. Bird*
W. Spencer Reid
Thomas C. Bird
Attorneys for Plaintiffs Biomoda, Inc.
P.O. Box AA
Albuquerque, NM 87103
(505) 346-4646; (505) 346-1370 fax


**I HEREBY CERTIFY** that on October 16, 2008, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record and all CM/ECF participants for this case to be served by electronic means, as more fully reflected on the by the Court's Notice of Electronic Filing.  Defendant Alvin D. Robins was served by e-mail at Robinsfirm@aol.com.

 */s/ Thomas C. Bird*
Thomas C. Bird

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


ADVANCED OPTICS ELECTRONICS, INC., and
BIOMODA, INC.

       Plaintiffs,

vs.                               No. CIV-07-0855 JB-DJS

LESLIE S. ROBINS, ALVIN D. ROBINS,
and JOHN W. KEARNS,

       Defendants.

## <u>VERIFICATION</u>

STATE OF NEW MEXICO   )
                        )   ss.
COUNTY OF BERNALILLO  )

     John J. Cousins, having been first duly sworn upon oath, states that he has read the foregoing First Amended Complaint for Common Law Fraud, Violation of Federal and New Mexico Securities Laws, Conversion, Breach of Fiduciary Duty, and Racketeering, filed in this matter on October 16, 2008, and that the statements therein are true and accurate to the best of his knowledge and belief.


                             _____
                             John J. Cousins
                             President of Biomoda, Inc.,
                             Vice President of Advanced Optics Electronics, Inc.

SUBSCRIBED, AND SWORN TO before me this 16th day of October, 2008, by John J. Cousins.

_____
Notary Public

My Commission expires:

_____

54017