## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ADVANCED OPTICS ELECTRONICS, INC.,
and BIOMODA, INC.

       Plaintiffs,

vs.                                                                            No. CIV-07-0855 JB-DJS

LESLIE S. ROBINS, ALVIN D. ROBINS,
and JOHN W. KEARNS,

       Defendants.

**PLAINTIFF BIOMODA INC.'S MOTION FOR SUMMARY JUDGMENT AS TO
DEFENDANT LESLIE ROBINS' LIABILITY UNDER 15 U.S.C. § 78j(b),
17 C.F.R. § 240.10b-5 AND FOR BREACHES OF HIS FIDUCIARY DUTIES
RELATED TO VIOLATIONS OF NMSA 1978, §§ 53-11-18(A), 53-11-19(B),
53-11-35(B) AND 15 U.S.C. § 77e**

      Pursuant to Fed. R. Civ. P. 56, Plaintiff Biomoda, Inc. ("Biomoda") moves the Court to

enter a summary judgment as to Defendant Leslie Robins' ("Robins'") liability for violations of

federal securities law (Count II) under 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5 and for

breaches of his fiduciary duties (Count V) as an officer and director of Biomoda, in relation to

violations of NMSA 1978, §§ 53-11-18(A), 53-11-19(B), 53-11-35(B), and 15 U.S.C. § 77e.

Robins' counsel has been contacted and opposes the relief requested.  In support, Plaintiff states:

### INTRODUCTION

      This Motion arises from Robins' unlawful conduct in relation to his flooding of the

market with Biomoda's stock in the spring and summer of 2007.  This conduct included repeated

omissions related to the true status of Biomoda's SB-2 registration, Robins' issuance of Biomoda

stock without board authorization, and the sale of unregistered shares of Biomoda stock owned

by Biomoda's affiliate, Advanced Optics Electronics, Inc. ("ADOT").  These improper and

illegal activities subject Robins to liability as a matter of law.

The record confirms that Robins engaged in a scheme to cause the issuance of large volumes of unrestricted Biomoda stock by various means.  A significant portion of this volume was nominally issued pursuant to a SB-2 registration which he knew was closed.  Robins' undisputed involvement in these illegal transactions makes him liable as a matter of law under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.  Additionally, the New Mexico Business Corporation Act requires board authorization for the consideration received by Biomoda in exchange for the issuance of Biomoda shares.  NMSA 1978, § 53-11-18(A); NMSA 1978, § 53-11-19(B).  Robins never requested nor obtained board approval when he directed the issuance of Biomoda stock by Biomoda between June 5, 2007 and July 13, 2007.  Furthermore, Robins caused the sale or transfer of 1.884 million shares of unregistered Biomoda stock owned by ADOT in violation of 15 U.S.C. § 77e.  Robins is therefore liable as a matter of law for breach of fiduciary duties as an officer and director of Biomoda.  This Court should grant summary judgment against Robins establishing his liability for violations of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and his breaches of fiduciary obligations owed to Biomoda as its officer and director.

## UNDISPUTED MATERIAL FACTS

1.      Robins is a former officer and director of Biomoda, and an officer and director of Advanced Optics Electronics, Inc. ("ADOT").  (Amended Cmplt. [Doc. 92], ¶ 4); (*see also* Affidavit of John Cousins ("Cousins' Affidavit"), ¶ 20 (ADOT's quarterly report on Form 10-KSB for the year ended December 31, 2006, at 17, relevant portions attached to Cousins' Affidavit as Exhibit C) (Biomoda's quarterly report on Form 10-KSB for the year ended December 31, 2006, 13-14, relevant portions attached to Cousins' Affidavit as Exhibit D).  Cousins' Affidavit attached as **Exhibit 1**.)

2.      On February 11, 2006, the United States Securities and Exchange Commission ("SEC") declared effective Biomoda's combined total SB-2 offering of 6,000,000 shares at $3.00 per share.  (*Id*., Ex. C at 13).

