**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ADVANCED OPTICS ELECTRONICS, INC.,
and BIOMODA, INC.,

      Plaintiffs,

v.                                                                                    No. CIV 07-0855 JB/GBW

LESLIE S. ROBINS, ALVIN D. ROBINS,
and JOHN W. KEARNS,

      Defendants.

      -- and –

LESLIE S. ROBINS,

      Counterclaimant,

vs.

BIOMODA, INC.,

      Counter-Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Plaintiff Biomoda, Inc.'s Motion for Summary

Judgment on Compensatory Damages Against Defendants John W. Kearns and Alvin D. Robins,

filed November 25, 2009 (Doc. 132)("Motion").  The Court held hearings on August 4, 2010 and

November 12, 2010.  The primary issues are: (i) whether the Court should treat pro se Defendant

Alvin D. Robins' Response by Alvin Robins to Biomoda, Inc.'s Motion for Summary Judgment on

Biomoda. Inc.'s First Amended Complaint, filed July 9, 2010 (Doc. 146)("Response"), as a motion

under the Federal Rule of Civil Procedure to set aside the Court's Default Judgment as to Liability

Against Defendants Alvin D. Robins and John W. Kearns, filed December 22, 2008 (Doc.

108)("Default Judgment"), granting Biomoda default judgment against A. Robins for liability; (ii) whether, if the Court treats A. Robins' Response as a motion to set aside the Default Judgment, the Court should grant the request to set aside the Default Judgment; and (iii) whether, if the Court does not set aside the Default Judgment, the Court should enter summary judgment for Biomoda in the amount of $694,316.00 as compensatory damages and post-judgment interest pursuant to 28 U.S.C. § 1961(a). The Court denies A. Robins' request that the Court vacate its Default Judgment, and grants Biomoda's Motion in part, awarding compensatory damages in the amount of $35,000.00 and post-judgment interest.

**FACTUAL BACKGROUND**

A. Robins served without compensation as a representative of Biomoda on the express request and with the approval of Biomoda's president, John Cousins. See Response ¶ 5, at 2-3;[1]

---

[1] A. Robins, a pro se defendant, filed a verified response to Biomoda's Motion. See Response at 10. Rule 56(c) of the Federal Rule of Civil Procedure requires that an affidavit opposing a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P 56(c). To the extent the contents of A. Robins' verified response adheres to the requirements set forth under rule 56(c), the Court will treat the verified response as an affidavit. See Johnson v. Meltzer, 134 F.3d 1393, 1400 (9th Cir. 1998)("Like a verified complaint, a verified motion functions as an affidavit." (quoting Autera v. Robinson, 419 F.2d 1197, 1202 n. 22 (D.C. Cir. 1969))); Wilson v. Cal. Dept. of Corrections, No. 1:05-cv-01144-LJO-SMS PC, 2008 WL 2441064, at *7 n.7 (E.D. Cal. June 13, 2008)("Plaintiff's opposition to Defendant Kim Nguyen's motion [for summary judgment] is verified, and will be treated as an opposing affidavit to the extent it contains admissible evidence." (citing Johnson v. Meltzer, 134 F.3d at 1399-1400)); Baptisto v. Ryan, No. CV031393PHXSRB, 2005 WL 2416356, at *1 n.1 (D. Ariz. Sept. 30, 2005)("Plaintiff's verified pleadings and motions . . . may be treated as affidavits to oppose summary judgment to the extent that they are 'based on personal knowledge' and 'set[ ] forth specific facts admissible in evidence.'" (quoting Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996))). See also Ward v. Moore, 414 F.3d 968, 970 (8th Cir. 2005)("Because Ward verified her second amended complaint under penalty of perjury, it is the equivalent of an affidavit and can serve as her response to the defendants' summary judgment motion under Federal Rule of Civil Procedure 56(e)." (citing Spear v. Dayton's, 733 F.2d 554, 555-56 (8th Cir. 1984)(stating that an amended complaint verified under penalty of perjury was equivalent of affidavit and could serve as response to defendants'

summary judgment motion)); Walker v. Tyler County Com'n, 11 F. App'x 270, 274 (4th Cir. 2001)("A verified complaint 'is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'" (citing Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)); Weberg v. Franks, 229 F.3d 514, 526 n.13 (6th Cir. 2000)("Although statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment, affidavit statements must be based on personal knowledge." (citing Fed. R. Civ. P. 56(e); Williams v. Browman, 981 F.2d 901, 905 (6th Cir. 1992)); Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1999)("[T]he complaint was verified and constituted an affidavit."); Burger v. Rattigan, 974 F.2d 1340, at *5 n.3 (7th Cir. 1992)("When a plaintiff properly invites the court's attention to particular facts alleged in a verified complaint, it can be the functional equivalent of an affidavit for purposes of summary judgment." (citing Williams v. Adams, 935 F.2d 960, 961 (8th Cir. 1991); Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991))); Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991)("We think the better rule is that a verified complaint ought to be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e)."); Heinlen v. Skelton, 909 F.2d 1488, at *1 n.1 (9th Cir. 1990)("Inasmuch as Heinlen's complaint was executed and filed under penalty of perjury, we consider its allegations as having the same force as if they were set out in an affidavit." (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir.1987)(pro se's verified complaint considered in opposition to motion for summary judgment)); Barker v. Norman, 651 F.2d 1107, 1115 (5th Cir. 1981)("To the extent that Barker's verified complaint satisfies the other standards for affidavits as set out in Rule 56(e), then, we shall consider it to have an effect equivalent to that of an affidavit in opposition to Agent Ballas' and Officer Norman's summary judgment motions."). Cf. Erickson v. Pardus, 551 U.S. 89, 94 (2007)("A document filed pro se is 'to be liberally construed' . . . ." (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976))). While a response to a motion for summary judgment is not a verified complaint, it functions similarly. The Court will treat A. Robins' pro se verified response as an affidavit to the extent it meets rule 56(c)'s standards.

Biomoda did not controvert A. Robins' assertion in its reply, so the Court treats the fact as admitted. The Court has recently proposed amendments to D.N.M. LR-Civ 56.1(b) that will require the party responding to the motion for summary judgment to number any additional facts and the party moving for summary judgment to specify whether the additional facts are disputed or not in its reply. A "redline" version of the proposed revisions to the Local Rules of Civil Procedure of the United States District Court for the District of New Mexico is currently available on the Court's website at www.nmcourt.fed.us. The proposed revisions were posted for public comment. The period for public comment closed November 24, 2010. The Court will now consider the comments and further revisions, as necessary. The proposed version of D.N.M. LR-Civ 56.1(b) states:

> The Memorandum must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which the movant relies.

> The Response must contain a concise statement of the material facts cited by the

Reply in Support of Motion for Summary Judgment on Compensatory Damages at 5, filed July 29, 2010 (Doc. 147)("Reply")(not controverting this fact). Specifically, A. Robins was an agent to negotiate for a period of one year with Los Alamos National Laboratories ("LANL"). See Response ¶ 5, at 2-3 (setting forth this fact); Reply at 5 (not controverting this fact). A. Robins states that Cousins worked "arm in arm" with him, encouraging and requesting A. Robins to provide services on Biomoda's behalf to save Biomoda from losing all its then patented technology under license to LANL. Response ¶ 6, at 3 (setting forth this fact). See Reply at 5 (not controverting this fact).

A. Robins and Cousins met with multiple representatives of LANL at LANL's offices in Los Alamos, New Mexico, in negotiations that A. Robins organized and chaired. See Response ¶ 7, at 3 (setting forth this fact); Reply at 5 (not controverting this fact). A. Robins states that these negotiations resulted in the successful renegotiation of Biomoda's license with LANL, saving Biomoda upwards of $786,000.00 at that time. See Response ¶ 7, at 3 (setting forth this fact); Reply

_____

movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted. The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.

The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection. Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's fact. All material facts set forth in the Response will be deemed undisputed unless specifically controverted.

Proposed revisions to D.N.M. LR-Civ. 56.1(b)(emphasis added).

at 5 (not controverting this fact).

     **1.**     **Facts Relating to Biomoda's Claims Against A. Robins.**

In 2003 and 2005, in an effort to raise funds, Biomoda filed and amended a form SB-2 registration statement with the Security Exchange Commission ("SEC") seeking to offer a total of 6,000,000 shares of stock to the public ("SB-2 offering").  See First Amended Complaint for Common Law Fraud, Violation of Federal and New Mexico Securities Laws, Conversion, Breach of Fiduciary Duty, and Racketeering ¶ 13, at 4, filed October 16, 2008 (Doc. 92)("FAC").  On February 11, 2005, the SEC declared effective the combined total SB-2 offering of 6,000,000 shares at $3.00 per share.  See FAC ¶ 13, at 4.  No sales of stock took place pursuant to these registered offerings.  See FAC ¶ 13, at 4.  Biomoda later decided to initiate quotations of its common stock on the Over the Counter Bulletin Board, requiring it to terminate the SB-2 offering, which Biomoda did on or about July 19, 2006.  See FAC ¶ 14, at 4.

The First Amended Complaint states that the Defendants flooded the market with Biomoda shares through: (i) fraudulent legal opinions that Defendant John W. Kearns wrote, which misrepresented the status of Biomoda's terminated SB-2 offering; and (ii) through the sale of Biomoda's shares that Advanced Optics Electronics, Inc. ("ADOT") transferred at least in part through Beaver Information Technology ("BIT"), a "front" registered to A. Robins address. See FAC ¶¶ 16-23, 35-37, at 5-7.  In the process of flooding the market with Biomoda shares, the Defendants allegedly caused the transfer of millions of unrestricted shares of Biomoda stock for no consideration or for prices well below market.  See FAC ¶¶ 17-23, 35-37, at 5-7.  The FAC also identifies Defendant Leslie Robins' alleged misappropriation of Biomoda's funds and property, including its stock.  These alleged misappropriations include $35,000.00 withdrawn unlawfully from

Biomoda's bank account, and the transfer of unrestricted Biomoda shares to family members and friends in exchange for sham "services." FAC ¶¶ 21-25, 46, at 7-8, 15. The FAC states that all of the unlawful acts committed by each of the Defendants were undertaken pursuant to the conspiracy in which each of them was a co-conspirator. See FAC ¶ 73, at 21-22.

       2.      **Facts Relating to the Damages that Biomoda Allegedly Sustained.**

The parties present sworn testimony offering conflicting accounts of the damages Biomoda sustained. Biomoda states that its business records demonstrate that 1,768,000 shares of its unrestricted stock were issued as a result of the fraudulent misrepresentations that Kearns made concerning the status of its terminated SB-2 offering. See Affidavit of John Cousins ¶ 4, at 2, filed November 11, 2009 (Doc. 132-1); FAC ¶ 17, at 5-6. L. Robins then allegedly transferred these shares, nominally on behalf of Biomoda, to himself, BIT, Kearns, and other parties for little or no consideration. See FAC ¶¶ 21-22, at 7. These persons then immediately resold the stock to the public at a gain to themselves, but at prices allegedly well below the market value of the stock immediately preceding the re-sales. See FAC ¶ 23, at 7. Such sales allegedly had the effect of driving the Biomoda shares market value sharply downward. See FAC ¶ 23, at 7.

