# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ADVANCED OPTICS ELECTRONICS, INC.,
and BIOMODA, INC.,

      Plaintiffs,

v.                                           No. CIV 07-0855 JB/GBW

LESLIE S. ROBINS, ALVIN D. ROBINS,
and JOHN W. KEARNS,

      Defendants.

      -- and --

LESLIE S. ROBINS,

      Counterclaimant,

vs.

BIOMODA, INC.,

      Counter-Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the February 24, 2011 Letter From Judge
Browning to Plaintiff Biomoda, Inc.'s Counsel and Defendant Alvin D. Robins, filed February 24,
2011 (Doc. 169)("Letter").  The Court held a hearing on March 9, 2011.  The primary issue is
whether Judge Browning should recuse himself because of his relationship with Wells Fargo Bank.
Because the Code of Conduct for United States Judges does not require Judge Browning to recuse
himself, and because he believes that he can continue to be fair and impartial, the Court will deny
any request that he recuse himself.

## FACTUAL BACKGROUND

Chelsea Vasquez of Wells Fargo Bank testified at the Court's January 22, 2008 hearing on Plaintiff Biomoda, Inc.'s application for a preliminary injunction.  She testified in regard to $35,000.00 Defendant Leslie S. Robins allegedly misappropriated from Biomoda's bank account and deposited the funds into PZLTech's account at Wells Fargo.  Vasquez testified as follows:

DIRECT EXAMINATION BY MR. REID:

Q. Ms. Vasquez, how are you employed?

A. Excuse me?

Q. How are you employed?

A. How am I employed?

Q. Yes.

A. I am currently a service manager for Wells Fargo Bank.

Q. Now, you've been here for part of the testimony we've had here today?

A. Yes.

Q. I'll just -- Your Honor, in an attempt to accelerate it, I'm just going to lay some foundation, some parameters here quickly.  It's essentially undisputed that Mr. Robins caused $35,000 to transfer from a Biomoda account to a PZLTech account at Wells Fargo.  Do you have any familiarity with that transaction?

A. With the specifics of account names, account -- I couldn't give specifics right now.  Unfortunately, we were served with the paperwork too late to get that together.

Q. Okay. Do you recall Mr. Robins bringing in a significant cashier's check for a deposit into a PZLTech account?

A. I remember him bringing in a cashier's check for deposit, but the specifics of who it was made out to I cannot recall without looking at it.

MR. BREGMAN: Can I see a copy of what you have?

MR. REID: It's Exhibit 7. I believe you already have a copy.  It's been admitted.

BY MR. REID:

Q. Does that refresh your recollection at all?

A. Again, I can not be absolutely a hundred percent positive this is what I saw, but I do recall seeing a large cashier's check come into my branch from Mr. Robins.

Q. By Mr. Robins? You recall him bringing that in?

A. Yes.

Q. And what did you do about that cashier's check?

A. Well, normally when we get -- when we do get the large cashier's checks in, we normally will call the issuing bank just to ensure it was issued, everything was okay with it. So we do remember placing the phone call and making sure that everything was okay.

Q. All right. Did Mr. Robins subsequently come back into the bank to take the money out of -- whatever the exact dollar amount was -- back out of the account?

A. I do remember assisting Mr. Robins with a cash withdrawal at a later date, yes.

Q. Why would you happen to remember a cash withdrawal?

A. Because my tellers do not have high limits, so when there is a transaction that involves cash, a lot of times management has to get involved with it and approve the transaction and assist the teller.

Q. Do you recall how much was taken in cash?

A. I don't recall the exact amount, but it would have to have been a substantial amount of money.  I would say over $10,000 for me to get involved with it.

Q. And was whatever the dollar amount was actually counted out in cash and given to Mr. Robins?

A. Yes.

Q. Thank you.

THE COURT: Mr. Reid.

Mr. Bregman, do you have cross-examination of Ms. Vasquez?

CROSS-EXAMINATION BY MR. BREGMAN:

Q. Just to reiterate, you don't know what accounts we're talking about as far as the deposits in or cash out, right?

A. Right offhand, without looking at documents, transactions, no.

Q. Okay.

MR. BREGMAN: I don't have anything else.  Thank you, Your Honor.

THE COURT: Mr. Bregman.  Mr. Reid, anything further?  Did you have something further, Mr. Boyd?

MR. BOYD: No. I was just going to say no questions.

Transcript of Hearing at 131:5-134:6 (taken January 22, 2008).

