## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ADVANCED OPTICS ELECTRONICS, INC.,
and BIOMODA, INC.,

      Plaintiffs,

v.                                                                      No. CIV 07-0855 JB/GBW

LESLIE S. ROBINS, ALVIN D. ROBINS,
and JOHN W. KEARNS,

      Defendants.

      -- and –

LESLIE S. ROBINS,

      Counterclaimant,

vs.

BIOMODA, INC.,

      Counter-Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Reconsider and Set

Aside Partial Summary Judgment, filed January 18, 2011 (Doc. 162)("Motion").  The primary issue

is whether the Court should reconsider its Memorandum Opinion and Order, filed December 16,

2010 (Doc. 158)("MOO").  Because Defendant Alvin Robins seeks to revisit issues that the Court

has previously addressed, and because he presents no new evidence or legal authority, the Court

denies A. Robins' Motion.

## FACTUAL BACKGROUND

A. Robins served without compensation as a representative of Plaintiff Biomoda, Inc., on the

express request and with the approval of Biomoda's president, John Cousins.  The First Amended

Complaint states that the Defendants Leslie S. Robins, Alvin D. Robins, and John W. Kearns

flooded the market with Biomoda shares through: (i) fraudulent legal opinions that Kearns authored,

which misrepresented the status of Biomoda's terminated SB-2 offering; and (ii) through the sale

of Biomoda's shares that Advanced Optics Electronics, Inc. ("ADOT") transferred at least in part

through Beaver Information Technology ("BIT"), a "front" registered to A. Robins address.  First

Amended Complaint for Common Law Fraud, Violation of Federal and New Mexico Securities

Laws, Conversion, Breach of Fiduciary Duty, and Racketeering ¶¶ 16-23, 35-37, at 5-7, filed

October 16, 2008 (Doc. 92)("FAC").  In the process of flooding the market with Biomoda shares,

the Defendants allegedly caused the transfer of millions of unrestricted shares of Biomoda stock for

no consideration or for prices well below market.  See FAC ¶¶ 17-23, 35-37, at 5-7.  The FAC also

identifies Defendant Leslie Robins' alleged misappropriation of Biomoda's funds and property,

including its stock.  These alleged misappropriations include $35,000.00 that L. Robins unlawfully

withdrew from Biomoda's bank account.  See Affidavit of John Cousins ¶ 7, at 3, filed November

11, 2009 (Doc. 132-1); FAC ¶ 46, at 15.  The FAC states that all of the unlawful acts committed by

each of the Defendants were undertaken pursuant to the conspiracy in which each of them was a co-

conspirator.  See FAC ¶ 73, at 21-22.

## PROCEDURAL BACKGROUND

On August 29, 2007, Biomoda filed its verified Complaint for Common Law Fraud,

Violation of Federal and New Mexico Securities Laws, Conversion, Breach of Fiduciary Duty, and

Racketeering.  See Doc. 1.  The Complaint named three Defendants: L. Robins, A. Robins, and

Kearns.  On October 9, 2007, L. Robins filed Defendant Leslie S. Robins' Answer to Biomoda Inc.'s

Complaint and Counterclaim.  See Doc. 14.  On October 16, 2008, Biomoda filed its FAC.  The

FAC contains counts against A. Robins for conversion and civil conspiracy.  See FAC Counts III-

IV, at 21-22.  The FAC states that L. Robins "removed $35,000 from Biomoda's account without

the permission or authorization of Biomoda."  FAC ¶ 46, at 15.

### 1.    Entry of Default Judgment as to Liability.

Kerns and A. Robins did not file answers to the initial Complaint or to the FAC, and on

October 15, 2008, Biomoda filed a Motion for Default Judgment against them.  See Doc. 91.  Kerns

and A. Robins did not oppose the motion.  The Court entered a default, see Clerk's Entry of Default,

filed December 5, 2008 (Doc. 101), and a Default Judgment on liability against Kerns and A.

Robins.  The Default Judgment imposes liability on Kearns and A. Robins under theories which

include civil conspiracy.  The Court "awarded Judgment against Defendant Alvin D. Robins and

against Defendant John W. Kearns for liability with respect to each count asserted against them in

Plaintiffs' Amended Complaint," and reserved "for subsequent determination by the Court" the

determination of damages to be awarded.  Default Judgment at 1.

### 2.    Discovery Deadline.

The Court set discovery deadlines of October 30, 2009, and November 19, 2009, for

discovery and discovery motions respectively.  See Joint Status Report and Provisional Discovery

Plan at 4, filed December 18, 2008 (Doc. 103); Transcript of Initial Scheduling Conference at 17:16-

18, filed February 20, 2009 (Doc. 116)(Court).  The Court also set deadlines of June 30, 2009 and

August 28, 2009, for the Plaintiffs and for the Defendants, respectively, to identify their expert

witnesses.  See Transcript of Initial Scheduling Conference at 17:18-21 (Court).  A. Robins did not

conduct any discovery and has not disclosed any expert witnesses.

3.       **The Motion for Summary Judgment**.

Following the Court's entry of Default Judgment as to liability against Kearns and A. Robins, on November 25, 2009, Biomoda submitted its Motion for Summary Judgment on Compensatory Damages Against Defendants John W. Kearns and Alvin D. Robins, filed November 25, 2009 (Doc. 132), requesting summary judgment on damages.  Biomoda requested that the Court enter judgment in the amount of $694,316.00, plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a), against A. Robins and Kearns.  Biomoda based its request primarily on seeking compensation for allegedly misappropriated shares and, in part, on the $35,000.00 that L. Robins unlawfully withdrew from Biomoda's bank account as part of the civil conspiracy.

Kearns passed away on May 20, 2009.  See Suggestion of Death, filed December 30, 2009 (Doc. 135). Biomoda decided not to substitute his estate or another party, see Fed. R. Civ. P. 25(a)(1),[1] and the Clerk of the Court terminated Kearns from the case on June 10, 2010.  Biomoda and L. Robins settled their claims, and on July 15, 2009, on joint motion of Biomoda and L. Robins, the Court dismissed with prejudice L. Robins, and all claims by and against him.  See Order Dismissing Certain Claims, Counterclaims, and Leslie Robins, filed July 15, 2009 (Doc. 128).