3.      No stock was sold pursuant to this SB-2 offering and it was closed on July 19, 2006.  (*Id.*); (*see also Id*., Ex. D at 7); (*Id*. at ¶ 23 (Letter from Stewart Securities to NASD Compliance Officer Genegaban dated July 2006, stating that Biomoda's SB-2 offer closed on July 19, 2006, attached to Cousins' Affidavit as Exhibit G.)

4.      Robins authorized and signed ADOT's Form 10-KSB for the year ended December 31, 2006.  (*Id*. at ¶ 20, Ex. C at 22).  In that filing, ADOT acknowledged that the SB-2 offering for the stock of Biomoda was closed on July 19, 2006.  (*Id.*, Ex. C at 13).

5.      On June 5, 2007, nearly a year after the SB-2 offering closed, attorney John Kearns ("Kearns") mailed an opinion letter to Oxford Transfer—Biomoda's stock transfer agent—stating that he represented Biomoda in connection with its request to issue 343,000 shares of unrestricted Biomoda common stock, and that "these shares are to be issued in accordance with an effective SB-2 Registration Statement under the Securities Act of 1933." The June 5th letter further states that "[w]e are of the opinion that the issuance of these 343,000 shares, as requested by direct letter to you, is in accordance with the SB-2 Registration and these shares shall be issued without restriction."  Kearns' letter also states that "[t]his opinion is solely for the purpose of certifying compliance under the provisions of the Securities and Exchange Act of 1934 and with the requirements of the Securities Act of 1933, permitting the issuance of the shares as enumerated herein."  Kearns wrote and sent four other letters to Oxford Transfer (dated June 8, June 25, July 11, and July 13) containing substantially identical representations about the status of Biomoda's SB-2 registration, in connection with letters dated June 8, June 25, July 11,

and July 13 from Robins to Oxford Transfer requesting the issuance of unrestricted shares of Biomoda stock.   (*See* Affidavit of Robert Roach ("Roach's Affidavit") at ¶ 3, letters from Kearns to transfer agent dated June 5, June 8, June 25, July 11, and July 13, 2007; attached to Roach's Affidavit as Exhibits A1-A5.  Roach's Affidavit attached as **Exhibit 2**.)

6.       Commencing on June 5, 2007, Robins mailed a series of letters to Oxford Transfer corresponding to those sent to Oxford Transfer by Kearns.  In his June 5, 2007 letter, Robins directed Oxford Transfer to issue 343,000 shares of unrestricted Biomoda stock to York Holdings Corp.  This letter references "Biomoda Issuance in accordance Reg SB-2" and states that the stock certificate to be issued "should be unrestricted and carry no legend." (*Id*. at ¶ 4, letters from Robins to transfer agent Robert Roach ranging in date from June 5, 2007 to July 13, 2007, attached to Roach's Affidavit as Exhibits B1-B5.)

7.       On June 8, 2007, Robins mailed a letter to Oxford Transfer directing it to issue 230,000 shares of unrestricted Biomoda stock to David Flynn.  In this letter Robins states that the shares to David Flynn "are unrestricted and without legend under the SB-2 letter you [Oxford Transfer] received this A.M. from John Kearns."  (*Id*., Ex. B2.)

8.       On June 25, 2007, Robins mailed a letter to Oxford Transfer directing it to issue 500,000 shares of unrestricted Biomoda stock to Nebtropolis Consulting, Inc.  This letter states that the "shares are to have no legend and carry no restriction."  (*Id*., Ex. B3.)

9.       On July 11, 2007, Robins mailed a letter to Oxford Transfer directing it to issue 90,000 shares of unrestricted Biomoda stock to Standard Asset Management and 50,000 such shares to John W. Kearns.  Robins' letter states that the issuance is "in accordance with Reg SB-2" and that the "certificate[s] should be unrestricted and carry no legend."  (*Id*., Ex. B4.)

10.     On July 13, 2007, Robins mailed a letter to Oxford Transfer directing it to issue 555,000 shares of unrestricted Biomoda stock to Max Capital Holdings, Inc. This letter states that "[t]hese shares are to have no legend and carry no restriction and to be issued under the SB-2." (*Id.*, Ex. B5.)