Thus, Biomoda contends that, in exchange for the 1,768,000 unrestricted shares issued and transferred in this fashion as a result of Kearns' misrepresentations about the SB-2 offering, it was paid a total of $76,666.66. See Cousins Aff. ¶ 4, at 2; Motion ¶ 8, at 3. See also FAC ¶ 17, at 6 ("Leslie Robins caused the transfer agent to issue approximately 1.768 million shares, which [L.] Robins caused to be sold or otherwise distributed."). Had Biomoda received market price for those shares at the time they were issued, Biomoda would have received $362,860.00 See Cousins Aff. ¶ 4, at 2; Motion ¶ 8, at 3. Biomoda contends that the damage caused by the inadequate

consideration received for the fraudulently issued shares was therefore $286,193.00.  See Cousins Aff. ¶ 4, at 2; Motion ¶ 8, at 3.  Biomoda's damage calculation does not attempt to account for the harm to the market value of Biomoda's shares or the harm to Biomoda's ability to borrow at favorable rates, resulting from the "flooding" of the market with Biomoda shares that the misrepresentation of the status of the SB-2 offering caused.  Cousins Aff. ¶ 9, at 4; Motion ¶ 8, at 3-4.

Biomoda also contends that its business records demonstrate that, on March 3, 2005, BIT received 100,000 unrestricted shares of Biomoda stock, but paid no consideration for those shares.  See Cousins Aff. ¶ 5, at 2; Motion ¶ 9, at 4.  On the date the shares were issued to BIT, Biomoda's shares were worth $2.50 per share.  See Cousins Aff. ¶ 5, at 2; Motion ¶ 9, at 4.  The difference between the value of the shares issued to BIT and the consideration Biomoda contends it received is $250,000.00.  See Cousins Aff. ¶ 5, at 2; Motion ¶ 9, at 4.

Biomoda further contends that its business records demonstrate that, in May and June of 2007, BIT sold 613,260 unrestricted shares of Biomoda stock to Hope Capital, Inc.  See Cousins Aff. ¶ 6, at 3; FAC ¶ 25, at 11; Motion ¶ 10, at 4.  Biomoda asserts that BIT had obtained these shares from L. Robins, nominally acting on Biomoda's behalf, for no consideration.  See Cousins Aff. ¶ 6, at 3; Motion ¶ 10, at 4.  Biomoda received $110,000.00 in payment for these shares, but their market value at the time of the sale to Hope was $233,114.00.  See Cousins Aff. ¶ 6, at 3; FAC ¶ 25, at 11 ("Over 600,000 of the subject shares were transferred by Leslie Robins to Hope Capital for approximately $110,000 in May and June 2007, effectively at approximately $0.18 per share");  Motion ¶ 10, at 4.  Biomoda calculates that the difference between the value of the shares and the consideration Biomoda received is therefore $123,114.00.  See Cousins Aff. ¶ 6, at 3; Motion ¶ 10,

at 4.

A. Robins asserts that Biomoda received "well in excess of $700,000 cash from the sale of all the shares" for which Biomoda seeks damages in its Motion.  Response ¶ 8(c), at 3.  A. Robins further contends that "the shares of BMOD were worthless as to any cash value and without any value at the time cited by Cousins in his affidavit since they were all restricted shares carrying a legend that it was illegal for them to be sold or transferred."  Response ¶ 16, at 5.  A. Robins also disputes whether the stock market price, which reflects the value of the "free trading shares in the open market in extremely limited numbers," is indicative of the value of the shares.  Response ¶ 25, at 8.

In addition to seeking compensation for the Defendants' issuance of shares of stock, Biomoda also seeks compensation for the $35,000.00 that L. Robins misappropriated from Biomoda's bank account.  See Cousins Aff. ¶ 7, at 3; FAC ¶ 46, at 15; Motion ¶ 11, at 4 (setting forth this fact); Response at 8 (not controverting this fact).  In sum, Biomoda asserts that a conservative calculation of the compensatory damages that Biomoda sustained as a result of the Defendants' conduct, and upon which Biomoda seeks summary judgment, results in a total of $694,316.00.  See Cousins ¶ 7, at 3; Motion ¶ 11, at 4.  This amount excludes interest, which Biomoda is not seeking in this motion.

3.      **Biomoda's By-Laws.**

Section 5.01 of Biomoda's By-Laws states:

Every person who was or is a party to, or is threatened to be made a party to, or is otherwise involved in, any action, suit, or proceeding, whether civil, criminal, administrative, or investigative, by reason of the fact that such person is or was a Director or Officer of the Corporation or is or was serving at the request of the Corporation or for its benefit as a director or officer of another corporation, or as its representative in a partnership, joint venture, trust, or other enterprise, or is or was

the legal representative of such a person, shall be indemnified and held harmless to the fullest extent legally permissible under and pursuant to the Act, against all expenses, liabilities, and losses (including without limitation attorneys' fees, judgments, fines, and amounts paid or to be paid in settlement) reasonably incurred or suffered in connection therewith. Such right of indemnification shall be a contract right that may be enforced in any manner desired by such person. Such right of indemnification shall not be exclusive of any other right which such Directors, Officers, or representatives may have or hereafter acquire and, without limiting the generality of such statement, they shall be entitled to their respective rights of indemnification under any bylaw, agreement, vote of Shareholders, insurance, provision of law, or otherwise, as well as their rights under this Article.

Response ¶ 5, at 2.

## PROCEDURAL BACKGROUND

On August 29, 2007, Biomoda filed its verified Complaint for Common Law Fraud, Violation of Federal and New Mexico Securities Laws, Conversion, Breach of Fiduciary Duty, and Racketeering. See Doc. 1. The Complaint named three Defendants: L. Robins, A. Robins, and Kearns. On October 9, 2007, L. Robins filed Defendant Leslie S. Robins' Answer to Biomoda Inc.'s Complaint and Counterclaim. See Doc. 14.

### 1.      The FAC's Relevant Allegations.

On October 16, 2008, Biomoda filed its FAC. The FAC contains counts against A. Robins for common-law fraud, violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78a and 17 C.F.R. § 240.10b-5, New Mexico Securities Act of 1986, 1986 N.M. Laws Chapter No. 7 (codified at NMSA 1978 §§ 58-13B-1 to -57 repealed by L. 2009, Ch. 82, § 703, eff. Jan. 1, 2010), conversion, civil conspiracy, breach of fiduciary duties or aiding and abetting such breaches, negligence, defamation, and violation of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a) to (d), and New Mexico Racketeering Act, NMSA 1978, § 30-42-3(D). See FAC Counts I-VI, VIII-IX, at 18-27. Pursuant to 18 U.S.C. § 1964 and NMSA 1978, § 30-42-

6A, Biomoda alleged entitlement to treble damages, costs, and attorney fees for injury to Biomoda's business and property that A. Robins' and Kearns' racketeering activity caused.  See FAC ¶ 96, at 26-27.

The FAC states, in relevant part, that the Defendants conspired to "put[ ] at least 3,610,000 shares of facially unrestricted stock in circulation, by various means."  FAC ¶ 16, at 5.  Kearns issued legal opinions that a terminated stock was still open, which L. Robins used to "cause[ ] the transfer agent to issue approximately 1.768 million shares, which Mr. Robins caused to be sold or otherwise distributed."  FAC ¶ 17, at 5-6.  "Over 600,000 of the subject shares were transferred by [L.] Robins to Hope Capital for approximately $110,000 in May and June 2007, effectively at approximately $0.18 per share."  FAC ¶ 35, at 11.  The FAC also states that L. Robins "removed $35,000 from Biomoda's account without the permission or authorization of Biomoda."  FAC ¶ 46, at 15.

### 2.    <u>Entry of Default Judgment as to Liability</u>.

Kerns and A. Robins did not file answers to the initial Complaint or to the FAC, and on October 15, 2008, Biomoda filed a Motion for Default Judgment against them.  See Doc. 91.  Kerns and A. Robins did not oppose the motion.  The Court entered a default, see Clerk's Entry of Default, filed December 5, 2008 (Doc. 101), and a Default Judgment on liability against Kerns and A. Robins.  The Default Judgment imposes liability on Kearns and A. Robins under theories which include civil conspiracy.  The Court "awarded Judgment against Defendant Alvin D. Robins and against Defendant John W. Kearns for liability with respect to each count asserted against them in Plaintiffs' Amended Complaint," and reserved "for subsequent determination by the Court" the determination of damages to be awarded.  Default Judgment at 1.

3.      **Discovery Deadline.**

The Court set discovery deadlines of October 30, 2009, and November 19, 2009, for discovery and discovery motions respectively.  See Joint Status Report and Provisional Discovery Plan at 4, filed December 18, 2008 (Doc. 103); Transcript of Initial Scheduling Conference at 17:16-18, filed February 20, 2009 (Doc. 116)(Court).  The Court also set deadlines of June 30, 2009 and August 28, 2009, for the Plaintiffs and for the Defendants, respectively, to identify their expert witnesses.  See Transcript of Initial Scheduling Conference at 17:18-21 (Court).  A. Robins did not conduct any discovery and has not disclosed any expert witnesses.

4.      **Biomoda's Motion for Summary Judgment.**

Following the Court's entry of Default Judgment as to liability against Kearns and A. Robins, on November 25, 2009, Biomoda submitted its Motion requesting summary judgment on damages.  Biomoda contends that it is entitled to $694,316.00 in compensatory damages and post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a).  Biomoda has concluded that A. Robins is not likely able to respond to a judgment any greater than it seeks in its Motion, rendering proceedings seeking damages beyond this amount effectively unnecessary.  Accordingly, Biomoda states that, if the Court grants summary judgment in the sum it has requested in its motion for summary judgment, it recognizes that it will, necessarily, forgo claims for the greater amount of damages that may have been incurred.  Biomoda does not seek, for example, consequential damages, exemplary damages of any kind, prejudgment interest, or attorney fees.  Biomoda states that, if the Court does not grant summary judgment, and the matter proceeds to trial, Biomoda will seek these and other damages, and a significantly higher judgment.

According to Biomoda, A. Robins' and Kearns' time to respond to the motion for summary

judgment expired on December 14, 2009.  See D.N.M.LR-Civ. 7.4(a)("[A] response must be served and filed within fourteen (14) days after service of the motion, including a motion for summary judgment."  (citation omitted)).  On December 28, 2009, A. Robins filed a Motion for Dismissal. See Doc. 133.  On December 30, 2009, Biomoda filed a Notice of Completion of Briefing.  See Doc. 134.  In the Notice, and pursuant to D.N.M.LR-Civ. 7.4(a), Biomoda gave notice to the Court of completion of briefing with respect to its motion for summary judgment on compensatory damages. Biomoda requests that the Court enter judgment in the amount of $694,316.00, plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a), against A. Robins and Kearns.  On December 31, 2009, A. Robins filed a Motion to Strike Pleading, opposing the Biomoda request for judgment on damages and explaining that his Motion to Dismiss addressed Biomoda's damages calculations. See Doc. 137.

The Court set the hearing on all pending motions for June 10, 2010.  The Court's Courtroom Deputy Clerk talked to parties, and asked whether A. Robins would be interested in withdrawing his motions and instead filing a response to Biomoda's motion for summary judgment.  The parties agreed to cut through the paper and get to the issues.

On June 9, 2010, A. Robins filed, as discussed, a motion to dismiss his pending motions on the understanding that the hearing set for June 10, 2010 would be vacated and that an order would be entered granting him thirty days to file a responsive pleading.  See Motion by Alvin D. Robins to Dismiss All Pending Motions of Alvin D. Robins, filed June 9, 2010 (Doc. 142).  A. Robins stated that it was his intent to file a responsive pleading to all pending matters that Biomoda had filed.  A. Robins said he would file his responsive pleading within thirty days of the date of an order granting his motion.  He said that he filed his motion in an effort to achieve judicial economy.  A. Robins

-12-

stated that his motion was brought in good faith and without any intent to hinder or delay the proceedings.