## PROCEDURAL BACKGROUND

On February 24, 2011, the Court sent a letter to the parties stating:

> I want to bring one matter to your attention.  I have, with my law clerks, reviewed the Judicial Code of Conduct and do not believe this matter requires me to recuse myself.  I want, however, everyone to be fully informed about, and fully comfortable with, my participation in the case.

> I have educational savings accounts for two of my children at A.G. Edwards, and a while back, had a third.  I also established Roth IRA's for my children at A.G. Edwards, and the accounts remain there.  The accounts contain money and investments in mutual funds.  It is my understanding that Wachovia and now Wells Fargo has taken over A.G. Edwards.  I also have a checking account and my mortgage at Wells Fargo.  I do not own any stock in Wachovia or in Wells Fargo.

Letter at 1.  The Court sends these notices in the event that the parties may have questions about Judge Browning's connections to persons involved in the case; it helps the Court identify individuals with whom it might have a relationship.  Judge Browning does not know Vasquez, would not recognize her, and does not believe he has ever met her.  The letter concluded: "I believe that I can

-4-

continue to be fair and impartial.  If anyone, however, has any questions about the above, please let my Courtroom Deputy Clerk, K'Aun Wild, know, and we can perhaps have a conference.  I have instructed Mrs. Wild not to tell me who may call." Letter at 2.

One of the parties notified the Courtroom Deputy Clerk that it or he wished to ask questions about Judge Browning's relationship with Wells Fargo.  At the March 9, 2011 hearing, A. Robins expressed concerns about Judge Browning's conducting business with Wells Fargo, because Wells Fargo has been unwilling to provide him with information relating to this case:

> Wells Fargo has been very -- has demonstrated animosity to all the inquiries that I've made since that time of that testimony and refused to cooperate without anything short of a court order to explain why they gave information to somebody who was not a signatory on the account without a Court order.  That's one item. Couple that with the fact that in 1997 I litigated with Wells Fargo Bank and prevailed.  It was not a major case, but it was significant, to me certainly, and at the same time I believe that Mr. Cousins' testimony about Wells Fargo was relied on by the Court, because, although I wasn't there, counsel for Advanced Optics . . . who had appeared for Advanced Optics and the counsel for Leslie Robins didn't, you know, challenge him as to that aspect of his testimony to elicit how and why Wells Fargo was so cooperative without what usually is the requirements.
>
> I believe, based on what Your Honor's candid disclosure that there may be a subconscious or some concern that -- something that rises to a level of concern for me for Wells Fargo to be in a business relationship with you, even though it's -- well, in a business relationship with you, with the Court.  I'm not saying that's the proper way to do it -- and as such I believe it's appropriate at this point -- there were two other times that Your Honor had brought up a question of recusal for issues and both times I remained silent because I had no issue with them.  I do now have an issue with these -- with this and it's personal to me and it relates to me and relates to this case.

Transcript of Hearing at 3:7-4:11 (taken March 8, 2011)(A. Robins).[1]  A. Robins did not, however, ask questions about Judge Browning's business with, or relationship and contacts with individuals

---

[1] The Court's citations to the transcript refer to the court reporter's original, unedited version. The final transcript may contain slightly different page and/or line numbers.

working at, Wells Fargo.  A. Robins' concerns appear to be with obtaining discovery to address the merits of this case.[2]

The rest of the ten minute hearing was devoted mostly, if not exclusively, to raising new arguments and pointing to facts to support his motion to reconsider.  The next day, on March 9, 2011, A. Robins sent a two-page letter to the Court via facsimile transmission discussing his reference at the March 8, 2011 hearing "to numerous admissions made under oath by John Cousins, President of Biomoda."  Facsimile Transmission from A. Robins to Judge Browning at 1 (dated March 9, 2011), filed March 9, 2011 (Doc. 172).  The very last sentence of the letter states in part: "I respectfully call upon the Court to recuse as discussed in the Court's letter of February 24, 2011." A. Robins Letter at 2.  The bulk of the letter is dedicated to providing detail about the conversion of $35,000.00 from Biomoda.

## LAW REGARDING RECUSAL

An important feature of the judicial system is that judges are fair and impartial arbiters of the disputes before them.  Under 28 U.S.C. § 455: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Id. § 455(a).  Certain listed circumstances also require a judge to recuse himself:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

---

[2] The Court has addressed these requests in its Memorandum Opinion and Order, filed December 16, 2010 (Doc. 158), and will not readdress them here.