On July 9, 2010, A. Robins filed his Response by Alvin Robins to Biomoda, Inc.'s Motion

---

[1] Rule 25(a)(1) provides:

If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).

for Summary Judgment on Biomoda. Inc.'s First Amended Complaint.  See Doc. 146 ("Summary Judgment Response").  Appearing pro se, A. Robins opposed Biomoda's motion for summary judgment.  In response to Biomoda's request for compensatory damages, A. Robins disputed both Biomoda's valuation of its shares and the amount of compensation Biomoda received in exchange for the shares.  A. Robins did not controvert the contention that L. Robins unlawfully withdrew $35,000.00 from Biomoda's bank account.  A. Robins advanced a number of arguments, however, directed at the merits of Biomoda's claims.  See Summary Judgment Response ¶¶ 5-7, at 2-3 (asserting a right to indemnification under Biomoda's by-laws, because A. Robins worked to negotiate issues related to Biomoda's patent rights with Los Alamos National Laboratories); Summary Judgment Response ¶ 8(a), at 3 (contesting the adequacy of evidence showing that Beaver Information Technology was connected to or operated by Alvin Robins); Summary Judgment Response ¶ 8(b), at 3 (arguing, despite the FAC's allegations of A. Robins' direct wrongdoing and his participation in a civil conspiracy, that alleged wrongdoings were never alleged to have been done by A. Robins, directly or indirectly); Summary Judgment Response ¶ 19, at 6 (arguing that conspiracy allegations fail because Alvin Robins is the sole remaining defendant); Summary Judgment Response ¶¶ 20-22, at 6-7 (arguing that Biomoda has released Alvin Robins in its settlement with Leslie Robins, without mentioning that the Order implementing the settlement, Doc. 122, specifically reserved the judgment and claims against Alvin Robins); Summary Judgment Response ¶ 25, at 7-8 (arguing that the damages calculations improperly fail to account for significant discounts resulting from restrictive legends on the unregistered shares); Summary Judgment Response ¶ 28, at 9 (arguing that "there is not a single alleged fact that is backed up by any independent corroboration or documentation whatsoever").

On July 29, 2010, Biomoda filed its Reply in Support of Motion for Summary Judgment on Compensatory Damages.  See Doc. 147 ("Reply").  Biomoda argued that A. Robins' Response misapprehended the procedural posture of the case, because it addressed the merits of Biomoda's claims.  Biomoda contended that, pursuant to rules 55 and 60(b) of the Federal Rules of Civil Procedure, A. Robins' arguments addressing the merits of its claims were foreclosed, because the Court entered Default Judgment against A. Robins.  Biomoda asserted that rule 16(b) foreclosed A. Robins' arguments, which suggested a need for additional discovery or expert input, because "[a] schedule may be modified only for good cause and with the judge's consent," Fed. R. Civ. Pro. 16(b)(4), and A. Robins had not shown good cause.  Biomoda further argued that A. Robins' Response was inadequate under rule 56(d)[2] to establish a requirement for additional discovery, because it did not "state, with specificity, what additional discovery is believed necessary." Schaefer v. Antill, 2007 WL 709046, at *10 (D.N.M.)(Browning, J.)(citing Burke v. Utah Transit Auth. and Local 382, 462 F.3d 1253, 1264 (10th Cir. 2006); Chavez v. Perry, 142 F. App'x 325, 334 (10th Cir. 2005)).

### 4.    Hearings.

The Court held a hearing on August 4, 2010.  The day before the hearing, on August 3, 2010, A. Robins sent a facsimile transmission to the Court, which the Court construed as a motion to continue for medical reasons.  See Facsimile Transmission from A. Robins to the Court (dated August 3, 2010), filed August 3, 2010 (Doc. 149).  A. Robins did not appear at the hearing and refused to attend telephonically.  The Court allowed Biomoda to argue in support of its Motion with

---

[2] The December 1, 2010 amendments to the Federal Rule of Civil Procedure changed rule 56(f) to 56(d).  To avoid confusion, the Court will refer to the rules by their post-amendment titles.

the understanding that the Court would not rule on the motion for summary judgment until A. Robins had an opportunity to address Biomoda's arguments, if he so chose. <u>See</u> Memorandum Order and Opinion, filed August 5, 2010 (Doc. 150).

Biomoda argued that it did not have an agreement with A. Robins to allow him to postpone filing his answer. Rather, Biomoda contended that A. Robins wrote to it, asserting such an agreement existed, but that both L. Robins and Whitaker stated that no such argument had been established. Biomoda did not respond to A. Robins' communication and proceeded on the understanding that no agreement existed. Biomoda cited -- in support of its argument that no agreement existed -- A. Robins' failure to bring up the alleged argument in response to Biomoda's motion for default or to the Court's entering default against him. Biomoda reasserted that it engineered its damages calculation for summary judgment and that, if the case proceeded to trial, then Biomoda would seek substantially higher damages.

On August 16, 2010, A. Robins sent a facsimile transmission to the Court asking for an opportunity to argue orally in response to Biomoda's oral argument. <u>See</u> Facsimile Transmission from A. Robins to the Court (dated August 16, 2010), filed August 16, 2010 (Doc. 153). The Court scheduled a hearing on October 6, 2010. On October 6, 2010, A. Robins again sent a facsimile transmission to the Court, which the Court construed as another motion to continue for medical reasons. <u>See</u> Facsimile Transmission from A. Robins to the Court (dated October 6, 2010), filed October 6, 2010 (Doc. 155). The Court granted the motion and continued the hearing until November 12, 2010. <u>See</u> Order, filed October 6, 2010 (Doc. 156).

On November 12, 2010, the Court held a second hearing on Biomoda's Motion. A. Robins disputed Biomoda's damages calculation. He argued that L. Robins and Cousins were each given

490,000 shares of Biomoda stock in 2002 as part of the salvage of Biomoda and that the 100,000 shares given to BIT came from the shares L. Robins received.  A. Robins further contended that, as part of the settlement agreement between Biomoda and L. Robins, in April 2009, L. Robins returned 90,000 of the shares Biomoda alleged were sold for no consideration, which were part of the 1,768,000 shares on which Biomoda based its damages.  A. Robins did not contest Biomoda's allegations that L. Robins took $35,000.00 from its bank account without permission.