11.     None of the five letters from Robins to Oxford Transfer sent between June 5th and July 13th, 2007 disclosed that Biomoda's SB-2 offering closed a year earlier on July 19, 2006, or disclosed that the representations made in the Kearns letters about the ongoing effectiveness of Biomoda's SB-2 registration were false.  (*See generally* Ex.'s A1-A5, Ex.'s B1-B5.)[1]

12.     Oxford Transfer issued Biomoda stock in reliance upon Kearns' opinion letters and pursuant to Robins' directions.  (*Id.* at ¶¶ 5-7, Oxford Transfer's journals dated June 5, June 8, June 25, July 11, and July 13, 2007.  Attached to Roach's Affidavit as Exhibits C1-C5.)

13.     The five letters from Robins resulted in 1,768,000 shares of Biomoda stock to be released into the market, without restriction upon resale. (Ex. 1, Cousins' Affidavit at ¶ 4.)

14.     Further, the issuance of these unrestricted Biomoda shares for little or no consideration flooded the market, crashed Biomoda's stock price, and caused Biomoda to have to sell more stock than it otherwise would have to raise capital.  (*Id.* at ¶¶ 14-16.)

15.     Biomoda is a New Mexico corporation governed by the New Mexico Business Corporation Act.  (*Id.* at ¶ 21, *Bylaws of Biomoda, Inc.*, entered February 23, 1990, § 1.02. Attached to Cousins' Affidavit as Exhibit E); (*see also Id.* at ¶ 22, Secretary of State, Corporations Information Inquiry for Biomoda Inc., attached to Cousins' Affidavit as Exhibit F**,** stating that Biomoda Inc. is a domestic corporation.)

---

[1] While the record confirms that, in addition to omitting the true status of Biomoda's SB-2 registration, Robins also perpetuated Kearns' misrepresentations, this Motion is premised on Robins' omissions.

16.     Robins did not request or obtain board authorization for the services or other consideration ostensibly to be provided for the shares that Robins caused to be issued.  (Ex. 1, Cousins' Affidavit at ¶¶ 3, 10, 11.)

17.     Some consideration generated by these improper issuances was either heavily discounted or the consideration was never provided to Biomoda.  (*Id*. at ¶¶ 5, 9.)  Further, these shares were made available for resale soon after Robins authorized their issuance.  (*Id*. at ¶ 16.)

18.     Also, in the spring of 2007, Robins caused approximately 1.844 million shares of unregistered Biomoda stock owned by ADOT to be sold.  (*Id*. at ¶ 17.)

19.     These Biomoda shares held by ADOT were "control shares," subject to Rule 144 of the Securities and Exchange Commission, because of ADOT's affiliate relationship to Biomoda.  (*Id*. at ¶¶ 17-19.)

20.     As such, Biomoda shares distributed or sold by ADOT were restricted.  Further, Rule 144 limited ADOT to selling no more than 1% of the outstanding shares of Biomoda in any three month period, and then only after filing notice with the SEC.  (*Id*.)

## ARGUMENT

**A.     Robins Is Liable As A Matter Of Law For Violating 15 U.S.C. § 78j(B) And 17 C.F.R. § 240.10b-5.**

15 U.S.C. § 78j(b) [§ 10(b)], states in pertinent part that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange —

(b) To use or employ, in connection with the … sale of any security registered on a national securities exchange or any security not so registered, … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Additionally, Rule 10b-5 of the SEC, codified at 17 C.F.R. § 240.10b-5 and promulgated pursuant to 15 U.S.C. § 78j(b), states that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a)   To employ any device, scheme, or artifice to defraud,
>
> (b)   To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c)   To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Furthermore, "[u]nless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—(1) to make use of … the mails to sell such security …; or (2) to carry or cause to be carried through the mails …, any such security for the purpose of sale or for delivery after sale."  15 U.S.C. § 77e(a)(1-2).