Before the Court granted A. Robins' motion to dismiss all of his pending motions, the Court's Courtroom Deputy Clerk confirmed that there was no opposition to the motion by Tom Bird of Keleher & McLeod, Biomoda's counsel.  See Amended Order, filed June 10, 2010 (Doc. 145). Accordingly, the Court vacated the motion hearing scheduled for June 10, 2010, and allowed A. Robins until July 9, 2010 to file a response to Biomoda's motion for summary judgment.  See Amended Order.  The Court scheduled a motion hearing on Biomoda's motion for summary judgment for August 4, 2010.

During the pendency of the Motion, Biomoda learned that Kearns passed away on May 20, 2009.  See Suggestion of Death, filed December 30, 2009 (Doc. 135).  Biomoda decided not to substitute his estate or another party, see Fed. R. Civ. P. 25(a)(1),[2] and the Clerk of the Court terminated Kearns from the case on June 10, 2010.  Biomoda and L. Robins settled their claims, and on July 15, 2009, on joint motions of Biomoda and L. Robins, the Court dismissed with prejudice L. Robins and all claims by and against him.  See Order Dismissing Certain Claims, Counterclaims, and Leslie Robins, filed July 15, 2009 (Doc. 128).

--------

[2] Rule 25(a)(1) provides:

If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).

5.       **A. Robins' Response**.

On July 9, 2010, A. Robins filed his response to Biomoda's motion for summary judgment.

Appearing pro se, A. Robins opposes Biomoda's motion for summary judgment.  Attached to his

response was a copy of his answer to the FAC.  In his Response, A. Robins contends that he held

his answer in abeyance subject to an agreement between him, Biomoda, and ADOT.  A. Robins

contends he provided his answer to Biomoda and ADOT in October, 2008.  Based on an agreement

between A. Robins, Herbert L. Whitaker, Executive Vice-President of Biomoda, and L. Robins, the

Executive Vice-President of Advanced Optics Electronics, Inc., A. Robins contends that the answer

was withheld from filing with the Court until and unless either Whitaker or another officer of

Biomoda, or L. Robins or another officer of ADOT, sent, by certified letter or hand service,

notification to A. Robins that all negotiations and settlement discussions were complete or otherwise

abandoned.  Upon receipt of such notification, A. Robins was to have fifteen days to file his

response to Biomoda's Complaint.  A. Robins represents that he never received notice of completion

of settlement discussions from Whitaker or any other representative of Biomoda, or from L. Robins

or any other representative of ADOT.

A. Robins directs the Court, for his specific response to the sole remaining claim for

compensatory damages sought in the motion for summary judgment, to section 5.01 of Biomoda's

by-laws, which indemnifies a

> person [who] is or was a Director or Officer of the Corporation or is or was serving
> at the request of the Corporation or for its benefit as a director or officer of another
> corporation, or as its representative in a partnership, joint venture, trust, or other
> enterprise, or is or was the legal representative of such a person . . . .

Response ¶ 5, at 2.  A. Robins contends that Biomoda has breached its contract with him.

Regarding compensatory damages, A. Robins disputes both Biomoda's valuation of its

shares and the amount of compensation Biomoda received in exchange for the shares.  He contends that Biomoda received "well in excess of $700,000 cash from the sale of all the shares" for which Biomoda seeks damages in its Motion.  Response ¶ 8(c), at 3.  A. Robins further contends that "the shares of BMOD were worthless as to any cash value and without any value at the time cited by Cousins in his affidavit since they were all restricted shares carrying a legend that it was illegal for them to be sold or transferred."  Response ¶ 16, at 3.  A. Robins also disputes whether the stock market price, which reflects the value of the "free trading shares in the open market in extremely limited numbers," is indicative of the value of the shares.  Response ¶ 25, at 8.

A. Robins advances a number of arguments directed at the merits of Biomoda's claims.  See Response ¶¶ 5-7, at 2-3 (asserting a right to indemnification under Biomoda's by-laws, because A. Robins worked to negotiate issues related to Biomoda's patent rights with Los Alamos National Laboratories); Response ¶ 8(a), at 3 (contesting the adequacy of evidence showing that Beaver Information Technology was connected to or operated by Alvin Robins); Response ¶ 8(b), at 3 (arguing, despite allegations in the FAC of A. Robins' direct wrongdoing and his participation in a civil conspiracy, that alleged wrongdoings were never alleged to have been done by A. Robins, directly or indirectly); Response ¶ 19, at 6 (arguing that conspiracy allegations fail because Alvin Robins is the sole remaining defendant); Response ¶¶ 20-22, 6-7 (arguing that Biomoda has released Alvin Robins in its settlement with Leslie Robins, without mentioning that the Order implementing the settlement, Doc. 122, specifically reserved the judgment and claims against Alvin Robins); Response ¶ 25, 7-8 (arguing that the damages calculations improperly fail to account for significant discounts resulting from restrictive legends on the unregistered shares); Response ¶ 28, at 9 (arguing that "there is not a single alleged fact that is backed up by any independent corroboration or

documentation whatsoever").

### 6.    **Biomoda's Reply**.

On July 29, 2010, Biomoda filed its Reply.  Biomoda submits its reply to address the arguments and assertions in A. Robins' response.  Biomoda argues that A. Robins' Response misapprehends the procedural posture of the case, because it addresses the merits of Biomoda's claims.  Biomoda contends that, pursuant to rules 55 and 60(b)of the Federal Rules of Civil Procedure, A. Robins' arguments addressing the merits of its claims are foreclosed, because the Court entered Default Judgment against A. Robins.  Biomoda asserts that rule 16(b) forecloses A. Robins' arguments that suggest a need for additional discovery or expert input, because "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. Pro. 16(b)(4).  Biomoda further argues that A. Robins' Response is inadequate under rule 56(d)[3] to establish a requirement for additional discovery, because it does not "state, with specificity, what additional discovery is believed necessary."  Schaefer v. Antill, 2007 WL 709046, at *10 (D.N.M.)(Browning, J.)(citing Burke v. Utah Transit Auth. and Local 382, 462 F.3d 1253, 1264 (10th Cir. 2006); Chavez v. Perry, 142 F. App'x 325, 334 (10th Cir. 2005)).

### 7.    **Hearings**.

The Court held a hearing on August 4, 2010.  The day before the hearing, on August 3, 2010, A. Robins sent a facsimile transmission to the Court, which the Court construed as a motion to continue for medical reasons.  See Facsimile Transmission from A. Robins to the Court (dated August 3, 2010), filed August 3, 2010 (Doc. 149).  A. Robins did not appear at the hearing and

---

[3] The December 1, 2010 amendments to the Federal Rule of Civil Procedure changed rule 56(f) to 56(d).  To avoid confusion, the Court will refer to the rules by their post-amendment titles.

refused to attend telephonically.  The Court allowed Biomoda to argue in support of its Motion with the understanding that the Court would not rule on the motion for summary judgment until A. Robins had an opportunity to address Biomoda's arguments, if he so chose.  See Memorandum Order and Opinion, filed August 5, 2010 (Doc. 150).

Biomoda argued that it did not have an agreement with A. Robins to allow him to postpone filing his answer.  Rather, Biomoda contended that A. Robins wrote it asserting such an agreement existed, but that both L. Robins and Whitaker stated that no such argument had been established. Biomoda did not respond to A. Robins' communication and proceeded on the understanding that no agreement existed.  Biomoda conceded that any factual disputes would go to a jury and would not be decided by the Court.  Biomoda cited -- in support of its argument that no agreement existed -- A. Robins' failure to bring up the alleged argument in response to Biomoda's motion for default or the Court's entering default against him.  Biomoda reasserted that it engineered its damages calculation for summary judgment and that, if the case proceeded to trial, then Biomoda would seek substantially higher damages.

On August 16, 2010, A. Robins sent a facsimile transmission to the Court asking for an opportunity to argue orally in response the Biomoda's oral argument.  See Facsimile Transmission from A. Robins to the Court (dated August 16, 2010), filed August 16, 2010 (Doc. 153).  The Court scheduled a hearing on October 6, 2010.  On October 6, 2010, A. Robins again sent a facsimile transmission to the Court, which the Court construed as another motion to continue for medical reasons.  See Facsimile Transmission from A. Robins to the Court (dated October 6, 2010), filed October 6, 2010 (Doc. 155).  The Court granted the motion and continued the hearing until November 12, 2010.  See Order, filed October 6, 2010 (Doc. 156).

On November 12, 2010, the Court held a second hearing on Biomoda's Motion.  Despite repeated invitations from the Court to attend the hearing telephonically, A. Robins insisted on attending in person.  A. Robins disputed Biomoda's damages calculation.  He argued that L. Robins and Cousins were each given 490,000 shares of Biomoda stock in 2002 as part of the salvage of Biomoda, and that the 100,000 shares given to BIT came from the shares L. Robins received.  A. Robins further contended that, as part of the settlement agreement between Biomoda and L. Robins, in April 2009, L. Robins returned 90,000 of the shares Biomoda alleged were sold to Standard Asset Management for no consideration, which were part of the 1,768,000 shares on which Biomoda based its damages.

## LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal

quotes omitted).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated §., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improv. Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Third, the court cannot decide any issues of credibility. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING RULE 60(b)

Rule 60(b) allows a court to relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), "newly discovered evidence," Fed. R. Civ. P. 60(b)(2), "fraud . . . misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), or "any other reason that justifies relief,"  Fed. R. Civ. P. 60(b)(6).  "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule."  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment."  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)). The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice. Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444.

Motions to reconsider based on mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud or misconduct by an opposing party must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment.").  The pendency of an appeal does not toll the time requirement for pursuing a motion governed by rule 60(c)(1).  See Griffin v. Reid, 259 F. App'x 121, 123 (10th Cir. 2007); Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b).").

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). No time limit applies to rule 60(b)(6), save that the motion be made within a reasonable time. See Fed. R. Civ. P. 60(c)(1). "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from the one-year limit that applies to motions under clauses (1), (2), and (3)." 11 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2864 (2d ed. 2010).

"Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'" C. Wright, A. Miller & M. Kane, supra, § 2864. In Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993), the Supreme Court of the United States reasoned that, to avoid abrogating the one-year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)). The Supreme Court expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. In Klapprott, for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control. Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n.11; Ackerman v. United States, 340 U.S. 193, 197-200 (1950); Klapprott v. United States, 335 U.S. 601, 613-14 (1949)). See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show

'extraordinary circumstances' justifying the reopening of a final judgment."). In <u>Gonzalez v. Crosby</u>, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance. <u>See</u> 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the federal rules, while the Court was sharply divided on other issues, no dispute arose from Justice Black's statement: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition. In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b)." <u>Klapprott v. United States</u>, 335 U.S. at 613. <u>See</u> C. Wright, A. Miller & M. Kane, <u>supra</u>, § 2864.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness," which does not fit within rule 60(b)(3)'s provision for fraud by an adverse party. C. Wright, A. Miller & M. Kane, <u>supra</u>, § 2864. The most common application is to grant relief "when the losing party fails to receive notice of the entry of judgment in time to file an appeal." C. Wright, A. Miller & M. Kane, <u>supra</u>, § 2864.[4] It is not enough to argue the same issues that a court has already addressed.