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
> (ii) Is acting as a lawyer in the proceeding;
> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

Id. § 455(b).

The United States Court of Appeals for the Tenth Circuit has emphasized, however, that "a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). Thus, the recusal "statute must not be so broadly construed that it becomes . . . presumptive . . ." Id. (internal quotations omitted). Moreover, the recusal statute "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993).

## ANALYSIS

Judge Browning is not required to, and will not, recuse himself from this case for having accounts and mutual funds with Wells Fargo and its subsidiaries. The Code of Conduct for United States Judges provides:

> A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which . . . the judge knows that the judge, individually or as a fiduciary, . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding . . . .

Code of Conduct for United States Judges § (C)(1)(c), at 7.  The Code of Conduct for United States Judges further provides:

> For the purposes of this section . . . "financial interest" means ownership of a legal or equitable interest, however small, . . . except that ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund; . . . a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest . . . ."

Id. § (C)(3)(c)(i), (iii), at 8.  "Under Canon 3C(3)(c)(iii), the proprietary interest of such an account or policy holder is considered to be a disqualifying financial interest in the bank or insurance company only if the outcome of the proceeding could substantially affect the value of the interest."  Advisory Opinion No. 106, at 2.

In published ethics advisory opinions, the United States Courts Administrative Office provided guidance on whether a judge's business relationship requires recusal:

> For example, we have said that a judge's impartiality cannot reasonably be questioned when a judge sits on a case involving an insurance company of which the judge is a policy holder, so long as the case will not substantially affect the judge's interest in the policy.  A judge who is a bondholder and periodically receives interest payments on the bonds may hear cases involving the bond issuer so long as the case does not involve the bonds held by the judge.  Maintaining a bank account does not require a judge to recuse from cases in which the bank is a party, nor does owing money to a bank require recusal, absent special circumstances such as unusually favorable terms or a default.  A judge who is a utility customer may hear cases involving the utility.  A judge who receives a military pension may sit on cases in which the military is a party.

Advisory Opinion No. 94, at 3 (citing Advisory Opinion No. 75)(emphasis added).

Wells Fargo is not a party to this matter.  The Court is unaware of any interest Wells Fargo has in the outcome of this case, and therefore is unaware of any way in which "the outcome of the proceeding could substantially affect the value of" Judge Browning's accounts or mutual funds. Code of Conduct for United States Judges § (C)(3)(c)(iii), at 8.  Judge Browning does not participate in the management of his Wells Fargo mutual finds.  See id. § (C)(3)(c)(i), at 8.  Judge Browning does not have any stake in Wells Fargo that is implicated by this case.  Moreover, the Court does not believe that the business Judge Browning conducts with Wells Fargo could reasonably lead anyone to question his impartiality in this matter.  See id. § (C)(1)(c), at 7.  The Court, therefore, does not believe that recusal is mandated, or, at this late stage, wise.

It appears that A. Robins primarily used the hearing and his letter to raise fact issues related to his motion to reconsider.  His concern about Judge Browning's business relationships with Wells Fargo seems secondary to his concern about the facts of this case.  A. Robins appears more interested in presenting evidence than the Court's impartiality.  The Court will address his substantive arguments and new fact arguments in its Memorandum Opinion and Order addressing his motion to reconsider.

The Court believes it is not necessary to recuse and that it would be inconsistent with its duties as a Court for Judge Browning to recuse.  See Nichols v. Alley, 71 F.3d at 351 ("[A] judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require.").  This case is an old case, and the Court has tried to be as fair and just as possible.  The Court does not believe its impartiality can be reasonably questioned.

**IT IS ORDERED** that Judge Browning shall not recuse himself from this case.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Phil Krehbiel
Albuquerque, New Mexico

    *Attorney for Plaintiff Advanced Optics Electronics, Inc.*

Spencer Reid
Thomas C. Bird
Christina Muscarella Gooch
Keleher & McLeod
Albuquerque, New Mexico

    *Attorneys for Plaintiff and Counter-Defendant Biomoda, Inc.*

Sam Bregman
Eric Loman
The Bregman Law Firm, PC
Albuquerque, New Mexico

    *Attorneys for Defendant and Counterclaimant Leslie S. Robins*

John W. Kearns
Coral Gables, Florida

    *Defendant pro se*

Alvin D. Robins
La Porte, Texas

    *Defendant pro se*