     **5.**      **The Court's MOO.**

On December 16, 2010, the Court issued its MOO, granting Biomoda partial summary judgment for $35,000.00 plus post-judgment interest against A. Robins based on L. Robins' conversion of funds in that amount from Biomoda's bank account in furtherance of a civil conspiracy in which A. Robins participated.  The Court based its decision on averments in Cousins' affidavit and on allegations in the FAC that L. Robins unlawfully withdrew $35,000.00 from Biomoda's bank account, see Cousins Aff. ¶ 7, at 3; FAC ¶ 46, at 15, and that L. Robins committed this act pursuant to the conspiracy in which A. Robins was a co-conspirator, see FAC ¶ 73, at 21-22. The Court also denied A. Robins' request that it reconsider the merits of Biomoda's claims, which the Court construed as a motion to vacate the Default Judgment; the Court concluded that, because A. Robins had not shown that he was faultless under extraordinary circumstances under rule 60(b)(6).  The Court further denied A. Robins' request for additional discovery, because the discovery deadline had passed and A. Robins failed to show good cause to amend the scheduling order.

     **6.**      **A. Robins' Motion.**

A. Robins moves the Court to reconsider and set aside its MOO.  A. Robins principally

argues that Biomoda produced no evidence supporting its claim that L. Robins converted $35,000.00 from it.  On February 4, 2011, Biomoda filed its Response in Opposition to Alvin D. Robins' Motion to Reconsider and Set Aside Summary Judgment.  <u>See</u> Doc. 165.  Biomoda asserts that it supported its conversion claims with evidence, and that A. Robins misapprehends the procedural posture of this case, because he does not acknowledge that the Court, having entered Default Judgment against him, takes the allegations in the FAC as true.  Biomoda contends that A. Robins has failed to demonstrate any legitimate grounds for reconsideration of, or for setting aside, the Court's MOO.

On March 9, 2011, A. Robins sent a letter to the Court via facsimile transmission.  <u>See</u> Doc. 172.  A. Robins argues that Biomoda owed ADOT more than $800,000.00 when L. Robins allegedly converted the $35,000.00 from Biomoda's bank account.  A. Robins contends L. Robins could not therefore have converted money from Biomoda.

### <u>LAW REGARDING MOTIONS TO RECONSIDER UNDER RULES 60(b)</u>

Rule 59(e) of the Federal Rules of Civil Procedures states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(d).  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012 (citation omitted).  A district court has considerable discretion in ruling on a motion to reconsider.  <u>See Phelps v. Hamilton</u>, 122 F.3d 1309, 1324 (10th Cir. 1997).  A rule 59(e) motion is not an opportunity to rehash

arguments previously addressed or to advance new arguments that could have been raised in prior briefing.  See Servants of the Paraclete v. Does, 204 F.3d at 1012 ("It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." (citation omitted)).

## LAW REGARDING RULE 60(b)

Rule 60(b) allows a court to relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), "newly discovered evidence," Fed. R. Civ. P. 60(b)(2), "fraud . . . misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).  "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment."  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)). The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice. Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444.

## ANALYSIS

A. Robins makes nine arguments why the Court should reconsider its MOO under rule 60(b)[3].  None of A. Robins' arguments contend that the Court's MOO should be reconsidered based

---

[3] A. Robins does not specify whether he brings his motion under rule 59(e) or rule 60(b). "There is a considerable overlap between Rule 59(e) and Rule 60." 11 C. Wright, A. Miller & M. Kane, Federal Rules Of Civil Procedure § 2817.  A. Robins' Motion is untimely under rule 59(e).

on "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), "newly

discovered evidence," Fed. R. Civ. P. 60(b)(2), "fraud . . . misrepresentation, or misconduct by an

opposing party," Fed. R. Civ. P. 60(b)(3), or "any other reason that justifies relief,"  Fed. R. Civ. P.

60(b)(6).  Instead, A. Robins primarily advances arguments that the Court has already addressed --

whether there is a basis in the record, given the procedural posture of this case, to award Biomoda

$35,000.00 plus post-judgment interest for its claims against A. Robins.   "[A] motion for

reconsideration and a successive Rule 60(b) motion . . . are inappropriate vehicles to reargue an

issue previously addressed by the court when the motion merely advances new arguments, or

supporting facts which were available at the time of the original motion."  Servants of Paraclete v.

Does, 204 F.3d at 1012.  A motion for reconsideration is not an opportunity to rehash arguments

previously addressed or to advance new arguments that could have been raised in prior briefing.  See

Servants of Paraclete v. Does, 204 F.3d at 1012 ("It is not appropriate to revisit issues already

addressed or advance arguments that could have been raised in prior briefing." (citation omitted)).

What is new in A. Robins' Motion provides no basis in the law or in the facts of this case for the

Court to reconsider its MOO.  The Court, therefore, denies his Motion.

## I.     THE COURT'S DECISION TO GRANT BIOMODA PARTIAL SUMMARY JUDGMENT WAS BASED ON EVIDENCE BIOMODA PUT FORWARD AND THE ALLEGATIONS IN THE FAC, WHICH THE COURT TOOK AS ESTABLISHED FOLLOWING ENTRY OF DEFAULT JUDGMENT.

In its MOO, the Court held that A. Robins was liable to Biomoda for $35,000.00, plus post-

judgment interest, for money that was taken from Biomoda's bank account as part of a civil

---

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(d).  The Court filed its MOO on December 16, 2010.  A. Robins filed his Motion on January 18, 2011.  His Motion, therefore, is outside the twenty-eight day window. If A. Robins' Motion is to prevail, it must do so under rule 60(b).

conspiracy for which A. Robins was liable by virtue of the Court's Default Judgment. A. Robins contends that Biomoda provided no evidence to establish a $35,000.00 loss. A. Robins states:

> The sole basis for the granting of the partial Summary Judgment in favor of Biomoda, Inc. for $35,000 was the totally unsubstantiated allegation that Biomoda somehow lost $35,000 because of an alleged conspiracy or fraud perpetrated by John Kearns, deceased, Leslie Robins, no longer a defendant, and the one remaining defendant, Alvin Robins, your movant.
>
> At no time has Biomoda ever produced to the Court in any pleading, commencing with the filing of the case, any evidence to show that $35,000 was ever illegally or improperly transferred from its account by any of the original three defendants, let alone the one remaining defendant, your movant.
>
> In fact, Biomoda never produced any of its records, ledgers or other documentation of any sort or a certification by any third party, including its auditors and CPAs to substantiate to the Court at least a modicum of any documentation to show that in fact at any time $35,000 was ever transferred illegally or improperly from its accounts by any or all of the three defendants. Further, Biomoda has failed to produce any documentation to show that it suffered a $35,000 loss as it claims.

Motion ¶¶ 1-3, at 2-3. Contrary to A. Robins' assertions, the Court did not base its decision in its MOO solely on Biomoda "unsubstantiated allegations," Motion ¶ 1, at 2, and Biomoda presented evidence supporting its allegation that L. Robins, A. Robins' co-conspirator, took $35,000.00.