Federal courts have recognized an implied private right of action under both § 10(b) and Rule 10b-5.  *Stonebridge Inv. Partners, LLC v. Scientific-Atlanta, Inc*., 128 S. Ct. 761, 768 (2008).  The elements of a § 10(b) claim and a Rule 10b-5 claim are the same.  *United States SEC v. Maxxon, Inc*., 465 F.3d 1174, 1178 (10th Cir. 2007).

It is "well established that a corporation has a claim under § 10(b) if the corporation was defrauded in respect to the sale of its own securities by some or even all of its directors."  *Soler v. Rodriguez*, 63 F.3d 45, 54 (1st Cir. 1995); *see also Frankel v. Slotkin*, 984 F.2d 1328, 1334 (2nd Cir. 1993) (a "corporation itself as a seller of its own securities suffers an independent injury sufficient to support an action for damages … under § 10(b) and Rule 10b-5.").  "Thus, a corporation that issues its own stock in reliance on another's deceptive or manipulative practice

may be deemed a 'seller' with standing to sue under § 10(b) and Rule 10b-5." *In re Stat-Tech Sec. Litig.*, 905 F. Supp. 1416, 1423 (D. Colo. 1995) (citations omitted).

Accordingly, in a private action under § 10(b) and Rule 10b-5, a corporation must prove "(1) a material … omission by the defendant; (2) scienter; (3) a connection between the … omission and the purchase or sale of a security; (4) reliance upon the … omission; (5) economic loss; and (6) loss causation." *Stonebridge Inv. Partners, LLC*, 128 S. Ct. at 768. The record in this matter confirms that each of these elements is satisfied. Therefore, Robins should be adjudicated liable as a matter of law under § 10(b) and Rule 10b-5 for his omissions related to the improper issuance of more than one million shares of unrestricted Biomoda stock.

      1.    Robins' Omission Of The Fact That Biomoda's SB-2 Registration Had Closed Was Material.

An omission is actionable under the securities laws only when the defendant is subject to a duty to disclose the omitted facts. *Kapur v. USANA Health Sci., Inc.*, 2008 U.S. Dist. LEXIS 58955, * 24 (citing *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 267 (2nd Cir. 1993)). However, "[i]t is well recognized that a duty to disclose arises when silence would make statements that have been made misleading or false." *N.J. v. Sprint Corp.*, 314 F. Supp. 2d 1119, 1128 (D. Kan. 2004); *see also Thomas v. Duralite Co.*, 524 F.2d 577 (3rd Cir. 1975) (stating that knowledge of material facts and failure to disclose them provides adequate basis for culpability sufficient to establish liability for violations of § 10(b) and Rule 10b-5).

An omission is material if "there is a substantial likelihood that a reasonable shareholder would consider it important" in making an investment decision. *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (internal citations omitted). Moreover, "the question of materiality is to be resolved as a matter of law when the information is 'so obviously important [or unimportant] to an investor, that reasonable minds cannot differ on the question of materiality.'" *Connett v.*

*Justus Enters*., 68 F.3d 382, 384 (10th Cir. 1995) (citing *Garcia v. Cordova*, 930 F.2d 826, 829 (10th Cir. 1991) (citations omitted)).

Robins' omissions are plainly material.  They concerned the actual status of Biomoda's SB-2 registration, and therefore the legality of issuing the shares Robins directed Oxford Transfer to issue.  Robins knew that the representations in the letters from Kearns to Oxford transfer were false (Undisputed Material Facts ("UMF") Nos. 4-11) and that his silence would induce the transfer agent to act upon Kearns' letters.  (UMF No. 12); *see also Dirks v. SEC*, 463 U.S. 646, 652 (1983) (recognizing that, in the context of insider trading, that directors have an affirmative duty of disclosure when dealing in securities).  Despite this duty, Robins failed to disclose that Biomoda's SB-2 registration was closed.  (*See* UMF No. 3 (Biomoda's SB-2 offering closed July 19, 2006)); (*see also* UMF Nos. 6-10 (Robins' letters directing stock issuances, bearing the same dates as Kearns' opinion letters misrepresenting the status of Biomoda's SB-2 registration.)