---

[4] Cases arguing based on a lack of notice are not primarily handled through the appeals process:

> Most of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not learn of the entry of the judgment. In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the Sixth Circuit.

C. Wright, A. Miller & M. Kane, <u>supra</u>, § 2864 (citations omitted). <u>See</u> <u>Clark v. Lavallie</u>, 204 F.3d

See Pyeatt v. Does, 19 F. App'x 785, 788 (10th Cir. 2001)("[A] motion to reconsider [that] simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief.").

## LAW REGARDING CALCULATION OF DAMAGES
## FOLLOWING ENTRY OF DEFAULT JUDGMENT ON LIABILITY

After entering default judgment, the Court takes all of the well-pleaded facts in a complaint as true.  See United States v. Craighead, 176 F. App'x 922, 925 (10th Cir. 2006); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  (citations omitted)).  "If defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing."  United States v. Craighead, 176 F. App'x at 925 (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 (3d ed. 1998))(alteration in original).  See also  Fed. R. Civ. P. 8(d)("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading.").  A court may enter a default judgment for a damage award without a hearing if the amount claimed is "one capable of mathematical calculation." Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d 1189, 1202 (D.N.M. 2007)(Browning, J.)(quoting H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985)(citing Venable v. Haislip, 721 F.2d 297, 300 (10th Cir. 1983))).  "It is a familiar practice and an exercise of judicial power for a court upon default, by

_____

1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'precludes the use of Fed.R.Civ.P. 60(b)(6) to cure problems of lack of notice.'"  (citations omitted)).

taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." C. Wright, A. Miller & M. Kane, supra, § 2688 (quoting Pope v. United States, 323 U.S. 1, 12 (1944)). "If the damages sum is not certain or capable of easy computation, the court may" conduct such hearings or order such references as it deems necessary. Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1202 (citing Beck v. Atlantic Contracting Co., 157 F.R.D. 61, 64 (D. Kan. 1994)). See Fed. R. Civ. P. 55(b)(2)(B)("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages.").

In the absence of genuine issues of fact material to a plaintiff's damages showing, a court may appropriately address damages through summary judgment, including cases where facts have been determined by the entry of default judgment. See, e.g., Trustees of Const. Indus. and Laborers Health and Welfare Trust v. Hartford Fire Ins. Co., 578 F.3d 1126, 1127, 1130 (9th Cir. 2009)(affirming in part district court's award of damages in summary judgment based on default judgment); J.R. Simplot v. Chevron Pipeline Co., 563 F.3d 1102, 1117 (10th Cir. 2009)(recognizing that summary judgment on any and all aspects of a party's claim, including damages, is proper if there are no genuine issues of material fact); Mid-Continent Cas. Co. v. JHP Dev., 557 F.3d 207, 211, 218 (5th Cir. 2009)(affirming district court's granting summary judgment awarding damages based on finding "default judgment in the underlying suit was binding" on the plaintiff); Ruiz v. Blentech Corp., 89 F.3d 320, 323 (7th Cir. 1996)(same). Cf. Olcott v. Delaware Flood Co., 327 F.3d 1115, 1119 n.4 (10th Cir. 2003)(discussing that entry of summary judgment was appropriate after entry of default under rule 55(a) because "the court had not yet entered judgment by default pursuant to Fed.R.Civ.P. 55(b)"). Nothing in the rules of procedure concerning summary judgment or default

judgment requires the court to treat damages differently than other issues or mandates a trial where there is no genuine issue of material fact.  See Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1202-03.

### MEASURE OF DAMAGES UNDER NEW MEXICO AND FEDERAL LAW

If the damages are not certain or capable of easy mathematical calculation, the Court employs the measure of damages applicable to the claim.  Biomoda brings federal and state claims. The Court will need to look at the measure of the damages for each claim for which Biomoda has secured a default judgment.

### 1.    Fraud.

A plaintiff who has established fraud under New Mexico law "may recover 'such damages as are the direct and natural consequences' of the reliance on a fraudulent representation."  Williams v. Stewart, 137 N.M. 420, 429, 112 P.3d 281, 290 (Ct. App. 2005)(quoting Indus. Supply Co. v. Goen, 58 N.M. 738, 743, 276 P.2d 509, 512 (1954)).  Damages for fraud are measured at the time of the fraudulent transaction.  See Indus. Supply Co. v. Goen, 58 N.M. at 741-42, 276 P.2d at 511. "A benefit of the bargain" award, measured by the amounts the defrauded party would have received if the situation had been as the defrauding party represented, properly compensates the defrauded party.  Indus. Supply Co. v. Goen, 58 N.M. at 741, 276 P.2d at 511(citing Stewart v. Potter, 44 N.M. 460, 464, 104 P.2d 736, 739 (1940)).

### 2.    Conversion.

"Conversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made."  Sec. Pac. Fin. Servs., Inc.

v. Signified Corp., 125 N.M. 38, 44, 956 P.2d 837, 843 (Ct. App. 1998)(citing AAA Auto Sales &

Rental, Inc. v. Sec. Fed. Sav. & Loan Ass'n., 114 N.M. 761, 763, 845 P.2d 855, 857 (Ct. App.1992).

"The measure of damages for conversion is the value of the property at the time of conversion plus

interest." Sec. Pac. Fin. Servs., Inc. v. Signified Corp., 125 N.M. at 44, 956 P.2d at 843 (citing

Woods v. Collins, 87 N.M. 370, 371, 533 P.2d 759, 760 (Ct. App. 1975)).

### 3.    Civil Conspiracy.

Under New Mexico law, co-conspirators are jointly and severally liable for their own tortious

conduct and for the tortious conduct of their co-conspirators. See Allied Capital, Inc. v. Gibson, 558

F. Supp. 2d at 1206.  Damages caused by a civil conspiracy are measured by the effect of the

unlawful conduct committed by each conspirator.  See Allied Capital, Inc. v. Gibson, 558 F. Supp.

2d at 1206.  "[A] claim of civil conspiracy is a claim seeking to impute liability from one co-

conspirator to another." Seeds v. Lucero, 137 N.M. 589, 594, 113 P.3d 859, 864 (Ct. App. 2005).

"The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy

jointly and severally liable for the torts of any of its members." Ettenson v. Burke, 130 N.M. 67,

73, 17 P.3d 440, 445 (Ct. App. 2000).

### 4.    Aiding and Abetting of a Breach of Fiduciary Duty.

"New Mexico recognizes tort liability for the aiding and abetting of a breach of fiduciary

duty." GCM, Inc. v. Kentucky Cent. Life Ins. Co., 124 N.M. 186, 190, 947 P.2d 143, 147

(1997)("While we believe New Mexico has implicitly endorsed tort liability for intentionally

causing a fiduciary to breach his or her duties, we now explicitly recognize this form of tort

liability."). "Where one participates with or aids or abets an agent in an act which perpetrates a

fraud upon the principal, he is equally liable with the agent to the principal for any damages

suffered."  Wolf & Klar Cos. v. Garner, 101 N.M. 116, 118, 679 P.2d 258, 260 (1984).  Damages

are measured by the harm resulting from the breach.  GCM, Inc. v. Kentucky Cent. Life Ins. Co.,

124 N.M. at 191, 947 P.2d at 148  ("[L]iability 'extends to any person who by any means aids or

encourages the act.'"  (quoting  Rael v. Cadena, 93 N.M. 684, 684-85, 604 P.2d 822, 822-23 (Ct.

App. 1979))).

     **5.**    **New Mexico Securities Act.**

     Under the New Mexico Securities Act, which was in effect at the time of the complained of

activities, damages for market manipulation are measured as "the difference between the price at

which the securities were . . . sold and the market value the securities would have had at the time

of the person's . . . sale in the absence of the act or transaction, plus interest at the legal rate . . . and

reasonable attorneys' fees." NMSA 1978, § 58-13B-40E (2006), repealed by L. 2009, Ch. 82, § 703,

eff. Jan. 1, 2010.  In addition to damages remedies that the New Mexico Securities Act specifically

affords, a victim of securities fraud "who recovers under the Act may be entitled additionally to

recover for any nonduplicative damages that may be awarded on a theory of common-law fraud."

Naranjo v. Paull, 111 N.M. 165, 174, 803 P.2d 254, 263 (Ct. App. 1990).  Federal securities law

provides analogous remedies.  See 15 U.S.C. § 78j(b)(prohibiting any person "[t]o use or employ,

in connection with the purchase or sale of any security . . . any manipulative or deceptive device or

contrivance in contravention of such rules and regulations as the Commission may prescribe as

necessary or appropriate in the public interest or for the protection of investors"); 17 C.F.R. §

240.10B-5 (making it unlawful "[t]o engage in any act, practice, or course of business which

operates or would operate as a fraud or deceit upon any person, in connection with the purchase or

sale of any security"); Stonebridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157

(2008)(recognizing implied private right of action for damages under § 10(b) and Rule 10b-5).

###### 6.      **New Mexico Racketeering Act.**

Under the New Mexico Racketeering Act, "[a] person who sustains injury to his person, business or property by a pattern of racketeering activity may file an action in the district court for the recovery of three times the actual damages proved and the costs of the suit, including reasonable attorney's fees."  NMSA 1978 § 30-42-6A.  "Following a determination of liability," a court may "order[ ] the payment of three times the damages proved to those persons injured by racketeering." NMSA 1978 § 30-42-6D(4).  The Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") provides the same remedies except any conduct that would have been actionable as fraud in the purchase or sale of securities may not be relied upon to establish a violation of the RICO statute.  See 18 U.S.C. § 1964(c)

###### 7.      **Post-Judgment Interest.**

In a diversity action, post-judgment interest is calculated in accord with the formula set out in 28 U.S.C. § 1961(a).  "The pre-judgment interest rate is set by state law, while the post-judgment rate is set by federal law."  Youngs v. Am. Nutrition, Inc., 537 F.3d 1135, 1146 (10th Cir. 2008)(citing 28 U.S.C. § 1961(a); Rositer v. Bob Toomey Truck Leasing, Inc., 567 F.2d 938, 944-45 (10th Cir. 1977)).  28 U.S.C. § 1961(a) states:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court.  Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State.  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment.  The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

28 U.S.C. § 1961(a)**.**

## ANALYSIS

To the extent that the Response is and should be construed as a request that the Court vacate the Default Judgment, the Court denies A. Robins' request, because he has not established that he was faultless under extraordinary circumstances in delaying his request.  The Court grants Biomoda's Motion in part and denies it in part.  Biomoda has established as a matter of law that it is entitled to $35,000.00 plus post-judgment interest in damages for the conversion of Biomoda's funds by L. Robins as part of a civil conspiracy in which A. Robins participated.  A. Robins has established that a genuine question of material fact exists whether Biomoda suffered $123,114.00 in damages for the transfer of 613,260 shares of Biomoda's stock in May and June of 2007, whether Biomoda suffered $250,000.00 in damages for the transfer of 100,000 shares of Biomoda stock to BIT on March 3, 2005, and whether Biomoda suffered $286,193.34 in damages for the transfer of 1,768,000 shares in June and July of 2007.

## I.       A. ROBINS HAS NOT CONSENTED TO BIOMODA'S MOTION.

In its December 30, 2009 Notice of Completion of Briefing, Biomoda contends that A. Robins, by failing to file a responsive pleading within the proscribed time of December 14, 2009, consented to the granting of its motion for summary judgment on compensatory damages.  See D.N.M.LR-Civ. 7.4(a)("[A] response must be served and filed within fourteen (14) days after service of the motion, including a motion for summary judgment."  (citation omitted)).  On December 28, 2009, A. Robins filed a Motion for Dismissal.  In his December 31, 2009 Motion to Strike Pleading, A. Robins stated that his Motion for Dismissal addressed Biomoda's damages calculations.