The Court based its decision in favor of Biomoda for $35,000.00 plus post-judgment interest on: (i) the facts alleged in the FAC, which the Court assumed were true because the Court had entered default judgment against A. Robins on liability, see United States v. Craighead, 176 F. App'x 922, 925 (10th Cir. 2006); (ii) the evidence that Biomoda presented in the form of Cousins' affidavit; and (iii) A. Robins' failure to controvert the contention that L. Robins took $35,000.00. An affidavit is admissible evidence, so Cousins' affidavit provides support for Biomoda's

conversion claim.[4]  Cousins' affidavit stated:

> The second category of damages claimed by Biomoda is $35,000 Leslie Robins misappropriated from Biomoda's bank account.  This misappropriation was the subject of an affidavit I submitted earlier in connection with Biomoda's motion for

---

[4] A. Robins appears to misapprehend the requirements for supporting a motion for summary judgment.  He asserts that "Biomoda never produced any of its records, ledgers or other documentation of any sort or a certification by any third party."  Motion ¶ 3, at 3.  Similarly, in his Summary Judgment Response, A. Robins argues that "there is not a single alleged fact that is backed up by any independent corroboration or documentation whatsoever," and that "there must be independent evidence from a party without any stake in the litigation."  Summary Judgment Response ¶¶ 10, 28, at 5, 10.  A. Robins argument is not an accurate statement of the law.  Rule 56 provides:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.
>
> . . . .
>
> **(c) Procedures.**
>
>> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>>
>>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .

Fed. R. Civ. P. 56(a), (c).  There is no requirement that evidence be corroborated or be from an neutral source.  To prevail on summary judgment, there must be no genuine question of material fact.  When one party presents evidence, even its own self-serving affidavits, and the other party does not present evidence that controverts the first party's evidence, the fact is undisputed, and no genuine issue of material fact exists.  "[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)(internal quotes omitted).

-13-

> a preliminary injunction, live testimony presented at the hearing for that motion by
> Mr. Nethery and me, and the claims set out in paragraph 46 of Biomoda's verified
> complaint.

Cousins Aff. ¶ 7, at 3.  A. Robins presented no evidence refuting the statement in Cousins' affidavit

that L. Robins took $35,000.00 from Biomoda's bank account, or the other evidence in the record

to which Cousins points.[5]  Because Biomoda presented evidence that L. Robins took $35,000.00,

and A. Robins offered no evidence to refute Biomoda's evidence, the Court admitted the fact as

undisputed.  Moreover, because the Court entered Default Judgment against A. Robins, the Court

takes the factual allegations in the FAC as established.  The FAC states that:

> When Leslie Robins became aware that Mr. Cousins had discovered Mr.
> Robins' fraudulent activity, one of Mr. Robins' first actions was to empty Biomoda
> and ADOT bank accounts.  He has acknowledged taking all the cash available to
> Biomoda, which he represents was $35,000.

> . . . .

> Mr. Cousins learned that, on July 21, 2007, $35,000 from Biomoda's account
> had been transferred to ADOT's account; that a $35,000 cashier's check had been
> drawn on the ADOT account; that Leslie Robins had deposited the cashier's check
> in the account at Wells Fargo Bank of an entity called PLZ Tech (a forerunner of
> ADOT); and that, as a result of a $7,000 deficiency in PLZ Tech's account, funds
> wired by Leslie Robins to various recipients, and $22,000 in cash taken by Leslie
> Robins, the $35,000 was completely depleted.  Leslie Robins removed $35,000 from
> Biomoda's account without the permission or authorization of Biomoda.

---

[5] There is additional evidence in the record supporting Biomoda's allegation that L. Robins converted $35,000.00.  A. Robins also ignores the testimony presented at the January 22, 2008 hearing on Biomoda's application for a preliminary injunction.  Cousins, and Chelsea Vasquez of Wells Fargo Bank, presented undisputed evidence supporting Biomoda's allegations against the Defendants.  Cousins testified that, when he discovered the alleged unauthorized issuance of large volumes of Biomoda shares, he checked with Biomoda's banker, Lynn Nethery at New Mexico Bank and Trust, and learned that Leslie Robins had recently withdrawn $35,000, almost all of Biomoda's funds, from Biomoda's account.  See Transcript of Hearing at 58:10-60:14 (taken January 22, 2008)("Tr.").  The Court admitted into evidence a copy of the check evidencing the withdrawal of $35,000 on July 17, 2007.  See Clerk's Minutes at 4, filed February 4, 2008 (Doc. 73). The Defendants called no witnesses at the hearing.  See Tr. at 134:14-16.  A. Robins did not attend.

FAC ¶¶ 24, 46, at 7, 15.

The Court based its decision on these considerations.  The MOO states:

> The FAC also identifies Defendant Leslie Robins' alleged misappropriation of Biomoda's funds and property, including its stock.  These alleged misappropriations include $35,000.00 withdrawn unlawfully from Biomoda's bank account, and the transfer of unrestricted Biomoda shares to family members and friends in exchange for sham "services."  FAC ¶¶ 21-25, 46, at 7-8, 15.  The FAC states that all of the unlawful acts committed by each of the Defendants were undertaken pursuant to the conspiracy in which each of them was a co-conspirator.  See FAC ¶ 73, at 21-22.
>
> . . . .
>
> In addition to seeking compensation for the Defendants' issuance of shares of stock, Biomoda also seeks compensation for the $35,000.00 that L. Robins misappropriated from Biomoda's bank account.  See Cousins Aff. ¶ 7, at 3; FAC ¶ 46, at 15; Motion ¶ 11, at 4 (setting forth this fact); Response at 8 (not controverting this fact).
>
> . . . .
>
> The FAC also states that L. Robins "removed $35,000 from Biomoda's account without the permission or authorization of Biomoda."  FAC ¶ 46, at 15.

MOO at 5-6, 8, 10.