Robins' omissions regarding the closed status of Biomoda's SB-2 registration were also material in the sense that there is a "substantial likelihood" that this information would be important to a reasonable shareholder.  *Basic Inc.*, 485 U.S. at 231.  Existing and prospective holders of Biomoda stock would consider the open or closed status of Biomoda's SB-2 registration important since it would affect the availability, volume, and price of Biomoda's stock.  The fact that ADOT, one of the largest shareholders of Biomoda stock, disclosed the closing of Biomoda's SB-2 registration in ADOT's 10K filing, demonstrates the materiality of facts concerning the status of the registration to a reasonable shareholder.  (UMF No. 3.)  A reasonable shareholder would certainly want to know that the status of the registration had been misrepresented to precipitate the issuance of more than 1.7 million shares of unrestricted

Biomoda stock. The undisclosed fact that Biomoda's SB-2 registration was closed is "obviously important" in this context, such that reasonable minds cannot differ on the question of materiality in this case. As a matter of law, this Court can rule Robins' omissions material.

> 2.     Robins Acted With Scienter When He Allowed Kearns' Improper Opinion Letters Authorizing The Sale Of Unrestricted Biomoda Stock To Be Acted Upon.

Scienter is a mental state embracing "intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499, 2507 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-194, and n. 12 (1976). Thus, to establish scienter in a § 10(b) and 10b-5 securities fraud case alleging an omission of material facts, a plaintiff must demonstrate: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors. *N.J. v. Sprint Corp*., 314 F. Supp. 2d 1119, 1139 (D. Kan. 2004) (citing *Pirraglia v. Novell, Inc*., 339 F.3d 1182, 1191 (10th Cir. 2003)). "The requirement of knowledge in this context may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." *Id*. at 1139-1140 (internal citations omitted); *see also Bd. of County Comm'rs v. Liberty Group*, 965 F.2d 879, 883 n. 2 (10th Cir. 1992) ("This intent requirement [scienter] can be satisfied by a showing of recklessness.").

The record proves that Robins had the requisite scienter. The correspondence from Kearns and Robins to Oxford Transfer documents a blatant scheme to deceive and manipulate the transfer agent into issuing unregistered, unrestricted Biomoda shares. (UMF Nos. 5-12.) Five letters from Kearns—each stating that Kearns represented Biomoda in connection with Biomoda's request for the issuance of shares, and each misrepresenting the effectiveness of the SB-2 registration—came to Oxford Transfer on the same five days Oxford Transfer received

letters from Robins' letters requesting the issuance of Biomoda shares. (UMF Nos. 5-10.) The letters from Robins do not correct the falsehoods in the Kearns letters about Biomoda's SB-2 registration, even though Robins knew that the Kearns letters were false and that his omission would be misleading. (UMF Nos. 3-10.)

Also, Robins was an authorizer and signatory of ADOT's Form 10-KSB for the year ending December 31, 2006. (UMF No. 4.) That filing reports that Biomoda's SB-2 registration closed on July 19, 2006 (UMF No. 3.) It cannot be disputed that Robins knew that Biomoda's SB-2 registration was closed. (UMF No. 4); *see also United States v. Gomez-Gutierrez*, 140 F.3d 1287, 1288-89 (9th Cir. 1998)(noting that "the affixing of a signature is not a mere formality, but rather signifies that the signor has read the document and attests to its accuracy"); *Howard v. Hui*, 228 F.3d 1057, 1061 (9th Cir. 2000)("signers of documents should be held responsible for the statements in the documents"). It is also clear that, upon closing, Biomoda's SB-2 registration could no longer be used to legitimize the issuance of unrestricted Biomoda shares. 15 U.S.C. § 77e(a)(1-2). Robins, however, caused this to happen when he directed the issuance of unrestricted Biomoda stock. (UMF Nos. 6-10.) The record establishes a deliberate deception of Biomoda's transfer agent, furthered by Robins' repeated omissions of the fact that the SB-2 registration was closed. (UMF No. 12.)