The Court's Courtroom Deputy Clerk talked to the parties and asked whether A. Robins

would be interested in withdrawing his motions and instead filing a response to Biomoda's motion for summary judgment.  The parties agreed to set aside their paper disputations and to reach the issues.  Based on this agreement, on June 9, 2010, A. Robins filed his Motion by Alvin D. Robins to Dismiss All Pending Motions of Alvin D. Robins.  A. Robins stated his intent to file a responsive pleading to all pending matters that Biomoda had filed within thirty days of the date of an order granting his motion.  Before the Court granted A. Robins' motion to dismiss all of his pending motions, the Court's Courtroom Deputy Clerk confirmed that Tom Bird of Keleher & McLeod, Biomoda's Counsel, did not oppose this motion.  See Doc. 144.  On July 9, 2010, A. Robins filed his response to Biomoda's motion for summary judgment.  Because the parties agreed to A. Robins' dismissing his pending motions and filing a response to Biomoda's Motion, the Court finds that A. Robins did not consent to Biomoda's Motion or its calculation of compensatory damages.

## II.    THE COURT DOES NOT FIND THAT THE ENTRY OF THE DEFAULT JUDGMENT WAS A FRAUD.

A. Robins contends that the entry of Default Judgment as to liability was a fraud perpetrated on the Court by a conspiracy of Cousins, Michael H. Pete, president of ADOT, and Whitaker, who are all officers and/or directors of Advanced Optics Electronics, Inc. and/or Biomoda.  A. Robins asserts that he held his answer in abeyance subject to an agreement between him, Biomoda, and ADOT.  A. Robins contends he provided his answer to Biomoda and ADOT in October, 2008.  A. Robins contends that, based on an agreement between Whitaker, L. Robins, and A. Robins, he withheld from filing his answer with the Court pending notice from either Whitaker or another officer of Biomoda, or L. Robins or another officer of ADOT, that all negotiations and settlement discussions were complete or otherwise abandoned.  Upon receipt of such notification, A. Robins was to have fifteen days to file his response.  A. Robins represents that he never received notice of

completion of settlement discussions from Whitaker or any other representative of Biomoda, or from A. Robins or any other representative of ADOT.

Even if Default Judgment was entered because of fraud, misrepresentation, or misconduct on Biomoda's part, A. Robins would have had to present that argument to the court within one year of the Court's entering Default Judgment. Under rule 60(b)(3), a party may move for relief from "a final judgment, order, or proceeding" because of "fraud . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). The time for such a motion has, however, passed. "A motion under Rule 60(b) must be made within a reasonable time -- and for reasons[, among others, of fraud misrepresentation, or misconduct by an opposing party] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The Court entered a default on December 5, 2008 and a Default Judgment on liability against A. Robins on December 19, 2008. A. Robins did not allege that he withheld his answer pursuant to the agreement until he filed his Response on July 9, 2010, more than one year after the entry of Default Judgment.[5] The Court, consequently, would be unable to vacate its judgment on the basis of fraud or misrepresentation even if it found Biomoda had misled A. Robins.

Moreover, Biomoda disputes A. Robins' allegation. It argues that no agreement existed allowing A. Robins to postpone filing his answer. Rather, Biomoda contends that A. Robins wrote it asserting that such an agreement existed, but, in response to Biomoda's inquiry, both L. Robins and Whitaker stated that no such argument had been established. Biomoda decided not respond to A. Robins' communication and proceeded on the understanding that no agreement existed. There

---

[5] A. Robins' December 28, 2009 Motion for Dismissal and December 31, 2009 Motion to Strike Pleading were also filed outside of the one-year time period, and do not mention the alleged agreement.

is thus a factual dispute whether the agreement existed.  In any case, while Biomoda's conduct may constitute a sharp business practice, after A. Robins allowed so much time to pass, the Court is not convinced Biomoda's conduct, even according to A. Robins' account, amounts to a fraud upon the Court or upon A. Robins.

## III.   THE PROCEDURAL POSTURE OF THE CASE PRECLUDES THE COURT FROM ADDRESSING BIOMODA'S MOTION ON THE MERITS.

Biomoda seeks damages, either as a matter of undisputed fact pursuant to rule 56 of the Federal Rules of Civil Procedure or because its damages are capable to easy mathematical computation, such that no hearing is necessary.  Biomoda contends that the Court may appropriately award the damages it seeks either under rule 56 or under rule 55.  A. Robins responds with a number of arguments, many of which address the underlying merits of Biomoda's claims.  Biomoda contends that the response significantly misapprehends the procedural posture of this matter and the limits that posture creates for the arguments that A. Robins may permissibly assert in response to Biomoda's motion.

The Court has entered Default Judgment as to liability against A. Robins.  Because of this judgment, the Court takes all of the well-pleaded facts in the FAC as true.  See United States v. Craighead, 176 F. App'x at 924-25.  In United States v. Craighead, the United States Court of Appeals for the Tenth Circuit addressed a defendant's argument that a district court had improperly entered default judgment against him, because the court did not have subject-matter jurisdiction and because "the record contains only the theories and conclusions of counsel purporting to represent the United States -- no notes and no authenticated documents."  176 F. App'x at 924.  The Tenth Circuit rejected the defendant's argument, stating:

The fatal flaw in Mr. Craighead's argument is that it rests on the faulty premise that

the district court could not enter default judgment unless the government proved the factual allegations contained in its complaint.  On the contrary, Mr. Craighead relieved the government of the burden of proving its factual allegations, including the allegations supporting constitutional standing, by failing to answer the complaint. "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); see also Olcott v. Delaware Flood Co., 327 F.3d 1115, 1125 (10th Cir. 2003) (quoting Jackson v. FIE Corp., 302 F.3d 515, 525 (5th Cir. 2002), for the same proposition); Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002) (quoting Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987), for the same proposition).

176 F. App'x at 924-25 (emphasis added).

The Tenth Circuit relied on principles established by the Supreme Court in Thomson v. Wooster, 114 U.S. 104 (1885).

> The applicable principles are clearly implied from Thomson v. Wooster . . . where the court held that defendants who had defaulted in a patent infringement suit would not be permitted to show that the patent sued upon was invalid.  Defendants had sought to introduce the original patent to show it differed from a reissued patent, which was the patent the plaintiffs sought to enforce.  The court ruled that neither this proof nor evidence that defendants had delayed 14 years in seeking reissue were sufficient to defeat the contrary allegation of the validity of the patent contained in the complaint . . . .  We are instructed by Wooster that so long as the facts as painted by the complaint "might . . . have been the case" they may not now be successfully controverted . . . .

United States v. Craighead, 176 F. App'x at 25 (quoting Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 64 (2d Cir.1971), overruled on other grounds by Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973)(quoting Thomson v. Wooster, 114 U.S. at 114))(alteration in original).

The Court cannot address A. Robins' arguments based on the merits of Biomoda's claims so long as the Default Judgment stands.  See United States v. Craighead, 176 F. App'x at 924-25. Because A. Robins presents arguments addressing the underlying factual allegations on which Biomoda's claims are founded, the Court treats those arguments in A. Robins' Response as a motion

-34-

to vacate the Default Judgment.  The Court further concludes that, under controlling law, it should

deny A. Robins' motion to vacate, because he has not shown extraordinary circumstances suggesting

that he is faultless in delaying more than a year to seek relief from the Court's Default Judgment.

Again, the Court entered a default and a Default Judgment on liability against A. Robins in

December 2008.  A. Robins did not file his Response, which the Court construes in part as a motion

to vacate the Default Judgment, until July 9, 2010, more than one year after the entry of Default

Judgment.  "The court . . . may set aside a default judgment under Rule 60(b)."  Fed. R. Civ. P.

55(c).[6] See Hukill v. Oklahoma Native American Domestic Violence Coalition, 542 F.3d 794, 796-

97 & n.4 (10th Cir. 2008)("We generally review a district court's denial of a motion to set aside a

_____

        [6] This Court has previously stated that interlocutory motions are appropriate vehicles for
requesting that the Court reconsider a motion prior to entering final judgment.  See Edwards-Flynn
v. Yara, No. CIV. 08-0186 JB/ACT, 2010 WL 624086, at *4 (D.N.M. Jan. 26, 2010)(Browning, J.).
"[I]nterlocutory motion[s] invok[e] the district court's general discretionary authority to review and
revise interlocutory rulings prior to entry of final judgment."  Wagoner v. Wagoner, 938 F.2d 1120,
1122 n.1 (10th Cir. 1991).  A motion for reconsideration is an "inappropriate vehicle[ ] to reargue
an issue previously addressed by the court when the motion merely advances new arguments, or
supporting facts which were available at the time of the original motion."  Servants of Paraclete v.
Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Thus, a motion for reconsideration is appropriate
where the court has misapprehended the facts, a party's position, or the controlling law.  It is not
appropriate to revisit issues already addressed or advance arguments that could have been raised in
prior briefing."  Edwards-Flynn v. Yara, 2010 WL 624086, at *4 (quoting Servants of Paraclete v.
Does, 204 F.3d at 1012)(internal quotation marks omitted).  The text of rule 55(c), however, appears
to demand that default judgments shall be treated differently.  See Fed. R. Civ. Pro. 55(c)("The
court . . . may set aside a default judgment under Rule 60(b)."); In re Wallace, 99 F. App'x 870, at
*2 (10th Cir. 2004)("In order to set aside a default judgment, a party must meet the requirements of
Federal Rule of Civil Procedure 60(b).").  That rule 55(c) specifically deals with default judgment
suggests that rule 60(b) -- not the more general interlocutory order rule -- governs those judgments --
even when they may be before a final judgment is entered and still interlocutory to a degree.  See
Sloss Industries Corp. v. Eurisol, 488 F.3d 922, 934-36 (11th Cir. 2007)(affirming district court's
application of rule 60(b) to a defendant's motion to vacate default judgment as to liability, which
was followed by a jury trial on damages); Albert v. Gillon, No. 97 CIV. 7498(RPP), 1998 WL
404541, at *1 (S.D.N.Y. July 17, 1998)(applying rule 60(b) to defendant's motion to vacate and set
aside a default judgment on liability).

default judgment under Rules 55(c) and 60(b) for an abuse of discretion. . . .  Rule 55(c) provides, in pertinent part, that '[t]he court may set aside . . . a default judgment under Rule 60(b).'"); In re Wallace, 99 F. App'x 870, at *2 ("In order to set aside a default judgment, a party must meet the requirements of Federal Rule of Civil Procedure 60(b)."). See also Sloss Indus. Corp. v. Eurisol, 488 F.3d at 934-36 (affirming district court's application of rule 60(b) to a defendant's motion to vacate default judgment as to liability, which was followed by a jury trial on damages); Albert v. Gillon, 1998 WL 404541, at *1 (applying rule 60(b) to defendant's motion to vacate and set aside a default judgment on liability).

Because more than one year has passed since the entry of the Default Judgment, and A. Robins does not contend the Default Judgment is void or that it has been satisfied, see Fed. R. Civ. P. 60(b)(4)-(5), A. Robins can succeed on his motion to vacate only under rule 60(b)(6)'s demanding standard. See Fed. R. Civ. P. 60(c)(1)("A motion under Rule 60(b) must be made . . . for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order . . . ."). Rule 60(b)(6) provides that a court may relieve a party from "final judgment, order, or proceeding" for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). No time limit applies to rule 60(b)(6), save that the motion must be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1).