Based on the undisputed evidence and the allegations in the FAC, the Court held that A. Robins was liable to Biomoda for the $35,000.00 that L. Robins converted plus post-judgment interest, because the conversion occurred in the course of a civil conspiracy to which A. Robins was a party:

> While the Court takes the facts alleged in the FAC as true, Biomoda relies on some facts that are outside of the FAC.  Where A. Robins disputes those facts in his verified Response, which the Court treats as an affidavit, A. Robins creates a genuine question of material fact as to the damages Biomoda is due.  To the extent Biomoda's damages calculations are based on facts contained in the FAC, the Court treats those facts as true.  In United States v. Craighead, the Tenth Circuit addressed a defendant's argument that a plaintiff must prove damages after the entry of a default judgment:

Mr. Craighead argues in his reply brief that "[e]ven in a default judgment, damages must be proved." As support for his argument he cites to <u>American Red Cross v. Community Blood Center Of The Ozarks</u>, 257 F.3d 859 (8th Cir. 2001). In that case the Eighth Circuit held that "<u>when a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proven in a supplemental hearing or proceeding</u>." <u>Id.</u> at 864 (quotation omitted). The government, however, is correct in its concise and well-reasoned brief, where it notes that the claim for damages in this case was not indefinite or uncertain. <u>Instead, once the facts regarding Mr. Craighead's liability on the notes were taken as true, all the court was required to do was calculate the amounts owed on the promissory notes and the interest.</u> "'If defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing.'" Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2688 (3d ed.1998).

<u>United States v. Craighead</u>, 176 F. App'x at 925 (citation to the record omitted)(emphasis added). By the same means, to the extent the facts underlying Biomoda's damages claims which are stated in the FAC state a "claim . . . for a sum certain or a sum that can be made certain by computation," the Court takes those facts as established beyond dispute. For such facts, "the time has passed for [A. Robins] to claim that the facts were other than those alleged in the complaint." 176 F. App'x at 925.

. . . .

The Court takes the allegations in the FAC . . . as true. "[W]hen a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proven in a supplemental hearing or proceeding." <u>United States v. Craighead</u>, 176 F. App'x at 925 (quoting <u>Am. Red Cross v. Cmty. Blood Ctr. Of The Ozarks</u>, 257 F.3d at 864 (affirming a district court's rejection of a litigant's damages expert's valuation of damages from business torts, in part for failing to "adequately separate out alleged damages due to legitimate competition"). As the United States Court of Appeals for the Seventh Circuit explained in <u>Black v. Lane</u>, 22 F.3d 1395 (7th Cir. 1994), after default judgment was entered:

[T]he district court . . . was obligated to accept as true all facts alleged in Black's complaint. All of Black's factual allegations are

treated as true because a default judgment was entered against the defendants. When a default judgment is entered, facts alleged in the complaint may not be contested. See Thomson v. Wooster, 114 U.S. 104 (1885); see also Fed. R. Civ. P. 8(d)("Averments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading."). Furthermore, "[a]s a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989).

22 F.3d at 1399. Because the Court accepts as true all well-pleaded facts in the FAC except those "relating to the amount of damages, which must be proven in a supplemental hearing or proceeding," United States v. Craighead, 176 F. App'x at 925 (citation omitted), the Court must determine what facts "relat[e] to the amount of damages." Read broadly, "related to" could mean every fact in a complaint; read narrowly, the term could mean only a sum named in the prayer for relief. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997)(rejecting a district court's entry of default judgment for $51,753.86, because "the District Court simply accepted at face value Transatlantic's statement in its complaint that it 'ha[d] sustained damages as nearly as can now be estimated in the amount of $45,976.83,' and then added interest and costs to arrive at the $51,753.86 figure"); Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)("[A] default judgment may be lawfully entered only 'according to what is proper to be decreed upon the statements of the bill, assumed to be true,' and not 'as of course according to the prayer of the bill.'" (quoting Thomson v. Wooster, 114 U.S. at 113). The Court need not attempt to resolve completely the contours of what facts relate to damages, because it is enough for the Court in this case to construe "facts relating to the amount of damages" not to include, at a minimum, facts related to establishing liability. See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008)(rejecting a litigant's argument that a court made no specific finding regarding willfulness in support of imposing attorney's fees, stating: "[A]ll factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement of Andrew's trademarks. This default sufficiently establishes Andrew's entitlement to attorneys' fees under the Lanham Act." (citing Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1023 (9th Cir. 2002)("[B]y entry of default judgment, the district court determined, as alleged in RIO's complaint, that RII's acts were committed knowingly, maliciously, and oppressively, and with an intent to . . . injure RIO.")(alteration in original))).

. . . .

Biomoda . . . seeks compensation for the $35,000.00 that L. Robins

misappropriated from Biomoda's bank account.  See Cousins Aff. ¶ 7, at 3; Motion
¶ 11, at 4 (setting forth this fact).  Robins does not appear to dispute that L. Robins
misappropriated $35,000.00 from Biomoda's bank account.  See Response at 8 (not
controverting this fact).   Moreover, the FAC states that L. Robins "removed
$35,000.00 from Biomoda's account without the permission or authorization of
Biomoda."  FAC ¶ 46, at 15. . . . "The measure of damages for conversion is the
value of the property at the time of conversion plus interest."  Security Pac. Fin.
Servs., Inc. v. Signified Corp., [125 N.M. 38, 44, 956 P.2d 837, 843 (Ct. App.
1998)(citing AAA Auto Sales & Rental, Inc. v. Sec. Fed. Sav. & Loan Ass'n., 114
N.M. 761, 763, 845 P.2d 855, 857 (Ct. App.1992)].  Because Biomoda does not seek
pre-judgment interest, the Court concludes that Biomoda has established
compensatory damages of $35,000.00 for L. Robins' conversion of its funds.

Moreover, the FAC states that the Defendants unlawfully transferred
Biomoda stock and misappropriated Biomoda' funds as part of a civil conspiracy, in
which A. Robins participated.  See FAC ¶ 73, at 21 ("Leslie Robins, John Kearns,
and Alvin Robins conspired to commit the wrongful acts against Biomoda and
ADOT described in this Complaint, and carried out these wrongful acts pursuant to
the conspiracy.").  Under New Mexico law, co-conspirators are jointly and severally
liable for their own tortious conduct and for the tortious conduct of their co-
conspirators.  See Allied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1206.  In a civil
conspiracy, damages are measured by the effect of the unlawful conduct committed
by each conspirator, taken as a whole.  See Allied Capital, Inc. v. Gibson, 558 F.
Supp. 2d [1189, 1206 (D.N.M. 2007)(Browning, J.)].  "[A] claim of civil conspiracy
is a claim seeking to impute liability from one co-conspirator to another."  Seeds v.
Lucero, [137 N.M. 589, 594, 113 P.3d 859, 864 (Ct. App. 2005)].  "The purpose of
a civil conspiracy claim is to impute liability to make members of the conspiracy
jointly and severally liable for the torts of any of its members."  Ettenson v. Burke,
[130 N.M. 67, 73, 17 P.3d 440, 445 (Ct. App. 2000)].  The Court thus concludes that
A. Robins is jointly and severally liable for the $35,000.00 of compensatory damages
Biomoda has established as a matter of law.  Biomoda is also entitled, pursuant to 28
U.S.C. § 1961(a), to post-judgment interest.