In any event, Robins acted recklessly, at best, in omitting the truth about Biomoda's SB-2 registration. (UMF Nos. 6-10.) Its closed status was obviously material, Robins must have been aware of the significance of Biomoda's closed SB-2 status, and Robins knew that non-disclosure would mislead investors. (UMF Nos. 4, 6-14.) Robins' knowledge that the SB-2 registration was closed unambiguously demonstrates that he acted knowingly and recklessly when he directed the issuance of approximately 1,768,000 shares of unrestricted Biomoda stock based

upon Kearns' false representations of Biomoda's SB-2 registration status.  (UMF Nos. 5-10.)
Consequently, Robins acted with scienter.

> 3.   Robins' Omissions Were Directly Connected To The Issuance Of Biomoda Shares.

In a private action under § 10(b) and Rule 10b-5, a plaintiff must prove a connection
between a defendant's omission and the sale of a security.  *Stonebridge Inv. Partners, LLC*, 128
S. Ct. at 768.  The record here confirms such a connection.  First, a corporation's issuance of its
own securities constitutes a sale for purposes of § 10(b) and Rule 10b-5.  *See, e.g., Ruckle v.
Roto Am. Corp.*, 339 F.2d 24 (2nd Cir. 1964); *Mader v. Armel*, 402 F.2d 158 (6th Cir. 1968);
*Rekant v. Desser*, 425 F.2d 872 (5th Cir. 1970).  Moreover, this requirement receives broad
reading, and is satisfied by showing a nexus between a defendant's actions and plaintiff's sale.
*First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1315 (5th Cir. 1977).  In fact, the Supreme
Court has held that, "it is enough that the fraud alleged 'coincide' with a securities transaction—
whether by the plaintiff or by someone else" and the plaintiff need not be defrauded in order to
state a cause of action under § 10(b) and Rule 10b-5.  *Merrill Lynch, Pierce, Fenner & Smith
Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (internal citations omitted).

Robins' omissions were directly connected to the issuance of Biomoda shares because the
omissions were part of a scheme to misrepresent the status of the SB-2 registration in order to
mislead the transfer agent into issuing unrestricted Biomoda stock.  The omissions were among
the causes of the stock being issued.  (UMF No. 12.)  Even though Robins knew the SB-2 was
closed, Robins unilaterally directed the issuance of Biomoda shares by Biomoda to various
entities and persons based upon Kearns' letters.  (UMF Nos. 4-11.)  These undisputed facts
establish the "connection" element of a § 10(b) and Rule 10b-5 claim against Robins.  (*Id.*)

4.      Robins' Omissions Regarding Biomoda's SB-2 Registration Status Were Material And He Had A Duty To Disclose The True Status Of The SB-2 Registration.   Therefore, Under § 10(B) And Rule 10b-5, Reliance And Causation Are Presumed.

Reliance is presumed "if there is an omission of material fact by one with a duty to disclose." *Stoneridge Inv. Partners, LLC*, 128 S. Ct. at 769.  While loss causation is generally "a causal connection between the material misrepresentation and the loss," *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005), like reliance, causation is established when the defendant has omitted material facts.  *Hawk Indus., Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 625 (S.D.N.Y. 1973); *see also In re Boise Cascade Sec. Litig.*, 420 F. Supp. 99 (W.D. Wash. 1976) (stating that when an omission is material, it creates a presumption of causation).  As previously noted, Robins' omissions were material and Robins had a duty to disclose the true status of Biomoda's SB-2 registration.  Thus, reliance and causation can be presumed in this action.

5.      Robins' Omissions Caused Biomoda Economic Loss.

Lastly, an economic loss "is defined generally as damages other than physical harm to persons or property." *DerKevorkian v. Lionbridge Techs., Inc*, 2008 U.S. App. LEXIS 24566, * 26 (10th Cir. 2008); *see also Marchand v. Marchand*, 2008-NMSC-65, ¶ 6, 2008 N.M. LEXIS 575 (stating that economic loss is defined as "any pecuniary loss resulting from harm").  A "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." *Dura Pharms., Inc.*, 544 U.S. at 338.