Despite the rule's inviting language, under rule 60(b)(6) "a party must show extraordinary circumstances suggesting that the party is faultless in the delay." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393. See Omar-Muhammad v. Williams, 484 F.3d 1262, 1264 (10th Cir. 2007)("[T]o obtain relief under Rule 60(b)(6), [petitioner] must show . . . 'extraordinary circumstances.'"); Cashner v. Freedom Stores, 98 F.3d 572, 579 (10th Cir. 1996) ("[A] district court may grant a Rule 60(b)(6) motion only in extraordinary circumstances and only when necessary to

accomplish justice."). "Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'" C. Wright, A. Miller & M. Kane, supra, § 2864. See Cothrum v. Hargett, 178 F. App'x 855, 858 (10th Cir. 2006)(finding a prisoner's mental illness, which did not result in confinement to a mental institution or inpatient care, did not meet "heavy burden to justify relief under Rule 60(b)(6)"). "[A] party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n.11).

A. Robins provides no reasons for delaying bringing his motion. He certainly does not provide one that would satisfy his burden under rule 60(b)(6). A. Robins has not shown "'extraordinary circumstances' suggesting that the [he] is faultless in the delay." 507 U.S. at 393. A. Robins points to nothing like the "incarceration, ill health, and other factors beyond his reasonable control" that would justify delaying bringing his Motion. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393. While A. Robins has experienced health problems that have prevented him from attending hearings in person, he has not asserted that his health issues have prevented him from submitting filings or submitting a motion to vacate the Default Judgment -- nor could he, as he filed a notice with the Court on January 23, 2009. See Doc. 115. A. Robins reveals no reason, and the circumstances suggest nothing beyond neglect, for his delay. "If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393. The Court finds, therefore, A. Robins "c[an] not avail himself of the broad 'any other reason' clause of 60(b)." Klapprott v. United States, 335 U.S. at 613. Consequently, the Default Judgment stands,

and the Court takes all of the well-pleaded facts in the FAC as true.  See United States v. Craighead,

176 F. App'x at 924-25.

## IV.    THE COURT WILL NOT ALLOW A. ROBINS TO CONDUCT ADDITIONAL DISCOVERY OR TO INTRODUCE EXPERT WITNESSES.

A. Robins' Response suggests the need for additional discovery and expert input for several

points.  See, e.g., Response at ¶ 9, at 3-4 ("This can be proven by a careful audit and examination

of Biomoda's books and records to show that the cash flow received by Biomoda . . . ."); id. ¶ 10,

at 4 ("Such evidence should include depositions as well as party admissions, documents received

on discovery (such as contracts, e-mails, letters and certified government documents) and business

records, ledgers, bank accounts, stock ledgers, and other documentation . . . "); id. ¶ 12, at 4 ("[T]he

truth would become known in further discovery, etc."); id. ¶ 16, at 5 ("At a trial by jury, evidence

and testimony by independent experts will show that the shares of BMOD were worthless as to any

cash value . . . ."); id. ¶ 18, at 6 ("[T]his Motion for Summary Judgment, naked on its face was not

accompanied by a request for admissions and the only sworn affidavit comes from a party with

unclean hands who is also a officer, director and share holder of the moving party, BMOD."); id.

¶ 25, at 7 ("[I]t will be shown at trial by a preponderance of evidence from independent expert

witnesses that John Cousins directed BMOD to sell shares at a 93% discount . . . ."); id. ¶ 26, at 8

("It is incumbent on this Court to allow discovery into the aspects of claims of damages and to set

this care for trial by jury as to the damage aspect, even if the default is allowed to stay."); id. at ¶ 28,

at 9 ("Without discovery as to the source and basis of the allegations, which seem to have been

dreamed up by Mr. Cousins, the Court must not accept these naked claims, but must require at the

very least independent corroboration and substantiation by certified experts.").  Biomoda contends

that, under the procedural posture of the case, the Federal Rules of Civil Procedure foreclose the

arguments that A. Robins presents that require additional discovery and expert witnesses.  Biomoda argues that A. Robins has not shown good cause why the Court should permit additional discovery or that he has been diligent in conducting discovery thus far, and that his request thus fails under the standard of rules 16(b) and 56(d).

To the extent that A. Robins' argument proposes additional discovery or introducing expert witnesses, the Court denies his request.  A. Robins has not shown good cause to modify the Court's schedule or shown diligence in conducting discovery.  Consequently, he has not established that the Court should modify its schedule or met rule 56(d)'s requirements.  The Court scheduled discovery deadlines of October 30, 2009, and November 19, 2009, for discovery and discovery motions respectively.  See Joint Status Report and Provisional Discovery Plan at 4, filed December 18, 2008 (Doc. 103); Transcript of Initial Scheduling Conference at 17:16-18, filed February 20, 2009 (Doc. 116)(Court).  The Court also set deadlines of June 30, 2009 and August 28, 2009, for the plaintiffs and defendants, respectively, to identify their expert witnesses.  See Transcript of Initial Scheduling Conference at 17:18-21 (Court)("The discovery will end on October 30th, 2009.  All discovery motions will be due no later than November 19th, 2009.  The plaintiffs will identify their expert or experts by June 30th, 2009.  The defendants will identify their expert or experts by 21 August 28th, 2009.").  A. Robins did not attend the scheduling conference, but the Court did not limit the scope of the scope of the schedule to the Defendants in attendance, but set the schedule for all Defendants.[7]  A. Robins did not conduct any discovery and has not disclosed any expert witnesses.  Rule 16(b)(4)

---

[7] It is true that the Court had already entered a default judgment on liability against A. Robins.  It is not at all clear, however, that Biomoda would have attempted to block discovery on damages, or what the Court would have done if at had attempted discovery and Biomoda had attempted to block that discovery.  In any case, the issue is academic, because A. Robins attempted no discovery at any time.

provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed.

R. Civ. Pro. 16(b)(4).  A. Robins has not shown good cause why the schedule should be modified.

Advisory Committee Notes to Rule 16 explain: "[T]he court may modify the schedule on a showing

of good cause if it cannot reasonably be met despite the diligence of the party seeking the

extension." Fed. R. Civ. Pro. 16(b) advisory committee notes to the 1983 Amendment.  This Court

has previously stated that its rule 16(b) good-cause inquiry focuses on the diligence of the party

seeking amend the scheduling.  See Walker v. THI of New Mexico at Hobbs Ctr., 262 F.R.D. 599,

602-03 (D.N.M. 2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Intern., Inc., No.

CIV 08-1101 JB/RLP, 2009 WL 3672505, at *2-3 (D.N.M. Sept. 29, 2009)(Browning, J.); Trujillo

v. Bd. of Educ. of the Albuquerque Pub. Schs., Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG,

2007 WL 2296955, at *3 (D.N.M. June 5, 2007)(Browning, J.).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard
> contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of the movant, or the
> prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave
> to modify the scheduling order to permit the proposed amendment. Properly construed,
> "good cause" means that scheduling deadlines cannot be met despite a party's diligent
> efforts.  In other words, this court may "modify the schedule on a showing of good cause if
> [the deadline] cannot be met despite the diligence of the party seeking the extension."
> Carelessness is not compatible with a finding of diligence and offers no reason for a grant
> of relief.

Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C.)(citations omitted),

aff'd on other grounds, 129 F.3d 116 (4th Cir. 1997).  See Denmon v. Runyon, 151 F.R.D. 404, 407

(D. Kan. 1993)(affirming an order denying the plaintiff's motion to amend after the deadline the

scheduling order established had passed and stating that, "[t]o establish 'good cause,' the party

seeking to extend the deadline must establish that the scheduling order's deadline could not have

been met with diligence").  Cf. SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1518-19 (10th Cir.

1990)(affirming, under rule 16(b), denial of a motion to amend an answer to include a compulsory

counterclaim filed three months after the scheduling order deadline).

A request for additional discovery under rule 56(d) similarly focuses on a party's diligence.

Rule 56(d) states:

> **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  The Tenth Circuit has explained:

> A prerequisite to granting relief [pursuant to Rule 56(d)] . . . is an affidavit furnished by the nonmovant.  Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented.  <u>This includes identifying the probable facts not available and what steps have been taken to obtain these facts</u>.  In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact.

<u>Price ex rel. Price v. W. Res., Inc.</u>, 232 F.3d 779, 783 (10th Cir. 2000)(quoting <u>Comm. for the First

Amendment v. Campbell</u>, 962 F.2d 1517, 1522 (10th Cir.1992))(emphasis added).  "[I]f the party

filing the Rule [56(d)] affidavit has been dilatory . . . , no extension will be granted."  <u>Jensen v.

Redevelopment Agency of Sandy City</u>, 998 F.2d 1550, 1554 (denying a 56(d) request where "the

record reflect[ed] that plaintiffs were dilatory in pursuing discovery prior to the filing of their [56(d)]

affidavit").

A. Robins has not conducted discovery in this case.  He has made no discovery requests.  He

has thus not been diligent in pursuing the discovery he now requests in his Response.[8]  The Court

set discovery deadlines of October 30, 2009, and November 19, 2009, for discovery and discovery

motions respectively.  See Joint Status Report and Provisional Discovery Plan at 4; Transcript of

Initial Scheduling Conference at 17:16-18 (Court).  The Court also set deadlines of June 30, 2009

and August 28, 2009, for the Plaintiffs and Defendants, respectively, to identify their expert

witnesses.  See Transcript of Initial Scheduling Conference at 17:18-21 (Court).  While the Court

had entered default against A. Robins in December of 2008 and he was not present at the scheduling

conference, A. Robins was still a Defendant in the case, and the Court did not limit the deadline to

the Defendants at the hearing, and a transcript of the hearing was filed on February 20, 2009.  See

Transcript of Initial Scheduling Conference at 17:18-21 (Court).  A. Robins did not conduct any

discovery and has not disclosed any expert witnesses.  Consequently, A. Robins has not shown good

cause for amending the discovery deadlines or that he has not be dilatory in pursuing discovery.  The

Court thus denies his request for additional discovery or to introduce expert witnesses.

## V.   BIOMODA IS ENTITLED AS A MATTER OF LAW TO SOME OF THE DAMAGES IT SEEKS AGAINST A. ROBINS.

The Default Judgment entered against Kearns and A. Robins, based on the claims asserted

against them in the FAC, and the undisputed facts presented in the motion for summary judgment

demonstrating the amount of damages sustained by Biomoda, entitle Biomoda to an award of

$35,000.00, plus post-judgment interest.  This award does not encompass all the damages that may

have flowed from the misconduct for which A. Robins and Kearns have been found liable.  This

_____

[8] The Court's analysis may be otherwise if A. Robins had conducted any discovery, or if A. Robins had requested discovery and been rebuffed by the Court or Biomoda.  A. Robins, however, has made not efforts -- diligent or otherwise -- to develop evidence in this case.

amount reflects, rather, the limited damages Biomoda seeks for the purposes of its Motion, for which Biomoda has established no genuine question of material fact exists.  In its Motion, Biomoda is not seeking compensation for pre-judgment interest, the loss of the value of its shares that the Defendants' market manipulation caused, the increased cost of financing resulting from the decline in Biomoda's share prices, or other possible categories of damages, including recovery of treble damages and attorney fees under the federal or state racketeering statutes, in the interest of simplicity and efficiency.