Because the Court finds that Biomoda has established no genuine question
of material fact exists whether A. Robins is liable for the $35,000.00 in
compensatory damages, it awards Biomoda summary judgment against him for that
amount.  See, e.g., Trustees of Const. Industry and Laborers Health and Welfare
Trust v. Hartford Fire Ins. Co., 578 F.3d [1126, 1127, 1130 (9th Cir.
2009)](affirming in part district court's award of damages in summary judgment
based on default judgment); J.R. Simplot v. Chevron Pipeline Co., 563 F.3d [1102,
1117 (10th Cir. 2009)](recognizing that summary judgment on any and all aspects
of a party's claim, including damages, is proper if there are no genuine issues of
material fact); Mid-Continent Cas. Co. v. JHP Dev., 557 F.3d [207, 211, 218 (5th
Cir. 2009)](affirming district court's granting summary judgment awarding damages

based on finding "default judgment in the underlying suit was binding" on the plaintiff); <u>Ruiz v. Blentech Corp.</u>, 89 F.3d [320, 323 (7th Cir. 1996)](same); <u>Applied Capital, Inc. v. Gibson</u>, 558 F. Supp. 2d at 1202-03.

MOO at 43-45, 49-50, 52-53.  Because A. Robins' contention that the Court based its decision on Biomoda's "totally unsubstantiated allegation" is without a basis in the facts of this case, the Court rejects his argument and will not reconsider or set aside its MOO on this basis.

## II.    THE EVIDENCE TO WHICH A. ROBINS PURPORTEDLY POINTS DOES NOT COUNSEL THAT THE COURT RECONSIDER ITS MOO.

The court should not take notice of evidence in the record that A. Robins could have previously brought to the court's attention, but did not.  <u>Cf.</u> Fed. R. Civ. P. 60(b)(2)("[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . newly discovered evidence that, with reasonable diligence, could not have been discovered . . . .").  A. Robins asserts that evidence in the record refutes Biomoda's contention it suffered a $35,000.00 loss.  A. Robins argues:

> Further, Movant respectfully asks this Honorable Court to take judicial notice of the record in this case in which defendant-counter plaintiff Leslie S. Robins, through attorney Samuel Bregman, filed pleadings conclusively demonstrating that Biomoda, Inc. never suffered a $35,000 loss at any time, with particularity in July, 2007 as falsely claimed by Biomoda.  Said pleadings form a permanent part of this record and maybe relied on by Movant in order to contest the truthfulness of allegations made by Biomoda in its Motion for Summary Judgment.

Motion ¶ 7, at 4.  It is unclear what filing A. Robins references.  The docket contains five filings Mr. Bregman entered and two pleadings from L. Robins.  While it not the Court's duty to scour the record for evidence supporting a party's arguments, <u>Trujillo v. Board of Educ. of Albuquerque Pub. Schs.</u>, 470 F. Supp. 2d 1270, 1276-77 (D.N.M. 2007)(Browning, J.)("[T]he Tenth Circuit cautioned that the courts 'have a limited and neutral role in the adversarial process, and [they should be] wary of becoming advocates who comb through the record . . . and make a party's case for it.'" (quoting

Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998))(alterations in original)), the Court has carefully reviewed those filings and found no support for A. Robins' contention.  None of Mr. Bregman's five filings address Biomoda $35,000.00 loss.  Additionally, L. Robins' pleadings are not sworn, and would not be admissible as evidence.  Moreover, because L. Robins was terminated from this case on July 15, 2009, before Biomoda filed its summary judgment motion on November 25, 2009, whatever filing A. Robins references "were available at the time of the original [summary judgment] motion," and are an "inappropriate" basis for a rule 60(b) motion to reconsider.  Servants of Paraclete v. Does, 204 F.3d at 1012.  The filings are not "newly discovered evidence that, with reasonable diligence, could not have been discovered," Fed. R. Civ. P. 60(b)(2).  Because A. Robins' contention is without a basis in the facts of this case and is unsupported by the law, the Court will not reconsider or set aside its MOO on this basis.

On March 9, 2011, A. Robins sent a letter to the Court via facsimile transmission, in which he argues that Biomoda owed ADOT more than $800,000.00 when L. Robins allegedly converted the $35,000.00 from Biomoda's bank account, and that L. Robins could not therefore have converted money from Biomoda.  A. Robins Letter at 1-2.  A. Robins relies on Cousins' testimony from the January 22, 2008 hearing.  See Tr. at 101:7-8 ("[Bregman:] Biomoda owes ADOT $800,000? [Cousins:] Correct.").  A. Robins' contention is unavailing for several reasons, each independently fatal.  First, A. Robins' arguments address the merits of Biomoda's conversion claim, and such attack is foreclosed under the procedural posture of the case.  Second, the testimony from the January 22, 2008 hearing was available in the record when A. Robins filed his Summary Judgment Response on July 9, 2010, and was thus "available at the time of the original [summary judgment] motion," and is an "inappropriate" basis for a motion to reconsider.  Servants of Paraclete v. Does,

204 F.3d at 1012.  Third, witnesses at the January 22, 2008 hearing did not testify that L. Robins transferred the $35,000.00 from Biomoda to ADOT to pay off debt; rather, the undisputed testimony was that L. Robins transferred the money to PLZTech's account, and then withdrew much of the money as cash.  See Tr. at 113:22-114:4 (Court, Cousins)("[The $35,000.00] was in a Biomoda account and then moved over to Wells Fargo and then taken out of -- in a PLZTech account and then taken out of that account in primarily cash to Leslie Robins."); id. at 131:20-133:13 (Reid, Vasquez)(testifying that L. Robins deposited a cashiers check into a Wells Fargo Bank account and then withdrew a sum of more than $10,000.00 in cash).  Fourth, the argument fails on it merits, because "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it," Restatement (Second) of Torts § 222A (1965), and a party's "contention that he could seize the funds without liability since it was owed to him [i]s untenable," Restatement (Second) of Torts § 222A case citations 1976 -- June 1984 (citing Hemstreet v. Spears, 579 P.2d 229, 233 (Or. 1978).  The Court will thus not reconsider it decision on these grounds.