Robins' omissions caused the unlawful issuance of Biomoda stock pursuant to a closed SB-2 offering and resulted in an economic loss for Biomoda.  (UMF Nos. 6-14.)  The issuance of more than 1.7 million shares of unrestricted Biomoda stock for little or no consideration flooded the market (UMF No. 13, 14), generated little or no revenue for Biomoda (UMF No. 14), crashed Biomoda's stock price (*Id.*), caused Biomoda to have to sell more stock than it otherwise would

have (*Id.*), and caused Biomoda to incur higher costs (UMF No. 13), in raising capital. Biomoda suffered economic losses as a consequence of Robins' unlawful acts. The record here, therefore, satisfies the "economic loss" and "loss causation" requirements for Biomoda's claims under § 10(b) and Rule 10b-5. Thus, the Court should adjudicate Robins liable for violating § 10(b) and Rule 10b-5.[2]

    **B**.     **Robins Breached His Fiduciary Duties As A Matter Of Law By Causing The Issuance Of Biomoda Shares In Violation Of The New Mexico Business Corporation Act, NMSA 1978, § 53-11-18,  §53-11-19, And 15 U.S.C. § 77e.**

Biomoda, a New Mexico corporation, is governed by the New Mexico Business Corporation Act ("Act"), NMSA 1978, § 53-11-1 et seq. (UMF No. 15.) The Act requires that "subject to any restrictions in the articles of incorporation, shares may be issued for such consideration *as shall be authorized by the board of directors.*" NMSA 1978, § 53-11-18(A) (emphasis added). The Act further requires that:

> *Before* the corporation issues shares, the board of directors *shall* determine that the consideration received or to be received for shares to be issued is adequate.

NMSA 1978, § 53-11-19(B) (emphasis added).

Under these provisions, a board determination that the consideration proposed for the issuance of shares is adequate must precede the issuance of shares. Sections 53-11-18 and 53-11-19 are specific reflections of the broader statutory principle that "[a]ll corporate powers shall be exercised by or under the authority of, and the affairs of the corporation shall be managed under the direction of, a board of directors …." NMSA 1978, § 53-11-35(A).

The board's responsibility for approving the adequacy of consideration for shares to be issued is a key component of corporate governance. In *Grimes v. Alteon*, the Delaware Supreme Court recognized that the issuance and sale of stock involve acts of "fundamental legal

---

[2] Notably, this Motion seeks only to establish Robins' liability. Upon the Court's granting of this Motion, Biomoda will seek a hearing to establish Biomoda's particular damages.

significance having a direct bearing upon questions of corporate governance, control, and the capital structure of the enterprise." 804 A.2d 256, 260 (Del. 2002). Fundamental governance principles require that the board manage the affairs of the corporation and that the board therefore consider and approve transactions involving the issuance of stock. *Id*. The statutory requirement that the board approve the consideration for stock issued by the company reduces disputes and enhances corporate stability by making it more likely that the board has thoroughly considered the reasons for and against the issuance. *Id*. at 262.

In this case, it is uncontroverted that Robins circumvented the important requirements for board authorization and unlawfully caused the issuance of Biomoda stock without first receiving the approval of the board. (UMF Nos. 15, 16.) Robins short-circuited the approval process by acting unilaterally and without the board's authorization. This conduct violated NMSA 1978, §§ 53-11-18(A) and 53-11-19(B), and breached the fiduciary duties Robins owed to Biomoda as its officer and director.

Furthermore, Robins caused the sale of 1.84 million shares of Biomoda stock owned by ADOT. (UMF No. 18.) These shares were unregistered. (*Id*.) Federal law prohibits the sale of unregistered securities. *See* 15 U.S.C. § 77e. No exemption from federal registration requirements applied to the sale of the ADOT-owned shares of Biomoda stock that Robins flooded into the market in the spring of 2007. (UMF Nos. 18-20.)