Biomoda contends that it is entitled to $694,316.00 in compensatory damages,[9] plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a).  For the purposes of its Motion, Biomoda has calculated its compensatory damages as the difference between the value of its shares unlawfully transferred pursuant to the Defendants' scheme and the market value at the time of the unlawful transfer, see NMSA 1978, § 58-13B-40E (2006); Naranjo v. Paull, 111 N.M. 165, 174, 803 P.2d 254, 263 (Ct. App. 1990), plus the $35,000.00 misappropriated from Biomoda's bank account. Biomoda's damage calculation for purposes of this motion does not include an pre-judgment interest component.  See Sec. Pac. Fin. Servs., Inc. v. Signified Corp., 125 N.M. at 44, 956 P.2d at 843 ("The measure of damages for conversion is the value of the property at the time of conversion plus interest."  (citing Woods v. Collins, 87 N.M. 370, 371, 533 P.2d 759, 760 (Ct. App. 1975))).

A. Robins disputes Biomoda's damages calculations regarding the unlawful transfer of shares.  While the Court takes the facts alleged in the FAC as true, Biomoda relies on some facts that

---

[9] The figures upon which Biomoda bases its calculations sum to $694,307.34.  The Court calculates the compensatory damages Biomoda has demonstrated as matter of law from the figures in the FAC, which the Court takes as true, and the undisputed facts.  See United States v. Craighead, 176 F. App'x at 924-25 (stating a court takes the facts in a complaint as true after default judgment is entered).

are outside of the FAC.  Where A. Robins disputes those facts in his verified Response, which the Court treats as an affidavit, A. Robins creates a genuine question of material fact as to the damages Biomoda is due.[10]  To the extent Biomoda's damages calculations are based on facts contained in the FAC, the Court treats those facts as true.  In United States v. Craighead, the Tenth Circuit addressed a defendant's argument that a plaintiff must prove damages after the entry of a default judgment:

> Mr. Craighead argues in his reply brief that "[e]ven in a default judgment, damages must be proved."  As support for his argument he cites to American Red Cross v. Community Blood Center Of The Ozarks, 257 F.3d 859 (8th Cir. 2001).  In that case the Eighth Circuit held that "when a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proven in a supplemental hearing or proceeding."  Id. at 864 (quotation omitted).  The government, however, is correct in its concise and well-reasoned brief, where it notes that the claim for damages in this case was not indefinite or uncertain.  Instead, once the facts regarding Mr. Craighead's liability on the notes were taken as true, all the court was required to do was calculate the amounts owed on the promissory notes and the interest.  "'If defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing.'"  Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688 (3d ed.1998).

United States v. Craighead, 176 F. App'x at 925 (citation to the record omitted)(emphasis added).

By the same means, to the extent the facts underlying Biomoda's damages claims which are stated in the FAC state a "claim . . . for a sum certain or a sum that can be made certain by computation,"

---

[10] For the Court to treat the assertions in A. Robins' Response as an affidavit, his contentions "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P 56(c).  Because the Court has entered default holding A. Robins liable for participating in a conspiracy that involved the sales of Biomoda's shares, it is reasonable to infer that A. Robins had personal knowledge of the amount the Defendants received for the transfer of the shares.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

the Court takes those facts as established beyond dispute.  For such facts, "the time has passed for [A. Robins] to claim that the facts were other than those alleged in the complaint."  176 F. App'x at 925.

A.   **A. ROBINS HAS ESTABLISHED A GENUINE FACTUAL DISPUTE WHETHER BIOMODA IS DUE $659,307.34.00 IN COMPENSATORY DAMAGES FOR THE DEFENDANTS' VIOLATIONS OF THE FEDERAL AND NEW MEXICO SECURITIES LAWS.**

Biomoda founds its damages claims on four sets of factual allegations.  The first three involved the transfer of shares of stock below the market price and the fourth is that L. Robins wrongfully took $35,000.00 from Biomoda's bank account.  For the shares, Biomoda calculates its damages by taking the difference between the value Biomoda alleged it received for the transfer of the shares and the market value.  Biomoda's damage calculation does not attempt to account for the harm to the market value of Biomoda's shares or for the harm to Biomoda's ability to borrow at favorable rates, resulting from the "flooding" of the market with Biomoda shares that the misrepresentation of the status of the SB-2 offering caused.  Cousins Aff. ¶ 9, at 4; Motion ¶ 8, at 3-4.  Biomoda calculates that, in sum, it received $186,666.66 for the transfer of 2,481,260 shares of its stock with a market value of $845,974.00, yielding damages of $659,307.34.  See Cousins Aff. ¶¶ 4-8, at 2-3.  A. Robins contends that Biomoda received "well in excess of $700,000 cash from the sale of all the shares" for which Biomoda seeks damages in its Motion.  Response ¶ 8(c), at 3.[11] A careful review of Biomoda's claims demonstrates that the facts in the FAC do not establish the value of the shares for which Biomoda seeks damages, and A. Robins has established a genuine

---

[11] A. Robins offers a number of arguments based on the merits of Biomoda underlying claims.  Arguments that rely on controverting facts in the FAC, however, are unavailing because the Court has entered Default Judgment, and denies what it construes to be A. Robins' rule 60(b)(6) motion.

question of material fact whether the market value on which Biomoda relies accurately reflects the value of the stock. Moreover, the FAC does not establish what amount Biomoda received for two sets of shares, and Biomoda relies on evidence outside of the FAC to establish how much it received. A. Robins disputes the amount Biomoda contends it received, establishing a genuine factual dispute.

The first set of factual allegations on which Biomoda bases its damages calculation is that the Defendants wrongfully caused 1,768,000 shares of its unrestricted stock to be issued for little or no consideration to Biomoda. See FAC ¶ 17, at 5-6, ¶¶ 21-22, at 7; Cousins Aff. ¶ 4, at 2. These transfers allegedly had the effect of driving the market value of Biomoda shares sharply downward. See FAC ¶ 23, at 7. Biomoda contends that, in exchange for the 1,768,000, it was paid a total of $76,666.66. See Cousins Aff. ¶ 4, at 2; Motion ¶ 8, at 3. Had Biomoda received market price for those shares at the time they were issued, Biomoda alleges, it would have received $362,860.00. See Cousins Aff. ¶ 4, at 2. Biomoda contends that the damage caused by the inadequate consideration received for the fraudulently issued shares was therefore $286,193.00. See Cousins Aff. ¶ 4, at 2; Motion ¶ 8, at 3. The FAC states the Defendants unlawfully transferred the shares, but does not state what compensation Biomoda received for the shares. See FAC ¶ 17, at 6 ("[L.] Robins caused the transfer agent to issue approximately 1.768 million shares, which [L.] Robins caused to be sold or otherwise distributed."). A. Robins contends that Biomoda received more than $76,666.66 for the shares. See Response ¶ 8(c), at 3 (alleging that Biomoda received "well in excess of $700,000 cash from the sale of all the shares" for which Biomoda seeks damages in its Motion). Consequently, the Court concludes a genuine dispute exists about what amount Biomoda received in exchange for the 1,768,000 shares.

Biomoda's also contends that its business records demonstrate that, on March 3, 2005, BIT

received 100,000 unrestricted shares of Biomoda stock, but paid no consideration for those shares. See Cousins Aff. ¶ 5, at 2; Motion ¶ 9, at 4.  On the date the shares were issued to BIT, Biomoda contends its shares were worth $2.50 per share.  See Cousins Aff. ¶ 5, at 2; Motion ¶ 9, at 4.  The difference between the value of the shares issued to BIT and the consideration Biomoda contends it received was $250,000.00.  See Cousins Aff. ¶ 5, at 2; Motion ¶ 9, at 4.  The FAC did not reference these shares or the amount Biomoda received for them, and A. Robins disputes the amount Biomoda received for these shares.  See Response ¶ 8(c), at 3 (alleging that Biomoda received "well in excess of $700,000 cash from the sale of all the shares" for which Biomoda seeks damages in its Motion).  Consequently, the Court again finds that there is a genuine question of material facts how much Biomoda received for the 100,000 shares.[12]

Finally, Biomoda contends that its business records demonstrate that, in May and June of 2007, BIT sold 613,260 unrestricted shares of Biomoda stock to Hope Capital, Inc.  See Cousins Aff. ¶ 6, at 3; FAC ¶ 25, at 11; Motion ¶ 10, at 4.  Biomoda asserts that BIT had obtained these shares from L. Robins, nominally acting on Biomoda's behalf, for no consideration.  See Cousins Aff. ¶ 6, at 3; Motion ¶ 10, at 4.  Biomoda, according to it, received $110,000.00 in payment for

---

[12] At the November 12, 2010 hearing, A. Robins argued that L. Robins and Cousins were each given 490,000 shares of Biomoda stock in 2002 as part of the salvage of Biomoda, and that the 100,000 shares issued to BIT came from the shares L. Robins received.  A. Robins asked the Court to take judicial notice of SEC records establishing this fact.  The Court may be able to take judicial notice of the filing of the documents and their contents, but could not take judicial notice of the facts stated in the documents, because the statements are not beyond reasonable dispute.  See Fed. R. Evid. 201(b), (c)("A court may take judicial notice, whether requested or not," of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").  The Court need not address any hearsay issues, which might be addressed at any trial if A. Robins introduces evidence about these documents.  In any case, because the Court concludes that A. Robins has established a factual dispute without taking notice of the SEC records, it need not take notice of the records, or, at this time, address any hearsay issues.

these shares, but their market value at the time of the sale to Hope was $233,114.00.  <u>See</u> Cousins Aff. ¶ 6, at 3.  The FAC supports Biomoda's contention regarding the amount it received for the shares.  <u>See</u> FAC ¶ 25, at 11 ("Over 600,000 of the subject shares were transferred by Leslie Robins to Hope Capital for approximately $110,000 in May and June 2007, effectively at approximately $0.18 per share."); Motion ¶ 10, at 4.  The FAC does not, however, state the value of the shares at the time of the transfer.

Biomoda calculates that the difference between the value of the 613,260 shares and the consideration Biomoda received was $123,114.00 based on the market value of its shares on the days the shares were transferred.  <u>See</u> Cousins Aff. ¶ 6, at 3; Motion ¶ 10, at 4.  A. Robins contends that "the shares of BMOD were worthless as to any cash value and without any value at the time cited by Cousins in his affidavit since they were all restricted shares carrying a legend that it was illegal for them to be sold or transferred."  Response at ¶ 16, at 5.  A. Robins argues that the "[s]tock sold was unregistered stock carrying a legend, making it illegal to transfer or sell them and the value at price per share on date issued was for freely trading shares in an open market with the pressures of buy and sell on a daily basis."  Response ¶ 25, at 8.  A. Robins' contention that the shares were restricted is unavailing, however, because the FAC states that all of the shares in question were unrestricted.  <u>See, e.g.</u>, FAC ¶ 16, at 5 ("Leslie Robins flooded the market with Biomoda stock in the period from January 2007 through July 2007, putting at least 3,610,000 shares of <u>facially unrestricted</u> stock in circulation, by various means." (emphasis added)); <u>id.</u> at ¶ 23, at 7 ("The effect of improperly distributing millions of shares of <u>facially unrestricted</u> Biomoda stock for no money, or at prices well below market, to persons or groups which simply resold the stock, was to drive down the price of Biomoda's stock, and to impair Biomoda's capacity to raise funds."  (emphasis

added)).