## III.   THE COURT DID NOT DENY A. ROBINS AN OPPORTUNITY TO FILE EVIDENCE IN RESPONSE TO BIOMODA'S MOTION FOR SUMMARY JUDGMENT.

A. Robins contends that the Court did not allow him to submit evidence.  A. Robins states:

At the one hearing in this case in which Alvin Robins was able to participate in, November 12, 2010, the Court refused to allow defendant Alvin Robins to present any documentation to show that Biomoda never suffered a $35,000 loss at any time, with particularity to the period of July, 2007 as alleged repeatedly by plaintiff/cross defendant, Biomoda.

Motion ¶ 4, at 3.  A. Robins' contention is without a basis in the facts of this case.

On the November 12, 2010, the Court held a motion hearing on Biomoda's motion for

summary judgment.  Because it was a hearing on a motion for summary judgment, it was not an

evidentiary hearing or a trial.  Cf. Fed. R. Civ. P. 56(c)(1)("A party asserting that a fact cannot be

or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in

the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . .").

Nonetheless, A. Robins presented a number of documents relating to the shares of Biomoda stock.

The Court took A. Robins' documents.  The documents do not relate to the $35,000.00 taken from

Biomoda's bank account.  He also requested to examine the opposing party.  Because the hearing

was not an evidentiary hearing, the Court did not allow him to conduct an examination.[6]  After

---

[6] The Court and A. Robins had the follow exchange:

MR. ALVIN ROBINS: . . . How do I cross-examine the affidavit without -- Mr. Cousins isn't here, unless he's outside.

THE COURT:  Well, on motion for summary judgment there's not an evidentiary hearing, and what the Biomoda has done is they are not asking for an evidentiary hearing, they're not asking for a trial; they're just saying that based upon the affidavits that they filed, that there's no genuine issue of material fact.  If you wish to submit sworn testimony that raises a genuine issue of material fact, that's the way you show that summary judgment's not appropriate, not by having a hearing.  All we're trying to determine is whether we need to go to trial.

MR. ALVIN ROBINS:  All right.  Your Honor, and I don't mean to beg the question, there's an officer of Biomoda in the courtroom . . . .  Would I have the opportunity to call her as a witness if the Court thought it was relevant?

THE COURT:  Well, that's what discovery is for. . . .

MR. ALVIN ROBINS: I don't mean for discovery.  But in order to present evidence to the court.

THE COURT: I know.  That's what discovery is for, is for you to take the deposition of the witness and find out what the witness is going to say, [or] get an affidavit from is that person and submit it to the Court.  That's not the purpose of a summary

carefully reviewing the transcript of the hearing, the Court finds no incident in which it refused to allow A. Robins to tender documents or in which A. Robins mentioned the $35,000.000 misappropriation.

A. Robins may refer to the Court's decision not to allow A. Robins to conduct additional discovery. The Court denied A. Robins' request to take discovery because he failed to show good cause for amending the discovery deadlines, which had already passed:

> A. Robins has not conducted discovery in this case. He has made no discovery requests. He has thus not been diligent in pursuing the discovery he now requests in his Response. The Court set discovery deadlines of October 30, 2009, and November 19, 2009, for discovery and discovery motions respectively. See Joint Status Report and Provisional Discovery Plan at 4; Transcript of Initial Scheduling Conference at 17:16-18 (Court). The Court also set deadlines of June 30, 2009 and August 28, 2009, for the Plaintiffs and Defendants, respectively, to identify their expert witnesses. See Transcript of Initial Scheduling Conference at 17:18-21 (Court). While the Court had entered default against A. Robins in December of 2008 and he was not present at the scheduling conference, A. Robins was still a Defendant in the case, and the Court did not limit the deadline to the Defendants at the hearing, and a transcript of the hearing was filed on February 20, 2009. See Transcript of Initial Scheduling Conference at 17:18-21 (Court). A. Robins did not conduct any discovery and has not disclosed any expert witnesses. Consequently, A. Robins has not shown good cause for amending the discovery deadlines or that he has not be dilatory in pursuing discovery. The Court thus denies his request for additional discovery or to introduce expert witnesses.

See MOO at 41-42. To the extent that A. Robins challenges the Court's decision not to permit A. Robins to conduct discovery outside of the Court's scheduling order, he provides no valid basis for the Court to reconsider its holding.

_____

judgment hearing.

Transcript of Hearing at 3:22-4:24 (Taken November 12, 2010)(the Court's citations to the transcript refer to the court reporter's original, unedited version; the final transcript may contain slightly different page and/or line numbers).

In sum, the Court is unaware of any documents that A. Robins has attempted to submit which it refused, and therefore of any document relating to L. Robins's conversion of $35,000.00. A. Robins does not elaborate on what his purported evidence, testimony or otherwise, shows. Moreover, a careful review of the transcript of the hearing and A. Robins' Summary Judgment Response reveals that A. Robins never addressed Biomoda's allegations regarding the conversion of its $35,000.00. The Court therefore finds A. Robins' contention that it refused to accept his evidence to lack a basis in the record.

## IV. A. ROBINS' OTHER ARGUMENTS PROVIDE NO VALID BASIS IN THE LAW OR THE FACTS OF THIS CASE FOR THE COURT TO RECONSIDER OR SET ASIDE ITS MOO.

A. Robins presents a number of other arguments, none of which provide a basis in the law or the facts of this case for the Court to reconsider its MOO. A. Robins asserts that Biomoda settled million-dollar claims for $10,000, see Motion ¶ 5, at 4, and that

> Biomoda accepted a token sum at mediation only after overwhelming evidence was presented that Biomoda had no basis for its claim whatsoever. Such a fact requires this Court to take judicial notice that all the claims of Biomoda for losses are fictitious, without basis, without any factual representation, substantiation and all are brought in bad faith requiring this Court to take action against Biomoda, Inc. and its officers who are responsible for attempting to defraud this Court.