New Mexico law imposes on corporate directors a duty to act in good faith in the best interests of the corporation. *See* NMSA 1978, § 53-11-35(B). The common law and statutory obligations imposed on a corporate director result in a fiduciary duty to the corporation in relation to the management of the corporation and its assets. *See, e.g., In Re Schultz,* 205 B.R. 952, 959 (N.M. Bktcy 1997) (applying Delaware law). A director's conduct in disposing of the

shares of the corporation must therefore meet the exacting standards of a fiduciary. *Id.* Robins occupied the position of a fiduciary in relation to Biomoda (UMF No. 1), and exercised the powers conferred on a director in trust, subject to the rigorous scrutiny that accompanies the role of a fiduciary. *See, e.g., DiIanconi v. New Cal Corp.,* 97 N.M. 782, 789, 643 P.2d 1234, 1241 (Ct. App. 1982).

Corporate officers also owe the corporation a duty of undivided and unselfish loyalty. *See, e.g, Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 587 P.2d 444, 449, 92 N.M. 297, 302 (Ct. App. 1978). The duties of an officer to a corporation, like the duties of a director, entail loyalty, good faith, inherent fairness, and the obligation not to profit at the expense of the corporation. *Walta v. Gallegos Law Firm*, 2002-NMCA-015, ¶ 41, 40 P.3d 449, 131 N.M. 544.

Under New Mexico law, a corporation has a cause of action against directors or officers to recover the property of the corporation or to recover damages for injuries done to it as a result of the misdeeds of officers or directors. *See, e.g., Schwartzman v. Schwartzman Packing Co.*, 99 N.M. 436, 441, 659 P.2d 888, 893 (1983). Specifically, the remedies of a corporation against an officer or agent who fraudulently causes the issuance of the company's shares include an action for damages or an action to recover the certificates of the fraudulently issued shares. 11 *Fletcher Cyc. Corp.*, § 5175 at 295 (2003). Directors are required to exercise good faith in all dealings with the corporation and may be held personally liable if they knowingly or intentionally issue shares to others for inadequate consideration. *Id.*, § 5231 at 437.

Under these standards, Robins could not lawfully arrogate to himself the role of weighing the adequacy of the consideration, if any, exchanged for the Biomoda stock issued in June and July of 2007, and deciding whether to proceed with the transactions. In addition to his omissions

in causing Biomoda's transfer agent to issue Biomoda's stock under the deceptively created impression that Biomoda's SB-2 registration was still open (UMF No. 6-14), Robins omitted the step of obtaining authorization from Biomoda's board for these issuances.   (UMF No. 16.) Robins also caused the sale of an enormous volume of unregistered Biomoda stock owned by ADOT, in blatant violation of the federal law prohibiting the sale of unregistered securities. (UMF Nos. 18-20.)  This Court should adjudicate Robins liable for violating the fiduciary duties imposed on him by the New Mexico Business Corporation Act and the common law by failing to disclose the true status of Biomoda's SB-2 registration, by failing to obtain the requisite board authorization necessary before issuing Biomoda stock, and by causing the sale of unregistered Biomoda stock owned by ADOT.[3]

## CONCLUSION

The undisputed evidence before this Court demonstrates Robins' liability as a matter of law for violating 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and for breaching his fiduciary duties as an officer and director of Biomoda. The Court should grant Biomoda's and enter summary judgment establishing Robins' liability.

Respectfully submitted,

KELEHER & McLEOD, P.A.

By  /s/ Christina Muscarella Gooch
W. Spencer Reid
Thomas C. Bird
Christina Muscarella Gooch
*Attorneys for Plaintiff Biomoda, Inc.*
P.O. Box AA
Albuquerque, NM 87103
(505) 346-4646/(505) 346-1370 fax

---

[3] Upon the Court's granting of this Motion, Biomoda will request a hearing to present evidence of the extent of the damages sustained as a result of Robins' unlawful conduct.

17

I HEREBY CERTIFY that on the 31st day of March, 2009, I filed the foregoing document electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means or U.S. Mail, as more fully reflected on the Notice of Electronic Filing.   Defendant Alvin D. Robins was served by e-mail at Robinsfirm@aol.com.


*/s/ Christina Muscarella Gooch*
Christina Muscarella Gooch

60529 ~ 10945-001