The Court takes the allegations in the FAC that the shares were unrestricted as true.  "[W]hen a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proven in a supplemental hearing or proceeding."  United States v. Craighead, 176 F. App'x at 925 (quoting Am. Red Cross v. Cmty. Blood Ctr. Of The Ozarks, 257 F.3d at 864 (affirming a district court's rejection of a litigant's damages expert's valuation of damages from business torts, in part for failing to "adequately separate out alleged damages due to legitimate competition").  As the United States Court of Appeals for the Seventh Circuit explained in Black v. Lane, 22 F.3d 1395 (7th Cir. 1994), after default judgment was entered:

> [T]he district court . . . was obligated to accept as true all facts alleged in Black's complaint.  All of Black's factual allegations are treated as true because a default judgment was entered against the defendants.  When a default judgment is entered, facts alleged in the complaint may not be contested.  See Thomson v. Wooster, 114 U.S. 104 (1885); see also Fed. R. Civ. P. 8(d)("Averments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading.").  Furthermore, "[a]s a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint."  United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989).

22 F.3d at 1399.  Because the Court accepts as true all well-pleaded facts in the FAC except those "relating to the amount of damages, which must be proven in a supplemental hearing or proceeding," United States v. Craighead, 176 F. App'x at 925 (citation omitted), the Court must determine what facts "relat[e] to the amount of damages."  Read broadly, "related to" could mean every fact in a complaint; read narrowly, the term could mean only a sum named in the prayer for relief.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997)(rejecting a district court's entry of default judgment for $51,753.86, because

"the District Court simply accepted at face value Transatlantic's statement in its complaint that it 'ha[d] sustained damages as nearly as can now be estimated in the amount of $45,976.83,' and then added interest and costs to arrive at the $51,753.86 figure"); Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)("[A] default judgment may be lawfully entered only 'according to what is proper to be decreed upon the statements of the bill, assumed to be true,' and not 'as of course according to the prayer of the bill.'"  (quoting Thomson v. Wooster, 114 U.S. at 113).  The Court need not attempt to resolve completely the contours of what facts relate to damages, because it is enough for the Court in this case to construe "facts relating to the amount of damages" not to include, at a minimum, facts related to establishing liability.  See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008)(rejecting a litigant's argument that a court made no specific finding regarding willfulness in support of imposing attorney's fees, stating: "[A]ll factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement of Andrew's trademarks.  This default sufficiently establishes Andrew's entitlement to attorneys' fees under the Lanham Act."  (citing Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1023 (9th Cir. 2002)("[B]y entry of default judgment, the district court determined, as alleged in RIO's complaint, that RII's acts were committed knowingly, maliciously, and oppressively, and with an intent to . . . injure RIO.")(alteration in original))).  Biomoda's contention that the Defendants issued unrestricted shares supports its allegations that the Defendants are liable for manipulating the market price for shares of Biomoda's unrestricted stock.  See FAC Count II, ¶ 64, at 20 ("The issuance and sale of Biomoda stock caused by Leslie Robins and John Kearns violated the Securities Act and the Exchange Act.")  Issuing unrestricted shares would not necessarily -- or at least not as directly -- influence the market price for unrestricted shares.  Because

Biomoda's contention that Defendants transferred unrestricted shares supports establishing the Defendants' liability for its claims of market manipulation, the Court takes the contention as established, and the fact "may not be contested."  Black v. Lane, 22 F.3d at 1399.

A. Robins further disputes whether the stock market price, which reflects the value of the "free trading shares in the open market in extremely limited numbers," is indicative of the value of the shares.  Motion ¶ 25, at 8.  The FAC does not state the value of the shares, so the Court need not accept as true anything in the FAC as to the market value of the stock.[13]  The normal rules for motions for summary judgment apply.  Biomoda relies -- instead of on the FAC -- on the market value based on the market share prices reported by www.siliconinvestor.com, a publicly available website which compiles historical data on stock prices.  The shares were traded on Over the Counter Bulletin Board, which "does not have any listing requirements."  OTC Buletin Board, Issuer Information, http://www.otcbb.com/issuerinformation/issuerinfo.stm (last visited December 13, 2010).  The Court finds no authority, and Biomoda does not points it to any, establishing that stock market prices, much less Over the Counter Bulletin Board stock prices, are certain and definite facts which can be used after default judgment to enter a judgment for damages without any motion for summary judgment, hearing, or trial.  On the other hand, the stock quotation is evidence here -- outside of the pleading -- and if A. Robins does not create a genuine issue of material fact as to the

_____

[13] Because there are no stock prices in the FAC, the Court need not decide whether it would treat a market quotation for stock in a complaint the same as "a sum certain or a sum that c[ould] be made certain by computation."  176 F. App'x at 925 (quoting A. Wright, A. Miller & M. Kane, supra § 2688).  On the other hand, In comparison to the promissory note the Tenth Circuit addressed in United States v. Craighead, which was "for a sum certain or a sum that c[ould] be made certain by computation," id., the value of the thinly traded OTC shares may be "indefinite or uncertain," id., precluding an entry of a money judgment with allowing the defendant some opportunity to dispute the market quotation.

quote, the Court can declare that fact admitted.  A. Robins casts doubt upon the value of Biomoda's shares, arguing that "the so-called value at price per share on date issued was for free trading shares in the open market in extremely limited numbers[;] [m]any days, Biomoda shares never traded even a single share and if anyone had placed an order to sell 10,000 or 100,000 shares, the market price would have plummeted to zero."  Response ¶ 25, at 8.  Consequently, drawing all inferences from the evidence in the record in A. Robins' favor, the Court concludes that A. Robins has established a genuine question of material fact whether the difference between the market value of the 613,260 shares and the amount Biomoda received for the shares was $123,114.00.

### B.   BIOMODA HAS ESTABLISHED $35,000.00 IN COMPENSATORY DAMAGES, AS A MATTER OF LAW, FOR THE DEFENDANTS' CONVERSION OF FUNDS FROM BIOMODA'S BANK ACCOUNT.

Biomoda also seeks compensation for the $35,000.00 that L. Robins misappropriated from Biomoda's bank account.  See Cousins Aff. ¶ 7, at 3; Motion ¶ 11, at 4 (setting forth this fact). Robins does not appear to dispute that L. Robins misappropriated $35,000.00 from Biomoda's bank account.  See Response at 8 (not controverting this fact).  Moreover, the FAC states that L. Robins "removed $35,000.00 from Biomoda's account without the permission or authorization of Biomoda."  FAC ¶ 46, at 15.  See "The measure of damages for conversion is the value of the property at the time of conversion plus interest."  Security Pac. Fin. Servs., Inc. v. Signified Corp., 125 N.M. at 44, 956 P.2d at 843 (citing Woods v. Collins, 87 N.M. 370, 371, 533 P.2d at 760). Because Biomoda does not seek pre-judgment interest, the Court concludes that Biomoda has established compensatory damages of $35,000.00 for L. Robins' conversion of its funds.

Moreover, the FAC states that the Defendants unlawfully transferred Biomoda stock and misappropriated Biomoda' funds as part of a civil conspiracy, in which A. Robins participated.  See

FAC ¶ 73, at 21 ("Leslie Robins, John Kearns, and Alvin Robins conspired to commit the wrongful acts against Biomoda and ADOT described in this Complaint, and carried out these wrongful acts pursuant to the conspiracy.").  Under New Mexico law, co-conspirators are jointly and severally liable for their own tortious conduct and for the tortious conduct of their co-conspirators.  See Allied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1206.  In a civil conspiracy, damages are measured by the effect of the unlawful conduct committed by each conspirator, taken as a whole.  See Allied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1206.  "[A] claim of civil conspiracy is a claim seeking to impute liability from one co-conspirator to another."  Seeds v. Lucero, 137 N.M. at 594, 113 P.3d at 864.  "The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members."  Ettenson v. Burke, 130 N.M. at 73, 17 P.3d at 445.  The Court thus concludes that A. Robins is jointly and severally liable for the $35,000.00 of compensatory damages Biomoda has established as a matter of law.  Biomoda is also entitled, pursuant to 28 U.S.C. § 1961(a), to post-judgment interest.

Because the Court finds that Biomoda has established no genuine question of material fact exists whether A. Robins is liable for the $35,000.00 in compensatory damages, it awards Biomoda summary judgment against him for that amount.[14]   See, e.g., Trustees of Const. Industry and

---

[14] A. Robins argues that he is indemnified under Section 5.01 of Biomoda's By-Laws.  In the answer attached to A. Robins' Response, he alleges that the indemnification applies to Biomoda's claims against him, and that Biomoda is in breach of its contract with him by seeking damages.  A. Robins has not, however, filed his answer, and any claims he may have against Biomoda are not before the Court.  If he is indemnified, which is not a question before the Court, and a matter on which the Court does not opine, indemnification does not reduce damages for which he is liable, but may allow A. Robins to recover any award from Biomoda.  See Nelson v. ITT Hartford Fire Ins. Co., 216 F.3d 1088, at *2 n.2 (10th Cir. 2000)("An action to enforce indemnity from liability accrues when the event for which indemnity is due occurs, while a cause of action for indemnity from loss does not arise until the loss is paid." (quoting  Travelers Ins. Co. v. L.V. French Truck Serv., Inc., 770 P.2d 551, 555 (Okla. 1988))).

Laborers Health and Welfare Trust v. Hartford Fire Ins. Co., 578 F.3d at 1127, 1130 (affirming in part district court's award of damages in summary judgment based on default judgment); J.R. Simplot v. Chevron Pipeline Co., 563 F.3d at 1117 (recognizing that summary judgment on any and all aspects of a party's claim, including damages, is proper if there are no genuine issues of material fact); Mid-Continent Cas. Co. v. JHP Dev., 557 F.3d at 211, 218 (affirming district court's granting summary judgment awarding damages based on finding "default judgment in the underlying suit was binding" on the plaintiff); Ruiz v. Blentech Corp., 89 F.3d at 323 (same); Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1202-03.

## VI.   THE COURT WILL ENTER JUDGMENT ONLY AGAINST A. ROBINS.

The Court's Default Judgment held Kearns and A. Robins liable for all of the illegal conduct undertaken in furtherance of the Defendants' conspiracy.  During the pendency of Biomoda's Motion, Kearns passed away.  Biomoda decided not to substitute his estate or another party, see Fed. R. Civ. P. 25(a)(1), and Kearns was terminated from the case on June 10, 2010.  Consequently, the Court denies Biomoda's Motion to the extent it still seeks damages against Kerns.

**IT IS ORDERED** that Plaintiff Biomoda, Inc.'s Motion for Summary Judgment on Compensatory Damages Against Defendants John W. Kearns and Alvin D. Robins is granted in part and denied in part.  The Court grants partial summary judgment for compensatory damages in the amount of $35,000.00 and post-judgment interest at the statutory rate, pursuant to 28 U.S.C. § 1961(a), against Defendant Alvin D. Robins.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Phil Krehbiel
Albuquerque, New Mexico

    *Attorney for Plaintiff Advanced Optics Electronics, Inc.*

Spencer Reid
Thomas C. Bird
Christina Muscarella Gooch
Keleher & McLeod
Albuquerque, New Mexico

    *Attorneys for Plaintiff and Counter-Defendant Biomoda, Inc.*

Sam Bregman
Eric Loman
The Bregman Law Firm, PC
Albuquerque, New Mexico

    *Attorneys for Defendant and Counterclaimant Leslie S. Robins*

John W. Kearns
Coral Gables, Florida

    *Defendant pro se*

Alvin D. Robins
La Porte, Texas

    *Defendant pro se*