Motion ¶ 6, at 4. A. Robins further contends that Biomoda is insolvent and has been since July 1, 2007. He asserts that "the Motion for Summary Judgment was brought in bad faith and was a fraud perpetrated on this Court," because "Biomoda, Inc. sought solely to obtain publicity to try to bolster its failing financial situation." Motion ¶ 6, at 4. Although the Court denied Biomoda's motion for summary judgment on its claims based on shares of stock, A. Robins nonetheless presents a chart of Biomoda's Insolvency Statistics, Ex. A to Doc. 162, which A. Robins contends

demonstrates that in a short span of only three months, 9/30/2007 to 12/31/2007, that

-24-

> Biomoda increased the number of shares outstanding from 24,675,510 to 72,777,162, an unprecedented, extraordinary 294% increase in the number of shares outstanding. That in only three months, Biomoda flooded the market with total disregard for Biomoda's existing shareholders as of 9/30/2007.  This lawsuit and particularly the Motion to hear the Summary Judgment filed one year after Motion for Summary Judgment was filed solely in order to divert the public's attention away from the failing financial condition of Biomoda by pointing to a claim that it will be collecting $650,000 or more from Alvin Robins.

Motion ¶ 9, at 5.

It is unclear what relevance A. Robins believes these assertions have to the Court's MOO. A. Robins does not appear to contend that reconsideration is warranted based on "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), "newly discovered evidence," Fed. R. Civ. P. 60(b)(2), "fraud . . . misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3),[7] or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).  He does not allege any basis on which to invoke relevant 60(b)'s "extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444.  He also does not contend that "the [C]ourt has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d at 1012 (citation omitted).  To the extent A. Robins' contentions have any bearing on this case, they appear to address the merits of Biomoda's claims. The Court denied A. Robins' request that it consider the merits of Biomoda's claims, because doing so would require the Court to vacate its Default Judgment, which A. Robins did not show was

---

[7] That Biomoda prevailed on its summary judgment motion refutes A. Robins' contention that "the Motion for Summary Judgment was brought in bad faith and was a fraud perpetrated on this Court," because "Biomoda, Inc. sought solely to obtain publicity to try to bolster its failing financial situation."  Motion ¶ 6, at 4.  Biomoda's success on its Motion demonstrates that the Motion was not a baseless effort to obtain publicity.

-25-

justified.  Because more than a year had passed since the Court entered the Default Judgment, for A. Robins to prevail on his request that the Court vacate its Default Judgment, A. Robins would have to meet rule 60(b)(6)'s demanding standard that he was faultless under extraordinary circumstances, which A. Robins failed to do:

> Because more than one year has passed since the entry of the Default Judgment, and A. Robins does not contend the Default Judgment is void or that it has been satisfied, see Fed. R. Civ. P. 60(b)(4)-(5), A. Robins can succeed on his motion to vacate only under rule 60(b)(6)'s demanding standard.  See Fed. R. Civ. P. 60(c)(1)("A motion under Rule 60(b) must be made . . . for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order . . . .").  Rule 60(b)(6) provides that a court may relieve a party from "final judgment, order, or proceeding" for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  No time limit applies to rule 60(b)(6), save that the motion must be made within a "reasonable time."  Fed. R. Civ. P. 60(c)(1).
>
> Despite the rule's inviting language, under rule 60(b)(6) "a party must show extraordinary circumstances suggesting that the party is faultless in the delay." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393.  See Omar-Muhammad v. Williams, 484 F.3d 1262, 1264 (10th Cir. 2007)("[T]o obtain relief under Rule 60(b)(6), [petitioner] must show . . . 'extraordinary circumstances.'"); Cashner v. Freedom Stores, 98 F.3d 572, 579 (10th Cir. 1996) ("[A] district court may grant a Rule 60(b)(6) motion only in extraordinary circumstances and only when necessary to accomplish justice.").  "Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'" C. Wright, A. Miller & M. Kane, supra, § 2864.  See Cothrum v. Hargett, 178 F. App'x 855, 858 (10th Cir. 2006)(finding a prisoner's mental illness, which did not result in confinement to a mental institution or inpatient care, did not meet "heavy burden to justify relief under Rule 60(b)(6)").  "[A] party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n.11).
>
> A. Robins provides no reasons for delaying bringing his motion.  He certainly does not provide one that would satisfy his burden under rule 60(b)(6).  A. Robins has not shown "'extraordinary circumstances' suggesting that the [he] is faultless in the delay."  507 U.S. at 393.  A. Robins points to nothing like the "incarceration, ill health, and other factors beyond his reasonable control" that would justify delaying bringing his Motion.  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393.  While A. Robins has experienced health problems that have prevented him

from attending hearings in person, he has not asserted that his health issues have prevented him from submitting filings or submitting a motion to vacate the Default Judgment -- nor could he, as he filed a notice with the Court on January 23, 2009. See Doc. 115. A. Robins reveals no reason, and the circumstances suggest nothing beyond neglect, for his delay. "If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393. The Court finds, therefore, A. Robins "c[an] not avail himself of the broad 'any other reason' clause of 60(b)." Klapprott v. United States, 335 U.S. at 613. Consequently, the Default Judgment stands, and the Court takes all of the well-pleaded facts in the FAC as true. See United States v. Craighead, 176 F. App'x at 924-25.

MOO at 36-38. A. Robins provides no previously unavailable evidence or newly arising legal authority, and does not contend that the Court's reasoning was in error, and does not otherwise shows that he was faultless under extraordinary circumstances, so the Court will not reconsider its decision not to vacate its Default Judgment against A. Robins.

## V.      THE COURT WILL NOT RECONSIDER ITS MOO.

In sum, A. Robins Motion presents no basis in the law or facts of this case for the Court to reconsider its MOO. He does not contend the MOO should be reconsidered based on "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), "newly discovered evidence," Fed. R. Civ. P. 60(b)(2), "fraud . . . misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). that there "has been an intervening change in the controlling law," and he does not present "newly discovered evidence which was previously unavailable," or show that reconsideration "is necessary to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d at 1012. A. Robins does not contend that "the [C]ourt has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d at 1012 (citation omitted). The Court therefore denies A. Robins' Motion.

**IT IS ORDERED** that Defendant's Motion to Reconsider and Set Aside Partial Summary

Judgment, filed January 18, 2011 (Doc. 162), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Phil Krehbiel
Albuquerque, New Mexico

    *Attorney for Plaintiff Advanced Optics Electronics, Inc.*

Spencer Reid
Thomas C. Bird
Christina Muscarella Gooch
Keleher & McLeod
Albuquerque, New Mexico

    *Attorneys for Plaintiff and Counter-Defendant Biomoda, Inc.*

Sam Bregman
Eric Loman
The Bregman Law Firm, PC
Albuquerque, New Mexico

    *Attorneys for Defendant and Counterclaimant Leslie S. Robins*

John W. Kearns
Coral Gables, Florida

    *Defendant pro se*

Alvin D. Robins
La Porte, Texas

    *Defendant pro se*